2014 WL 12531120
Only the Westlaw citation is currently available.
United States District Court,
W.D. **Tennessee**, Western Division.

Carpet Tech, Plaintiff,
v.
National Contract Flooring, LLC, Jacob Shuler, and Tyler Carter, Defendants.

No. 14-2045-JTF/dkv
|
Signed 04/30/2014

**Attorneys and Law Firms**

Andre B. Mathis, Jeremy G. Alpert, Larry H. Montgomery, Glankler Brown, PLLC, Memphis, TN, for Plaintiff.

Annie Tauer Christoff, John S. Golwen, William G. Whitman, Bass Berry & Sims, PLC, Memphis, TN, Harold Wayne Young, Friday Eldredge & Clark, Little Rock, AR, for Defendants.

**Opinion**

## ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

JOHN T. FOWLKES, JR., UNITED STATES DISTRICT JUDGE

*1 Before the Court are Defendants' Motions to Dissolve Temporary Restraining Order, DE #13 and DE#16[1] filed on February 14, 2014 and February 20, 2014, respectively. Defendants requested that the Court conduct an expedited hearing on Plaintiff's request to convert the Temporary Restraining Order into a Preliminary Injunction. Plaintiff filed a response on March 10, 2014, DE #20, to which Defendants filed a Reply on March 17, 2014. (DE #27). On March 10, 2014, Plaintiff filed a Motion to Hold Defendants in Contempt of Court for Repeated Violations of the Temporary Restraining Order. (DE #21). Defendants filed a Response in Opposition on March 19, 2014. (DE #29).

The Court conducted a hearing on Plaintiff's Motion for Preliminary Injunction on March 25, 2014. (DE #41). At the conclusion of the hearing, the Court granted Defendants' Motion to Dissolve the Consent Temporary Restraining Order. (DE #40). Plaintiff's remaining motions, the Motion for Preliminary Injunction and the Motion to Hold Defendants in Contempt of Court, were taken under advisement. Based on arguments of counsel, testimony of witnesses and after examination of the record, including the exhibits and legal authority, the Court finds that Plaintiff's Motion for a Preliminary Injunction should be DENIED.

## I. FACTUAL BACKGROUND

For twenty-one years, Plaintiff Carpet Tech has marketed and provided carpeting and vinyl flooring products to residential apartment buildings. Although headquartered in Memphis, Tennessee, Carpet Tech has branch offices in Little Rock, Arkansas; Rogers, Arkansas; Jackson, Mississippi and St. Louis, Missouri. On March 30, 2011, Carpet Tech hired Jake Shuler as Manager of the Little Rock, Arkansas branch office. Per the employment arrangement, Shuler executed a "non-compete agreement" in the Memphis office. He subsequently relocated to Little Rock where he worked for approximately a year and a half. On or about January 1, 2013, Shuler was transferred to the branch office in Rogers, Arkansas. Shuler resigned on February 28, 2013, and his last day at Carpet Tech was Friday, March 1, 2013. On Monday, March 4, 2013, Shuler began working as President for National Contract Flooring (NCF), a newly-formed business in Little Rock, Arkansas, also in the commercial flooring industry.

The complaint alleges that on or about March 14, 2013, Shuler began soliciting business from a Carpet Tech customer.[2] The complaint asserts that a "cease and desist letter" was sent to Shuler and Richard Akel, co-owner and founder of NCF, on March 18, 2013.[3] NCF sent a response to the letter asserting the non-compete agreement was unenforceable.[4]

Similarly, on or about February 18, 2013, Carpet Tech hired Defendant Tyler Carter in Memphis, Tennessee, for a sales position in Little Rock. Carter also executed a non-compete agreement. Carter trained briefly in Memphis and proceeded to work full-time in the Little Rock office. On Friday, October 25, 2013, Carter was suspended for loss of liability insurance resulting from a traffic-related incident. The next day, Carter allegedly accessed Carpet Tech's business documents and emailed a listing of Carpet Tech's sales logs to his personal computer. The complaint also alleges that Carter downloaded more of Plaintiff's business documents and files the following day. Soon afterwards, Carter resigned and also began working for NCF. Plaintiff alleges that Carter violated the non-compete agreement by also using Carpet Tech's confidential business information to solicit business on behalf of NCF.

