**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

---

RAYMOND JAMES & ASSOCIATES, INC.,

    Plaintiff,

v.                                          CASE NO. 2:18-cv-02104-JTF-tmp

50 NORTH FRONT ST. TN, LLC,

    Defendant.

---

**DEFENDANT'S MOTION TO COMPEL RAYMOND JAMES & ASSOCIATES, INC.
TO PROVIDE COMPLETE RESPONSES TO DEFENDANT'S FIRST REQUEST FOR
PRODUCTION OF DOCUMENTS, AND TO STRIKE CERTIN OBJECTIONS**

---

    COMES NOW Defendant 50 North Front St. TN, LLC ("Landlord"), by and through its attorneys, and moves to compel Raymond James & Associates, Inc. ("RJA") to provide complete responses to Defendant's First Request for Production of Documents and to strike certain objections.

### I  CERTIFICATION OF CONSULTATION

    Pursuant to Local Rule 7.2(1)(B), on September 16, 2018, the undersigned counsel for Landlord, Lew Wardlaw, forwarded by email a draft copy of this motion to counsel for RJA counsel, Rob Clapper, and advised Mr. Clapper about the motion via telephone.  Counsel for the two parties were unable to meaningfully consult during this telephone call.  The undersigned counsel for Landlord, commits to further conferencing in a continued attempt to resolve the disputes raised in this motion.

## II  INTRODUCTION

Landlord leases RJA a portion of the building at 50 North Front Street in Memphis.  (*See* Commercial Lease (the "Lease") at ECF 41-1, Lease pp. 26-27).  The tenancy is governed by a June 26, 2014 Lease.  (ECF 41-1, Lease, pp. 26-123).  RJA was an existing tenant when the Lease was executed and was aware of the age and condition of the building and its elevators.

Despite being propounded targeted written discovery requests, RJA now seeks to hide documents that may conclusively show that its lawsuit is based on the fiction that "[t]he performance/operation of the elevators has deteriorated materially and substantially from the form, manner, and/or quality that existed at the time the Lease was signed (and which existed at or about the time Landlord purchased the Building)."  (ECF 41-1, ¶ 14).  The requested documents will allow Landlord to test RJA's allegations.

In those instances, in which RJA asserts a privilege, it should be compelled to provide a detailed privilege log.

## III  DEFENDANT'S REQUESTS FOR PRODUCTION

Landlord served Defendant's First Request for Production of Documents Propounded to Plaintiff Raymond James & Associates, Inc. to which RJA responded through its June 21, 2018 Raymond James' Response to Defendant's First Request for Production of Documents (the "1st RFP Responses" attached at Exhibit A).

## IV  DEFICIENT RESPONSES

RJA's 1st RFP Responses were uniformly deficient and included many objections solely designed to thwart discovery production.  The Court should strike many of RJA's objections as non-compliant with the Federal Rules of Civil procedure.

Landlord sets forth below each specific response/production deficiency and each errant objection:

**RESPONSE NO. 2**:  The Court should strike the temporal, "overly broad" and relevance objections, and should compel RJA to provide a complete answer and full production. The request's defining date (June 26, 2014) is dictated by the date of the Lease.  RJA has repeatedly alleged that "[t]he performance/operation of the elevators has deteriorated materially and substantially from the form, manner, and/or quality that existed at the time the Lease was signed (and which existed at or about the time Landlord purchased the Building)."  (ECF 41-1, ¶ 14).  RJA further argues that "the numerous elevator entrapments are but one star in a constellation of problems."  (ECF 70, p 3).  RJA "separately alleges that Landlord has failed to adequately maintain the Raymond James Tower at the level required by the Lease; these failures include (1) permanently dirty windows; (2) leaky windows; and (3) significant problems involving the common areas (including, but not limited to, a revolving door that does not work)."  (ECF 70, p 4) (internal citations omitted).  Notwithstanding the allegations, and their being tied directly to the Lease date, RJA refuses to produce documents – absent objection – "relating to any failures on the part of Defendant to keep, maintain, repair and/or operate Raymond James Tower in the standard it was kept, maintained, repaired and/or operated on the June 26, 2014."  The Court should order the unfettered production of the requested documents.

**RESPONSE NO. 3**:  The Court should strike the temporal, "overly broad", relevance and "vague, ambiguous, and convoluted" objections, and should compel RJA to provide a complete answer and full production. The request's defining date (June 26, 2014) is dictated by the date of the Lease.  RJA argues that "Landlord has failed to comply with the following contractual obligations in the Lease: (1) Landlord's obligation to 'maintain and operate the

Building' at the higher of the Current Standard (i.e., as things existed when the Lease was executed in June 2014) or the Comparable Buildings standard." (ECF 70, p 8). Notwithstanding the allegations, RJA refuses to produce documents – absent objection – "relating to any failure on the part of Defendant keep, maintain, repair and/or operate Raymond James Tower, or any portion thereof, in a manner and quality consistent with Comparable Buildings (as that term is defined in the Lease) since January, 2015." The Court should order the unfettered production of the requested documents.

