**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

RAYMOND JAMES & ASSOCIATES, INC.,

   Plaintiff,

v.                                                                                                  NO. 2:18-cv-02104-JTF-tmp

50 NORTH FRONT ST. TN, LLC,

   Defendant.

**REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR PROTECTIVE
ORDER AND FOR SANCTIONS AGAINST PLAINTIFF**

COMES NOW the Defendant, 50 North Front St. TN, LLC (hereinafter "Landlord"), pursuant to Local Rule 7.2(c) and with leave of Court (ECF No. 230) and submits the following Reply Brief in support of its Motion for Protective Order and for Sanctions Against Plaintiff. (ECF No. 225).

**LAW AND ARGUMENT**

**A.**    **Landlord's Motion is Procedurally Proper.**

In its Brief in opposition to Landlord's Motion, the Plaintiff, Raymond James & Associates, Inc. (hereinafter "RJA"), asserts that Landlord's Motion should be denied as a belated attempt to appeal the "Order Granting in Part and Denying in Part Defendant's Motion for a Protective Order" that was entered by the Magistrate Judge on October 3, 2018. See RJA's Brief, p. 3. RJA claims that "Landlord cannot now be heard to complain" about its obligation "to produce a wide range of financial documents/information" to RJA. See RJA's Brief, p.4. Landlord respectfully disagrees. Courts always retain the inherent power to govern the proceedings before

them to prevent abuses, oppression and injustice. See International Prods. Corp v. Koons, 325 F. 2d 403, 407-408 (2d Cir. 1963) (citing Gumbel v. Pitkin, 124 U.S. 131, 144, 8 S. Ct. 379, 31 L. Ed. 374 (1888). This inherent power unquestionably extends to a party's improper litigation tactics and abuse of the discovery process. Indeed, the Advisory Committee Comments to the 1983 Amendments to Rule 26 of the Federal Rules of Civil Procedure expressly note that "excessive discovery poses significant problems in a case." The Comments also note that judges are encouraged to be more aggressive in identifying and discouraging discovery overuse. See Notes of Advisory Committee on 1983 Amendments to Rule 26(b)(1). Furthermore, it is beyond debate that a court may re-examine an earlier ruling if the court has a conviction that the earlier ruling was wrong, and rescinding the erroneous ruling will not cause undue harm to the party that benefitted from it. See United States v. Smith, 389 F.3d 944, 949 (9th Cir. 2004) (citations omitted). This authority would necessarily include instances when a court has issued an interlocutory ruling predicated on a party's misrepresentation of the law and/or the operative facts in a case.

In the case at bar, the Order entered by the Magistrate Judge on October 3, 2018 (ECF No. 107) permitted extremely broad discovery into the personal finances of Jacob Sofer, a non-party to this action. This discovery was allowed based on RJA's misrepresentations that the subject information was necessary to support RJA's claim that Landlord was guilty of gross negligence and to support RJA's potential effort to pierce the corporate veil. Their stated goal is to somehow impose personal liability on Mr. Sofer for any judgment against Landlord in this action, notwithstanding the fact that the Defendant is an LLC and Mr. Sofer is not a party to the litigation. RJA knew or should have known that these arguments were completely invalid under the law and the terms of the Lease.

RJA has pursued a scorched earth litigation strategy in this case to overwhelm and drain Landlord's resources in an effort to force Landlord to capitulate to RJA's quest to free itself of its obligations under the Lease. RJA's simple goal is to get out of the downtown Lease and consolidate their operations in East Memphis. As part of its improper tactics to achieve this goal, RJA propounded enormously overbroad discovery to Landlord and convinced the Court to permit such discovery by using arguments that RJA knew or should have known were legally and factually meritless.