*2 As a result of these actions, Plaintiff initiated a complaint for injunctive relief and damages in the Chancery Court of Shelby County, Tennessee on December 17, 2013. In the complaint, Plaintiff alleges that the Defendants violated the Tennessee Uniform Trade Secrets Act, Tenn. Code Ann. § 47-25-1701, *et seq.* by misappropriating trade secrets, breaching the non-compete agreements in violation of Tenn. Code Ann. § 47-50-109 causing damages of $588,000, and intentionally interfering with its business relationships through acts of conversion, *inter alia.* On December 20, 2013, a Consent Temporary Restraining Order was entered in Chancery Court that provided that NCF, Shuler and Carter would not solicit or accept any new business from persons with whom Plaintiff had formerly done business as of December 17, 2013. The parties agreed to confer through counsel regarding potential new customers. The Consent Restraining Order was to expire on January 17, 2014, although a hearing was set in Chancery Court for February 5, 2014.

By consent, the parties removed the case to federal district court on January 17, 2014. A status conference was held on January 28, 2014, by this Court, and a hearing on Plaintiff's Motion for Preliminary Injunction was set for April 7, 2014. Later, Defendants filed the instant Motion to Dissolve the Consent Temporary Restraining Order and for an expedited Preliminary Injunction hearing while Plaintiff filed a Motion for Contempt for Violations of the Consent Temporary Restraining Order. Based on the parties' motions, the Court advanced the Preliminary Injunction hearing from April 7, 2014 to March 25, 2014.

## II. JURISDICTION

The Court has jurisdiction pursuant to 28 U.S.C. § 1332 where the case is predicated on diversity of citizenship and the dispute exceeds $75,000. Complete diversity of citizenship exists when the plaintiff and defendants are not citizens of the same state at the time the suit was commenced and when the notice of removal to federal court was filed. *Curry v. U.S. Bulk Transport, Inc.*, 462 F.3d 536, 539 (6th Cir. 2006); *Jerome–Duncan, Inc. v. Auto-By-Tel, LLC*, 176 F.3d 904, 907 (6th Cir. 1999) citing *Easley v. Pettibone Mich. Corp.*, 990 F.2d 905, 908 (6th Cir. 1993). A person's place of citizenship is determined by the party's place of domicile. *Certain Interested Underwriters at Lloyds' v. Layne*, 26 F.3d 39, 41 (6th Cir. 1994).

Plaintiff Carpet Tech is a corporation having its principal place of business in Memphis, Tennessee but conducting business in four other cities: Little Rock and Rogers, Arkansas; Jackson, Mississippi and St. Louis, Missouri. Defendant National Contract Flooring, LLC (NCF) is headquartered in Little Rock, Arkansas and does business in the state of Tennessee. The complaint asserts that both Defendants, Jack Shuler and Tyler Carter, are adult residents of Little Rock, Arkansas.[5] The Court finds diversity under 28 U.S.C. § 1332 exists. *Thacker v. Lawrence County*, 182 Fed. Appx. 464, 472 (6th Cir. 2006).

## III. LEGAL STANDARD

**DOES TENNESSEE OR ARKANSAS STATE LAW GOVERN?**
Whether injunctive relief is warranted in this case is contingent on the validity and enforceability of the non-compete agreements at issue. Because

the agreements did not include a choice of law provision, the Court must first determine if Tennessee or Arkansas state law will govern.[6]

*3 The agreements were executed by the parties at Carpet Tech's headquarters in Memphis, Tennessee. The purpose of the non-compete agreements was to restrict Shuler and Carter from competing against the Plaintiff upon termination of their employment. Plaintiff asserts that Tennessee law applies because the agreements were executed in the state of Tennessee. (DE #28). Tennessee follows the rule of *lex loci contractus*, which provides that a contract is presumed to be governed by the law of the jurisdiction in which the contract was executed unless the parties indicate otherwise. *Vantage Technology, LLC v. Cross*, 17 S.W.3d 637, 650 (Tenn. App. 1999). Defendants insist that under a *lex loci* exception, Arkansas law applies in this case.