**RESPONSE NO. 4**: The Court should strike the temporal, "far too broad" and "vague and ambiguous" objections, and should compel RJA to provide a complete answer and full production. The request's defining date (June 26, 2014) is dictated by the date of the Lease. RJA has repeatedly alleged that "[t]he performance/operation of the elevators has deteriorated materially and substantially from the form, manner, and/or quality that existed at the time the Lease was signed (and which existed at or about the time Landlord purchased the Building)." (ECF 41-1, ¶ 14). RJA further argues that "the numerous elevator entrapments are but one star in a constellation of problems." (ECF 70, p 3). RJA "separately alleges that Landlord has failed to adequately maintain the Raymond James Tower at the level required by the Lease; these failures include (1) permanently dirty windows; (2) leaky windows; and (3) significant problems involving the common areas (including, but not limited to, a revolving door that does not work)." (ECF 70, p 4) (internal citations omitted). Notwithstanding the allegations, and their being tied directly to the Lease date, RJA refuses to produce documents – absent objection – "relating to any deterioration or decline in condition since June 26, 2014 of the elevators located within Raymond James Tower." RJA bases its objections, in part on a refusal to accept the term "deterioration and decline" in their normal usage. The Court should order the unfettered

4

production of the requested documents.

**RESPONSE NO. 5**: The Court should strike the temporal, "far too broad" and relevance objections, and should compel RJA to provide a complete answer and full production. The request's defining date (June 26, 2014) is dictated by the date of the Lease. RJA has repeatedly alleged that "[t]he performance/operation of the elevators has deteriorated materially and substantially from the form, manner, and/or quality that existed at the time the Lease was signed (and which existed at or about the time Landlord purchased the Building)." (ECF 41-1, ¶ 14). RJA further argues the entrapment of "more than thirty employees". (ECF 70, p 3). Notwithstanding the allegations, and their being tied directly to the Lease date, RJA refuses to produce documents – absent objection – "relating to the entrapment of any person or persons in the elevators located within Raymond James Tower since June 26, 2014." The Court should order the unfettered production of the requested documents.

**RESPONSE NO. 6**: The Court should strike the temporal, "overly broad" and relevance objections, and should compel RJA to provide a complete answer and full production. The request's defining date (June 26, 2014) is dictated by the date of the Lease. RJA has repeatedly alleged that "[t]he performance/operation of the elevators has deteriorated materially and substantially from the form, manner, and/or quality that existed at the time the Lease was signed (and which existed at or about the time Landlord purchased the Building)." (ECF 41-1, ¶ 14). RJA further argues that "[t]he elevators are also frequently out of service; for example, one elevator was shut down for four weeks because its motor had to be repaired". (ECF 70, p 4). Notwithstanding the allegations, and their being tied directly to the Lease date, RJA refuses to produce documents – absent objection – "relating to any incident during which any of the elevators located within Raymond James Tower was out of service since June 26, 2014." The

Court should order the unfettered production of the requested documents.

**RESPONSE NO. 15**:  The Court should strike the "overly broad", vague, and relevance objections, and should compel RJA to provide a complete answer and full production.  The request's defining date (June 26, 2014) is dictated by the date of the Lease.  RJA has repeatedly alleged that "[t]he performance/operation of the elevators has deteriorated materially and substantially from the form, manner, and/or quality that existed at the time the Lease was signed (and which existed at or about the time Landlord purchased the Building)."  (ECF 41-1, ¶ 14).  RJA has grounded its Amended Complaint on this premise.  Yet, notwithstanding the allegations, RJA refuses to produce non-privileged responsive "internal discussions related to Lease negotiations."  The Court should order the unfettered production of the requested documents.

**RESPONSE NO. 16**:  The Court should strike the "overly broad" and relevance objections, and should compel RJA to provide a complete answer and full production.  RJA has repeatedly alleged that "[t]he performance/operation of the elevators has deteriorated materially and substantially from the form, manner, and/or quality that existed at the time the Lease was signed (and which existed at or about the time Landlord purchased the Building)."  (ECF 41-1, ¶ 14).  RJA has grounded its Amended Complaint on this premise.  Yet, notwithstanding the allegations, RJA refuses to produce documents – absent objection – "communication between Plaintiff and Parkway Properties about Plaintiff's potential purchase of Raymond James Tower."  Such documents, if produced, are expected to show RJA's knowledge of the building's condition.  The Court should order the unfettered production of the requested documents.