As noted in Landlord's Memorandum of Law in Support of its Motion for Protective Order and for Sanctions (ECF No. 225-1), Mr. Sofer's personal finances are irrelevant to the question of whether Landlord has been guilty of gross negligence in performing its duties under the Lease. Tenn. Code Ann. §48-249-114 expressly provides that a member, holder, director, manager, officer, employee or other agent of an LLC does not have any personal obligation and is not otherwise personally liable for the acts, debts, liabilities or obligations of the LLC. See Tenn. Code Ann. §48-249-114(a)(1)(B). Furthermore, RJA's "piercing the corporate veil" argument was equally invalid because paragraph 40 of the Lease expressly provides that RJA's sole means of collecting any judgment against Landlord is to proceed against Landlord's ownership interest in the Raymond James Tower. (See Lease, ECF No. 41-1, PageID 398). Thus, the Lease precludes invocation of the piercing the corporate veil doctrine to collect a judgment against Landlord. In fact, RJA relied upon the subject provisions from paragraph 40 of the Lease to justify filing a Lien Lis Pendens against the Raymond James Tower. The foregoing perfectly illustrates RJA's bad faith in advancing an inconsistent position to justify its patently overly broad discovery requests.

This Court has the inherent power to issue appropriate orders to rectify a party's misrepresentations and improper litigation tactics. This is the exact relief that Landlord is

requesting from this Honorable Court. RJA's attempt to invoke the doctrine of waiver to shield itself from scrutiny and sanctions for its wrongful conduct is unavailing and should be summarily rejected by this Honorable Court.

**B.     Landlord's Motion Accurately Reflects the Arguments that RJA Advanced in Bad Faith to Support its Improper Discovery Requests.**

In its Brief, RJA grossly mischaracterizes the arguments that Landlord made in support of its Motion. RJA claims that Landlord's Motion focuses almost exclusively on the fallacy of RJA's "piercing the corporate veil" argument while ignoring the fact that RJA also argued that broad discovery into Mr. Sofer's personal finances was necessary for RJA to prove that Landlord had the financial ability to modernize the elevator system in the Tower.[1] RJA concedes that if Landlord does not have the funds to modernize the elevator system, Landlord cannot be guilty of gross negligence, which is a condition precedent for the imposition of any liability against Landlord. See RJA's Brief, pp. 4-11. Contrary to RJA's assertions, Landlord's Motion directly addressed the

---

[1] RJA has acknowledged in these proceedings that it must prove that Landlord has been guilty of gross negligence for Landlord to be liable for allegedly breaching the Lease. RJA also has acknowledged that Landlord cannot be guilty of gross negligence if Landlord has not had sufficient funds from its operations to modernize the elevator system in the Raymond James Tower. To support its "gross negligence" argument, RJA has asserted that if money has been siphoned from Landlord to a related entity such as Mr. Sofer, rather than spending funds on the elevator system, this would be relevant to proving that Landlord was guilty of gross negligence. However, in advancing this argument to the Court, RJA conveniently failed to mention that RJA's Lease is a Gross Lease whereby Landlord is responsible for all of the operating expenses of the Tower. Under the Lease, RJA was afforded a 33-month period when it did not have to pay any rent. During this time, Landlord was responsible for the substantial operational costs of the Tower while receiving no rent from its largest tenant. RJA also conveniently failed to mention that documents reflecting the operating expenses of the Tower are routinely provided to RJA. Thus, RJA has always been aware of the substantial operating costs of the Tower. Furthermore, in making the subject argument, RJA conveniently ignored all of the other projects that Landlord has undertaken with respect to the Tower, including the significant projects of replacing the roof of the building and sealing, caulking and polishing the windows of the building. The records that Landlord has produced in discovery demonstrate that the Tower has been operating in a negative cash flow position for an extended period of time and that no money has been improperly "siphoned away", as erroneously suggested by RJA. Attached hereto as Exhibit A is Landlord's General Ledger account relating to Madison Holding Trust. Madison Holding Trust provided Landlord with the funds to purchase the building. As the General Ledger demonstrates, Landlord was able to make some payments to Madison Holding Trust toward the acquisition loan. However, Landlord has not been able to continue doing so because Landlord has been operating in a negative cash flow position. This has resulted in Madison Holding Trust advancing additional funds to Landlord. Given the foregoing and following RJA's position that Landlord cannot be guilty of gross negligence unless it has sufficient funds for the elevator modernization, it is clear that RJA is not entitled to any damages from Landlord for any alleged breach of the Lease.

complete fallacy of the "gross negligence" and "piercing the corporate veil" arguments that RJA advanced to justify its improper discovery requests.