Since the agreements are silent on this issue, the Court must first examine Tennessee's choice-of-law rules on whether the *lex loci* doctrine applies in this case. The Sixth Circuit in *Montgomery v. Wyeth*, 580 F.3d 455, 459 (6th Cir. 2009), noted that "Tennessee follows the "most significant relationship" approach of the Restatement (Second) of Conflict of Laws to choice of law questions." See *Hataway v. McKinley*, 830 S.W.2d 53, 59 (Tenn. 1992); Restatement (Second) of Conflict of Laws § 145 (1971). Therefore, the law of the state where the injury occurred should apply unless the other state has a more significant relationship to the claims asserted. Further, when both states have almost an equal relationship to the litigation, the trial court will apply the law where the injury occurred. *Id.*

The Arkansas Supreme Court addressed this issue in *Cooper v. Cherokee Village Development Co*, 236 Ark. 37, 364 S.W.2d 158 (Ark. 1963). There the court provided that in determining which law governs the validity of a multi-state contract, the court considers four factors: 1) the law of the state where the contract was made; 2) the law of the state in which the contract will be performed; 3) the law of the state the parties intended to govern, provided that state has a substantial connection with the contract; and finally, 4) the law of the state having the most significant contracts with the matter in dispute or the "center of gravity" test. *Id.* at 42-43; 161. *See also Welsco, Inc. v. Mike Brace*, Case No. 4:12-cv-00394-KRB, 2012 WL 4087224 *3 (E.D. Ark. Sept. 17, 2012). The Eighth Circuit has observed that recently courts apply the "significant contacts" test to all contract cases where, as in this case, there is no choice of law provision. *Heating & Air Specialists, Inc. v. Jones*, 180 F.3d 923, 929 (8th Cir. 1999); *Standard Leasing, Corp. v. Schmidt Aviation, Inc.*, 264 Ark. 851, 576 S.W.2d 181, 184 (1979).

Although the contracts were signed in Tennessee, both Jake Shuler and Tyler Carter were initially hired to work at the Carpet Tech branch office in Little Rock, Arkansas, with Shuler eventually being transferred to Rogers, another branch office in Arkansas. After their employment with Carpet Tech ended, both Shuler and Carter accepted employment with National Contract Flooring, an Arkansas company. Plaintiff alleges they immediately began contacting its customers in Little Rock to lure business away from Carpet Tech to NCF. Plaintiff also asserts the Defendants have continued contacting their client base in Arkansas, in violation of the parties' Consent Temporary Restraining Order. Arkansas has the most significant contacts with the matter in dispute. Therefore, Arkansas law governs interpretation of the agreements, and ultimately whether a preliminary injunction should issue.

### IV. ANALYSIS

Jake Shuler's non-compete agreement was executed on March 30, 2011, and provides as follows:

*4 Non-Compete Agreement[7]

I, <u>Jake Shuler</u>, employed by Carpet Tech, agree to the following conditions in regard to my employment with Carpet Tech, Inc.

> A. I will not share any propriety information about Carpet Tech, Inc., customers, methods of operation, or any other information that could damage Carpet Tech, Inc., or give aid

to any competitor while employed with Carpet Tech, Inc., or for a period of five years following my termination with Carpet Tech, Inc.

B. Agree to not take employment with a competitor for a period of five years from the termination of my employment with Carpet Tech, Inc. A competitor is classified as any flooring company that engages in business with multi-family housing. This agreement includes competitors within a 150 radius of the Memphis, Tennessee metro area, the Jackson, Mississippi metro area, the Little Rock, Arkansas metro area. Should Carpet Tech, Inc., expand to other cities, this agreement will extend to any market in the future that Carpet Tech, Inc. engages in business.

C. The purpose of this agreement is to protect Carpet, Tech., Inc. from unfair competition that ex-employees might give to a competitor by having knowledge of our customer base, methods of operation, and strategies learned during their employment.

Tyler Carter's non-compete agreement was executed on February 18, 2013, and provides as follows:

Non-Compete Agreement [8]

I, Tyler Carter, employed by Carpet, Tech., Inc. agree to the following conditions in regards to my employment with Carpet Tech., Inc.

A. I will not share any propriety information about Carpet Tech., Inc. customers, methods of operations, or any other information that could damage Carpet Tech, Inc., or give any aid to any competitor while employed with Carpet Tech., Inc. or for a period of five years following my termination with Carpet Tech., Inc.