**RESPONSE NO. 17**:  The Court should strike the "overly broad" and relevance objections, and should compel RJA to provide a complete answer and full production.  RJA has repeatedly alleged that "[t]he performance/operation of the elevators has deteriorated materially

6

and substantially from the form, manner, and/or quality that existed at the time the Lease was signed (and which existed at or about the time Landlord purchased the Building)." (ECF 41-1, ¶ 14). RJA has grounded its Amended Complaint on this premise. Yet, notwithstanding the allegations, RJA refuses to produce documents – absent objection – "communication between Plaintiff and Parkway Properties about any elevator issues, including breakdowns, entrapments and/or injuries occurring on any of the elevators located within Raymond James Tower between January 1, 2013 and January 31, 2015." Such documents, if produced, are expected to show RJA's knowledge of the building's condition. The Court should order the unfettered production of the requested documents.

**RESPONSE NO. 18**: The Court should strike the "overly broad" and relevance objections, and should compel RJA to provide a complete answer and full production. RJA has repeatedly alleged that "[t]he performance/operation of the elevators has deteriorated materially and substantially from the form, manner, and/or quality that existed at the time the Lease was signed (and which existed at or about the time Landlord purchased the Building)." (ECF 41-1, ¶ 14). RJA has grounded its Amended Complaint on this premise. Yet, notwithstanding the allegations, RJA refuses to produce documents – absent objection – "communication between Plaintiff and Parkway Properties concerning the condition of the Raymond James Tower between January 1, 2013 and January 31, 2015." Such documents, if produced, are expected to show RJA's knowledge of the building's condition. The Court should order the unfettered production of the requested documents.

**RESPONSE NO. 20**: The Court should strike the "overly broad" and relevance objections, and should compel RJA to provide a complete answer and full production. The request's defining date (June 26, 2014) is dictated by the date of the Lease. RJA has repeatedly

7

alleged that "[t]he performance/operation of the elevators has deteriorated materially and substantially from the form, manner, and/or quality that existed at the time the Lease was signed (and which existed at or about the time Landlord purchased the Building)." (ECF 41-1, ¶ 14). RJA further argues that "the numerous elevator entrapments are but one star in a constellation of problems." (ECF 70, p 3). RJA "separately alleges that Landlord has failed to adequately maintain the Raymond James Tower at the level required by the Lease; these failures include (1) permanently dirty windows; (2) leaky windows; and (3) significant problems involving the common areas (including, but not limited to, a revolving door that does not work)." (ECF 70, p 4) (internal citations omitted). Notwithstanding the allegations, RJA refuses to produce documents – absent objection – "relating to communications between Plaintiff and Parkway Properties and/or any broker concerning the Tenant Estoppel Certificate executed by Plaintiff on January 13, 2015." Such documents, if produced, are expected to show RJA's knowledge of the building's condition. The Court should order the unfettered production of the requested documents.

**RESPONSE NO. 21**: The Court should strike the "overly broad", vague, and relevance objections, and should compel RJA to provide a complete answer and full production. The request's defining date (June 26, 2014) is dictated by the date of the Lease. RJA has repeatedly alleged that "[t]he performance/operation of the elevators has deteriorated materially and substantially from the form, manner, and/or quality that existed at the time the Lease was signed (and which existed at or about the time Landlord purchased the Building)." (ECF 41-1, ¶ 14). RJA further argues that "the numerous elevator entrapments are but one star in a constellation of problems." (ECF 70, p 3). RJA "separately alleges that Landlord has failed to adequately maintain the Raymond James Tower at the level required by the Lease; these failures include (1)

permanently dirty windows; (2) leaky windows; and (3) significant problems involving the common areas (including, but not limited to, a revolving door that does not work)." (ECF 70, p 4) (internal citations omitted). Notwithstanding the allegations, RJA refuses to produce non-privileged documents – absent objection – "relating to Plaintiff's internal discussions about Plaintiff's potential purchase of Raymond James Tower." Such documents, if produced, are expected to show RJA's knowledge of the building's condition. The Court should order the unfettered production of the requested documents.