RJA goes to great lengths to emphasize the "gross negligence" argument that it advanced to rationalize its improper discovery requests while downplaying its specious "piercing the corporate veil" argument. With respect to RJA's "gross negligence" argument, the Memorandum of Law that Landlord submitted in support of its Motion expressly stated as follows:

> The financial information of Mr. Sofer and members of his family also is completely irrelevant to the question of whether Landlord has acted with gross negligence or willful misconduct. To suggest that Mr. Sofer or members of his family have any legal responsibility for the acts, debts, liabilities or obligations of 50 North Front St. TN, LLC, is a gross misstatement of the law. Tenn. Code Ann. §48-249-114 clearly recognizes that a member, holder, director, manager, officer, employee or other agent of an LLC does not have any personal obligation and is not otherwise personally liable for the acts, debts, liabilities or obligations of the LLC. See Tenn. Code Ann. §48-249-114(a)(1)(B).

See Landlord's Memorandum of Law, (ECF No. 225-1), p. 2.

RJA makes the following argument in a strained attempt to explain away the fact that its "gross negligence" argument is completely invalid in light of the provisions of Tenn. Code Ann. §48-249-114 referenced above:

> Notably absent from the October 3 Order – aside from a brief acknowledgment in the recitation of the procedural history that Raymond James had raised the argument in the alternative in its response brief – is any discussion of, much less any suggestion of reliance on, a veil-piercing theory. Landlord glosses over this in its Motion and essentially ignores that the primary rationale asserted by Raymond James for financial discovery in its response brief and at oral argument on the Motion for a Protective Order was the gross negligence issue. Indeed, all Landlord has to say in its Motion about the gross negligence issue is to repeatedly invoke the general rule that, in the ordinary case, members of a limited liability company are not personally liable for the company's acts or debts. **This argument amounts to a non-sequitur because the usual limitations on personal liability by definition *do not apply* in cases where the veil piercing is deemed appropriate.**

See RJA's Brief (ECF No. 229-1), p. 11. (italicized in original) (emphasis added).

Thus, after initially attempting to distance itself from the misleading "piercing the corporate veil" argument, RJA's Brief then proceeds to invoke the piercing the corporate veil doctrine to justify its "gross negligence" argument in the face of Tenn. Code Ann. §48-249-114. In doing so, RJA effectively acknowledges that its "gross negligence" argument is invalid absent invocation of the piercing the corporate veil doctrine. Thus, at bottom, RJA's "gross negligence" argument is predicated on its bogus "piercing the corporate" argument. Therefore, RJA's attempt to explain away its improper actions by emphasizing its "gross negligence" argument is unavailing.

Other pleadings filed by RJA confirm that its "piercing the corporate veil" argument was nothing more than a ruse to convince the Magistrate Judge to deny Landlord's original Motion for Protective Order. By way of example, on September 10, 2018, RJA filed an Abstract and Notice of Lien Lis Pendens in relation to the Raymond James Tower. (See ECF No. 93). In this pleading, RJA attempted to justify its entitlement to a lien lis pendens by noting that the "Lease between Tenant, Raymond James, and Landlord purports to limit the collection of any judgment for damages for Landlord's breach of the Lease to Landlord's interest in the property." (See ECF No. 93, PageID 1080, ¶5). In its Memorandum in Opposition to Landlord's Motion to Dismiss the Lien Lis Pendens, RJA candidly admitted that "if Raymond James prevails on one or more of its claims against Landlord, then Raymond James will need to look to Landlord's interests (if any) in the Raymond James Tower." (See ECF No. 141-1, PageID 2121).