B. Agree to not take employment with a competitor for a period of five years from the termination of my employment with Carpet Tech., Inc. A competitor is classified as any flooring company that engages in business with multi-family housing. This agreement includes competitors within a 150 mile radius of the following cities and their metropolitan areas:

• Memphis, TN

• Jackson, MS

• Little Rock, AR

• Rogers, AR

• St. Louis, MO

Should Carpet tech, Inc., (sic) expand to other cities, this agreement will extend to any market in the future that Carpet Tech, Inc., engages in business.

C. The purpose of this agreement is to protect Carpet, Tech., Inc. from unfair competition that ex-employees might give to a competitor by having knowledge of our customer base, methods of operation, and strategies learned during their employment.

In determining whether to grant a preliminary **injunction**, the Eighth Circuit has ruled that district courts must consider the following factors: (1) whether there is a substantial probability movant will succeed on the merits; (2) whether the movant will suffer irreparable injury absent the **injunction**; (3) the harm to other interested parties if the relief is granted; and (4) the effect on the public interest. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (*en banc*). No single factor is dispositive. *Id. Baptist Health v. Murphy*, 365 Ark. 115, 226 S.W.3d 800 (Ark. 2006). The question is whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the *status quo* until the merits are determined. *Id.* When there is an adequate remedy at law, a preliminary **injunction** is not appropriate." *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003). A district court's denial of preliminary **injunction** is reviewed for an abuse of discretion. *Novus Franchising, Inc. v. Dawson*, 725 F.3d 885, 895 (8th Cir. 2013).

**1. Likelihood of Success on the Merits**

\*5 To demonstrate a likelihood of success on the merits, a party is not required to prove his case, but must show more than a mere possibility of success. *Girard v. Rebsamen Ins. Co.*, 14 Ark. App. 154, 685 S.W.2d 526, 543 (1985). Plaintiff's ultimate success on the merits in this case is contingent on the Court finding that the non-compete agreements are valid and enforceable under Arkansas law.

According to the complaint, testimony and supporting documentation, Carpet Tech contends that the Defendants were contacting prior, current and prospective customers in Arkansas in order to solicit bids for prospective flooring business, in continuous violation of the Consent TRO.[9] Plaintiff further argues that the Defendants have benefited from a competitive advantage. Therefore, Plaintiff asserts it has demonstrated a strong likelihood of success on the merits, thereby meeting the most important factor to consider in granting a preliminary injunction.

Covenants not to compete are unfavorably regarded in Arkansas. *Hardesty Co., Inc. v. Williams*, 368 F.3d 1029, 1031(8th Cir. 2004). Although disfavored, Arkansas courts have routinely enforced covenants not to compete. *Dawson v. Temps Plus, Inc.*, 337 Ark. 247, 987 S.W.2d 722, 726 (Ark. 1999). Covenants not to compete are subject to stricter scrutiny in employment contracts than those connected to a sale of business. *Freeman v. Brown Hiller, Inc.*, 102 Ark. App. 76, 81, 281 S.W.3d 749, 755 (Ark. App. 2008). The restraint must be reasonable in geographical limitation and duration, must protect a legitimate interest, must be no greater than reasonably necessary to protect the legitimate interest, and should not injure the public's interest. *Dawson*, 987 S.W.2d at 727.[10]

Under Arkansas law, the party challenging whether a covenant not to compete is valid and enforceable has the burden to show it is unreasonable. *Sensabaugh v. Farmers Ins. Exchange*, 420 F.Supp.2d 980, 985 (E.D. Ark. 2006). Defendants testified during the hearing they believed the non-compete agreements were unenforceable based on the five-year length of time they were prevented from competing in the flooring industry. They also assert that Plaintiff had failed to establish a protectable interest in its customer listings. In contrast, Plaintiff argues the non-compete agreements were necessary to protect their long standing business relationships, customer lists and preferences, and to protect them from unfair bidding practices by former employees once their employment ended.

In the Eighth Circuit, a business has a legitimate and protectable business interest in its customer lists, business relationships and methods of operations. The single most important asset of most businesses is its customer base and protection of that asset is a legitimate interest. *Freeman*, 102 Ark. App. at 82, 281 S.W.3d at 755. Moreover, "an employer is especially vulnerable to losing customers when his employee deals with customers away from the business and builds up personal relationships that bind the customers to him." *Id.* However, a covenant that seeks to prevent unfair competition by a former agent who has built up personal relationships with the customers must be narrowly tailored to apply only to the customer base that the covenantee has a legitimate interest in protecting. *Sensabaugh*, 420 F. Supp. 2d at 986.