**RESPONSE NO. 25**: The Court should strike the temporal, "overly broad", privilege, relevance, and commercial sensitivity objections, and should compel RJA to provide a complete answer and full production. The request's defining date (June 26, 2014) is dictated by the date of the Lease. RJA has repeatedly alleged that "[t]he performance/operation of the elevators has deteriorated materially and substantially from the form, manner, and/or quality that existed at the time the Lease was signed (and which existed at or about the time Landlord purchased the Building)." (ECF 41-1, ¶ 14). RJA further argues that "the numerous elevator entrapments are but one star in a constellation of problems." (ECF 70, p 3). RJA "separately alleges that Landlord has failed to adequately maintain the Raymond James Tower at the level required by the Lease; these failures include (1) permanently dirty windows; (2) leaky windows; and (3) significant problems involving the common areas (including, but not limited to, a revolving door that does not work)." (ECF 70, p 4) (internal citations omitted). Notwithstanding the allegations, RJA refuses to produce non-privileged documents – absent objection – "relating to any communications from January 1, 2013 to Present between Plaintiff and DTZ/Cushman & Wakefield or any other brokers." Such documents, if produced, are expected to show RJA's knowledge of the building's condition and may demonstrate RJA's actual reasons for wanting to

leave the subject building.  The Court should order the unfettered production of the requested documents.

**RESPONSE NO. 26**:  The Court should strike the temporal, "overly broad", privilege, relevance, and commercial sensitivity objections, and should compel RJA to provide a complete answer and full production. The request's defining date (June 26, 2014) is dictated by the date of the Lease.  RJA has repeatedly alleged that "[t]he performance/operation of the elevators has deteriorated materially and substantially from the form, manner, and/or quality that existed at the time the Lease was signed (and which existed at or about the time Landlord purchased the Building)."  (ECF 41-1, ¶ 14).  RJA further argues that "the numerous elevator entrapments are but one star in a constellation of problems."  (ECF 70, p 3).  RJA "separately alleges that Landlord has failed to adequately maintain the Raymond James Tower at the level required by the Lease; these failures include (1) permanently dirty windows; (2) leaky windows; and (3) significant problems involving the common areas (including, but not limited to, a revolving door that does not work)."  (ECF 70, p 4) (internal citations omitted).  Notwithstanding the allegations, RJA refuses to produce non-privileged documents – absent objection – "relating to any communications from January 1, 2013 to Present between Plaintiff and CBRE, DTZ/Cushman & Wakefield (or its separate predecessor entities) or any other brokers concerning Plaintiff's Potential purchase of Raymond James Tower."  Such documents, if produced, are expected to show RJA's knowledge of the building's condition and may demonstrate RJA's actual reasons for wanting to leave the subject building.

Moreover, on September 10, 2018, the Court entered its Order Granting Commercial Advisor's Motion to Quash (ECF 94).  The underlying motion was granted in part, because "50 North has not offered any reason why it cannot obtain these same documents from Raymond

10

James." Through this Request No. 26 for Production, Landlord has attempted to these documents directly from RJA, but has been denied.

The Court added in its Order that:

> Raymond James also objects to the subpoena as it pertains to Commercial Advisors, which Raymond James has retained as a consulting expert. As noted previously, the court has quashed the subpoena served upon Commercial Advisors on the grounds that 50 North should first attempt to obtain the documents from Raymond James. To the extent that 50 North seeks production of these Commercial Advisors records from Raymond James, documents that are discoverable are not shielded from discovery simply by the fact that Raymond James retains Commercial Advisors as an expert.

Order Granting in Part and Denying in Part Plaintiff's Motion to Quash (ECF 96). The Court should order the unfettered production of the requested documents.

## V  CONCLUSION

WHEREFORE, PREMISES CONSIDERED, the Court should compel Raymond James & Associates, Inc. to fully respond to Defendant's First Request for Production of Documents and strike those of RJA's objections, which have been identified as outside of the scope of the Federal Rules of Civil Procedure. The Court should further require Raymond James & Associates, Inc. to provide a comprehensive privilege log for those documents that are withheld form production.

        Respectfully submitted by,

        <u>J. Lewis Wardlaw</u>
        David Wade (Tenn. Bar No. 4106)
        J. Lewis Wardlaw (Tenn. Bar No. 23078)
        MARTIN, TATE, MORROW & MARSTON, P.C.
        6410 Poplar Ave., Tower II, Suite 1000
        Memphis, TN 38119-4839
        (901) 522-9000
        (901) 527-3746 (Fax)
        *dwade@martintate.com*
        *lwardlaw@martintate.com*

        *Attorneys for Defendant*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing was served upon the below-listed counsel this 16th day of September, 2018, through the Court's ECF System:

Niel Prosser
Rob Clapper
Kyle Johnson
The Prosser Law Firm, PLC
5865 Ridgeway Center Parkway, Suite 300
Memphis, Tennessee 38120

Melissa A. Maravich
Gary Scott Peeples
Burch, Porter & Johnson, PLLC
130 North Court Avenue
Memphis, TN 38103        <u>J. Lewis Wardlaw</u>