Given the fact that RJA's Lien Lis Pendens was filed in close proximity with RJA's Response in Opposition to Landlord's Motion for Protective Order, it is readily apparent that when RJA filed its Response (ECF No. 84), it had to have known that the Lease limited the collection of any judgment against Landlord to Landlord's interest in the Tower and that the "piercing the corporate veil" argument advanced in its Response was grossly misleading and completely

6

meritless. RJA's representation to the Court that expansive discovery into Mr. Sofer's personal finances was justified by the "piercing the corporate veil" doctrine was nothing more than a sham to convince the Magistrate Judge to force Landlord to respond to patently overbroad discovery requests. These improper litigation tactics strongly support the granting of Landlord's Motion for Protective Order and for Sanctions against RJA. (ECF No. 225).

**C.    Contrary to RJA's Assertions, Landlord's Motion Does Not Ignore Relevant Law.**

RJA erroneously claims that Landlord's Motion ignores relevant law. RJA claims that Landlord's Motion ignores the law in Tennessee that exculpatory clauses will not be enforced in situations involving gross negligence. See RJA's Brief, p. 12. To support this argument, RJA cites Lansky v. Protection One Alarm Monitoring, Inc., 2018 WL 6588566 (W.D. Tenn. July 18, 2018); Adams v. Roark, 686 S.W. 2d 73 (Tenn. 1985) and Soroof Trading Dev. Co. v. GE Fuel Sale Sys., LLC, 842 F. Supp. 2d 502 (S.D.N.Y. 2012). RJA relies upon this caselaw to erroneously suggest that paragraph 40 of the Lease, which limits the collection of any judgment against Landlord to Landlord's interest in the Raymond James Tower, is invalid under Tennessee law. RJA's argument is fundamentally incorrect because the subject provisions of the Lease do not represent an exculpatory clause within the meaning of Tennessee law. Under Tennessee law, an exculpatory clause is a clause that deprives one party of the right to recover damages for harm caused by the other party's negligence. See Lomax v. Hedley Holmes, C.A. NO. 02A01-9607-CH-00163, 1997 Tenn. App. LEXIS 360, at *14 (Tenn. Ct. App. May 22, 1997). Paragraph 40 of the Lease does not represent an exculpatory clause because it does not relieve Landlord of liability for gross negligence. Rather, paragraph 40 of the Lease governs how a judgment against Landlord must be collected. Thus, RJA's suggestion that the subject provisions in paragraph 40 of the Lease are unenforceable under Tennessee law is completely wrong.

RJA also cites caselaw relating to the applicable standard for piercing the corporate veil under Tennessee law. (See RJA's Brief, p. 12). RJA then claims that it believes that veil piercing may be available to it if, for example, the Raymond James Tower is no longer available to satisfy a judgment rendered in its favor. However, RJA's professed belief on the subject is completely irrelevant because paragraph 40 of the Lease precludes any application of the piercing the corporate veil doctrine in this lawsuit. Thus, RJA's persistent reliance on the piercing the corporate veil doctrine is completely disingenuous.

D.  **Landlord Did Not Open the Door for RJA to Publicly Disclose the Private Financial Information of Madison Holding Trust, Jacob Sofer and Hanna Sofer.**

In the Memorandum of Law that Landlord submitted in support of its Motion for Protective Order and for Sanctions Against Plaintiff (ECF No. 225-1), Landlord complained about RJA's public disclosure of sensitive financial information pertaining to Madison Holding Trust, Jacob Sofer and members of Mr. Sofer's family. (See Memorandum of Law, pp. 10-11). In its Brief in opposition to Landlord's Motion, RJA claims that "Landlord opened the door for the subject disclosure by asserting in its Motion to Stay Discovery that RJA has designed this lawsuit to overwhelm and drain Landlord's funds and resources" and that RJA, "as a publicly traded S&P 500 Company with over 10 Billion dollars in capitalization, has an unlimited source of funds to deploy" in this endeavor. (See RJA's Brief, p. 13). RJA claims that these averments justified RJA's public disclosure of the private financial information of Madison Holding Trust as well as Mr. Sofer and his wife. To support this contention, RJA asserts that "[b]y opening the door as to its supposed inability to afford to litigate this matter, Landlord forced Raymond James to respond with evidence of Landlord's actual financial resources." (See RJA's Brief, p. 14).