\*6 The restraints must not overly burden an employee's ability to work, and a covenant not to compete is valid only if it is reasonable with respect to time and place. *Hyde v. C M Vending Co., Inc.*, 288 Ark, 218, 222, 703 S.W.2d 862, 864 (1986). An employer may not restrict a former employee's right to work in an area where he had never before worked. *Jakari v. Cardiology Assocs. of Northeast Ark.*, 75 Ark. App. 198, 206-07, 55 S.W.3d 799, 804 (2001). Where a geographic restriction is greater than the trade area, the restriction is too broad and the covenant not to compete is void. *Id.* Regarding the five-year temporal restriction, the Defendant argues that in recent decisions, non-compete agreements have been limited to two years. In *Dawson,* the court stated that in some instances, covenants not to compete lasting five, ten, twenty years or even without time limits have been upheld. *Dawson,* 337 Ark. at 255-56; *Hyde v. C.M. Vending Co.*, 88 Ark. 218, 703 S.W.2d 862 (1986). However, covenants that negatively impact

a person's potential to earn a living are less likely to be upheld. *Id.* at 256.

The Court finds that Plaintiff has not carried his burden regarding the likelihood of success on the merits. The non-compete agreements barred competition by Shuler and Tyler in areas where Carpet Tech had branches, and in areas where Carpet Tech may eventually expand in the five years following their employment. The other existing locations included locations where they had never worked. This is clearly overly broad and unenforceable. The geographic area in a covenant not to compete must be limited to be enforceable. *Jakari*, 75 Ark. App. at 206-07. The covenants not to compete are overly-restrictive in terms of geographic limitations because they fail to limit the former employees' ability to compete in the flooring industry to areas where they had worked. Thereby, the covenants negatively impact their potential to earn a living. *Moore v. Midwest Distribution, Inc.*, 65 S.W.3d 490, 493 (Ark. App. 2002).

**2. Irreparable Harm to Plaintiff**
In order to obtain **injunctive** relief, a plaintiff must demonstrate that he will suffer irreparable harm without such relief. Absent a showing of irreparable harm, a preliminary **injunction** is not warranted. *Watkins, Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003). A plaintiff's harm from the denial of a preliminary **injunction** is irreparable if it is not fully compensable by monetary damages." *Certified Restoration Dry Cleaning Network*, 511 F.3d at 550. Harm is normally only considered irreparable when it cannot be fully or adequately compensated by money damages. *Roberts v. Van Buren Public Schools*, 731 F.2d 523, 526 (8th Cir. 1984); and *Three Sisters Petroleum, Inc. Langley*, 349 Ark. 167, 176, 72 S.W.3d 94 (Ark. 2002); *Freeman*, 102 Ark. App. at 80, 281 S.W.3d at 754.

Plaintiff argues it has suffered, and will continue to suffer irreparable harm if the Court fails to impose a Preliminary **Injunction**. Plaintiff contends that the Defendants will continue to enjoy a competitive advantage in the industry by the ability to underbid them based on their knowledge of its price points. Further, Plaintiff argues that both Shuler and Carter have garnered relationships with Carpet Tech's former customers, and they will continue to generate more business, to the detriment of Carpet Tech.[11] Plaintiff states that it has suffered substantial losses in revenue resulting from their former employees competing against them in the flooring industry and luring away its former customers on behalf of NCF. Plaintiff states that no amount of money will restore the business relationships it has lost with its customers. However, in the complaint, and again during the hearing, Plaintiff asserts that it has suffered at least $196,000 in decreased sales and lost profits during the past year. Also, "Carpet Tech's lost profit of $1 million of revenue is approximately $350,000. And that is just one year."[12] Plaintiff argues that these losses are the direct result of Defendant's wrongful strategy of stealing Carpet Tech's former customers.[13]