RJA's argument is beyond specious. Notably, RJA did not inject Landlord's financial information into the public record to demonstrate that Landlord is capable of funding this litigation.

8

Rather, RJA publicly disseminated the private financial information of Madison Holding Trust as well as Mr. Sofer and his wife. There was no legitimate reason for RJA to publicly disclose this sensitive financial information when Madison Holding Trust, Mr. Sofer and members of his family are not parties to this action, are not parties to the Lease, cannot be subject to any liability for the claims in this case and have no legal obligation for any of the debts, acts, liabilities or obligations of Landlord under Tennessee law. (See Tenn. Code Ann. §48-249-114). Thus, RJA's contention that Landlord opened the door for RJA to publicly disclose the private financial information of Madison Holding Trust, Jacob Sofer and Hanna Sofer is plainly incorrect.

### E. Landlord Did Not Fail to Avail Itself of the Discovery Protective Order.

In its Brief, RJA contends that Landlord's Motion should be denied because Landlord failed to avail itself of the protections afforded by the Discovery Protective Order when it designated financial documents pertaining to Mr. Sofer and members of his family as "Confidential" rather than "Sensitive." Under the Discovery Protective Order, a document and the information contained therein that is designated as "Sensitive" must be filed under seal. However, the same protections do not extend to documents that are designated as "Confidential."

RJA's Brief erroneously suggests that Landlord could have protected the personal financial information of Mr. Sofer and members of his family from public disclosure by designating the subject documents as "Sensitive." However, this argument ignores the fact that the Discovery Protective Order specifically delineates the type of documents that can be designated as "Sensitive." The Discovery Protective Order expressly provides that "Sensitive" refers to confidential material that contains "trade secrets or other commercially sensitive business information." (See ECF No. 87, PageID 1056). Thus, the personal financial information of Mr. Sofer and members of his family does not qualify as a "Sensitive" matter as defined by the

Discovery Protective Order. In fact, if Landlord had wrongfully designated the subject documents as "Sensitive", this would have represented a violation of the Discovery Protective Order. RJA's contention that Landlord's Motion for Protective Order and for Sanctions should be denied because Landlord complied with the Discovery Protective Order is meritless.

## CONCLUSION

For the foregoing reasons and those covered in its supporting Memorandum of Law, Landlord respectfully submits that its Motion for Protective Order and for Sanctions against Plaintiff should be granted.

Respectfully submitted,

BLACK MCLAREN JONES RYLAND AND GRIFFEE, P.C.

By: /s/ *John C. Ryland*
   Michael G. McLaren (5100)
   John C. Ryland (#16878)
   530 Oak Court Drive, Suite 360
   Memphis, Tennessee 38117
   (901) 762-0535 phone, (901) 762-0539 fax
   mmclaren@blackmclaw.com
   jryland@blackmclaw.com
   *Attorneys for Defendants 50 North Front St. TN, LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and attested copy of the "Reply Brief in Support of Defendant's Motion to Stay Discovery Pending the Adjudication of Defendant's Motion to Dismiss Plaintiff's First Amended Complaint" has been sent to counsel for the Plaintiff, Niel Prosser (np@prosserlaw.com) and Gary Scott Peeples (gpeeples@bpjlaw.com) via the Court's ECF system on this 12th day of June, 2019.

| | |
|---|---|
| Niel Prosser, Esq. | Melissa A. Maravich, Esq. |
| Rob Clapper, Esq. | Gary Scott Peeples, Esq. |
| Kyle Johnson, Esq. | BURCH, PORTER & JOHNSON, PLLC |
| THE PROSSER LAW FIRM, PLC | 130 North Court Avenue |
| 5865 Ridgeway Center Pkwy, Ste. 300 | Memphis, Tennessee 38103 |
| Memphis, Tennessee 38120 | |

/s/ *John C. Ryland*
John C. Ryland (#16878)