*7 Another indicator of the need for immediate **injunctive** relief is the speed with which relief is sought. Consequently, Defendants argue that Plaintiff has suffered no irreparable harm. If the harm was so damaging, Defendants argue, Plaintiff would not have waited nine months to take legal action. Defendants assert that Plaintiff's nine-month delay in seeking **injunctive** relief precludes a finding of irreparable harm. Plaintiff acquired standing to file his action for **injunctive** relief as early as March 14, 2013, the date it discovered Shuler began soliciting Carpet Tech's customers or March 18, 2013, the date the "cease and desist letter" was sent. If not then, the company had standing to file for **injunctive** relief upon its discovery that the Drop Box files, sales logs and other business documents had been downloaded by its former employees to NCF files as early as May 13, 2013 and no later than October 30, 2013.[14]

It appears to this Court that the delay in seeking **injunctive** relief is significant enough to weigh against a finding of irreparable harm. *CLT Logistics v. River West Brands*, 777 F. Supp.2d 1052, 1071 (E.D. Mich. 2011). The Court concludes that Carpet Tech's claims are not irreparable, and an award of monetary damages may provide adequate remedy. Accordingly, the Court finds that

Plaintiff has not demonstrated that it will suffer irreparable harm as a result of Defendants' actions.

The Court is not required make specific findings concerning each of the four factors if fewer factors are dispositive of the issue. *Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007). Thus, for the reasons stated above, Plaintiff's Motion for a Preliminary **Injunction** is **DENIED**. Plaintiff's Motion to Hold Defendants in Contempt of Court for Repeated Violations of the Temporary Restraining Order, DE #21, is DENIED as MOOT based on the Court's ruling on the Preliminary **Injunction**.

**IT IS SO ORDERED** this 30th day of April, 2014.

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 12531120

Footnotes

1  Plaintiff subsequently refiled DE #13 with a proper electronic signature as required by Fed. R. Civ. P. 5(d)(3) and the Court's ECF User Manual and ECF Policies and Procedures. Going forward, the Court will only reference the corrected filing, DE#16.
2  DE #1-1, Exhibit B, p 24.
3  DE #1-1, Exhibit C.
4  DE #1-1, Exhibit D.
5  DE #1-1 ¶¶ 3 and 4. During the evidentiary hearing, Mr. Shuler testified that he now resides in **Tennessee**.
6  A primary distinction, however, between the laws in **Tennessee** and Arkansas regarding non-compete agreements is that Arkansas state law will not vary the terms or apportion certain provisions of the covenant in order to make it enforceable. The contract as written will be considered in the court's determination of enforceability. *Bendinger v. Marshalltown Trowell Co.*, 338 Ark. 410, 994 S.W.2d 468, 473 (Ark. 1999) and *Moore v. Midwest Distribution, Inc.*, 65 S.W.3d 490, 494, (Ark. App. 2002). In **Tennessee**, the courts allow a "blue pencil" rule where the court may modify the agreement in order to enforce the reasonable portions of the agreement. *Central Adjustment Bureau Inc. v. Ingram*, 678 S.W.2d 28, 36 (**Tenn**. 1984).
7  Hearing Exhibit #1; Non-Compete Agreement executed by Jake Shuler on March 30, 2011.
8  Hearing Exhibit #2; Non-Compete Agreement executed by Tyler Carter on February 18, 2013.
9  Carpet Tech's President and CEO, Mr. Barry Griffith, conceded that he was ill-advised by counsel and has since implemented a less-restrictive agreement having only a two-year temporal limitation. Additionally both Defendants Shuler and Carter testified they were advised that the non-compete agreements were unenforceable. However, they stated they did not recall ever using Carpet Tech's cutsheets after leaving the company's employment in order to gain a competitive advantage while bidding for new customers.
10  Generally, non-compete agreements are also disfavored in **Tennessee** because they restrain trade and typically are strictly construed in favor of the employee. *Hasty v. Rent-A-Driver, Inc.*, 671 S.W.2d 471, 472 (**Tenn**. 1984).
11  Cut sheets were defined as Plaintiff's worksheets that include information regarding their customer lists, contact information, customer preferences, price points, and unit measurements.
12  Sealed DE #28.
13  DE #1-1, Count III.
14  Testimony to that effect was offered by Carpet Tech's Senior Director of Development Brandon Harris who indicated that he discovered Carpet Tech's documents were downloaded by Shuler on May 13, 2013, and then by Carter on October 30, 2013.

© 2018 Thomson Reuters. No claim to original U.S. Government Works. 7