IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

RAYMOND JAMES & ASSOCIATES, INC.,

      Plaintiff,

v.                                                    NO. 2:18-cv-02104-JTF-tmp

50 NORTH FRONT ST. TN, LLC,

      Defendant.

## DEFENDANT'S APPEAL OF THE MAGISTRATE JUDGE'S ORDER DENYING DEFENDANT'S MOTION FOR PROTECTIVE ORDER AND FOR SANCTIONS AGAINST PLAINTIFF

COMES NOW the Defendant, 50 North Front St. TN, LLC (hereinafter "Landlord"), by and through counsel and pursuant to Rule 72(a) of the Federal Rules of Civil Procedure and Local Rule 72.1(g), respectfully files this Appeal with respect to the Magistrate Judge's Order Denying Defendant's Motion for Protective Order and For Sanctions Against Plaintiff (hereinafter the "Order") (ECF No. 250) that was entered on June 28, 2019. For the reasons set forth below, Landlord respectfully submits that the Magistrate Judge erred in denying Landlord's Motion for Protective Order and for Sanctions Against Plaintiff (ECF No. 225).

### I.        APPLICABLE STANDARD OF REVIEW

Pursuant to Rule 72(a) of the Federal Rule of Civil Procedure and Local Rule 72.1(g)(1), a party may appeal an interlocutory order of a Magistrate Judge concerning a pre-trial matter within fourteen (14) days after being served with a copy of the order. The presiding District Judge may reconsider an order appealed in this manner if the appealing party demonstrates that the Magistrate Judge's order is "clearly erroneous or contrary to law." See Local Rule 72.1(g)(1); see also

28 U.S.C. §636(b)(1)(A); <u>United States v. Curtis</u>, 237 F.3d 598, 603 (6th Cir. 2001). The "clearly erroneous" standard applies only to factual findings made by the Magistrate Judge, while legal conclusions are to be review under the more lenient "contrary to law" standard. See <u>E.E.O.C. v. Burlington, N. & Santa Fe Ry. Co.</u>, 621 F.Supp.2d 603, 605 (W.D. Tenn. 2009) (<u>quoting</u> <u>Gandee v. Glaser</u>, 785 F.Supp. 684, 686 (S.D. Ohio 1992), <u>aff'd</u> 19 F.3d 1432 (6th Cir. 1994)).

## II.    <u>FACTUAL BACKGROUND</u>

Landlord leases to the Plaintiff, Raymond James & Associates, Inc. (hereinafter "RJA"), approximately 185,656 square feet of the building located at 50 North Front Street in Memphis, Tennessee. (<u>See</u> Lease at ECF No. 41-1, PageID 375). RJA was an existing tenant in the building when the current ten-year Lease was executed in 2014. RJA has initiated this litigation in an effort to vacate the leased premises to consolidate its operations in East Memphis without having to pay the early termination fee required by the Lease. To accomplish this goal, RJA has pursued a scorched earth litigation strategy to impose as much pressure and expense on Landlord as possible in an effort to force Landlord to capitulate and free RJA from its financial obligations under the Lease. In furtherance of this litigation strategy, RJA has endeavored to weaponize the discovery process to make this litigation as expensive as possible on Landlord. RJA's bad faith is perfectly illustrated by the inconsistent positions it has taken to unreasonably expand the scope of discovery to increase Landlord's expenses in this litigation.

On July 10, 2018, RJA served Landlord with a Second Set of Interrogatories and a Second Set of Requests for Production of Documents. (<u>See</u> ECF Nos. 56 and 57). These discovery requests were enormously overbroad and requested information and documentation that is completely irrelevant to the issues in this case. Based on the foregoing, Landlord filed a Motion for Protective Order on August 8, 2018. (<u>See</u> ECF No. 74). In its Motion for Protective Order, Landlord raised

2

numerous objections to RJA's Second Set of Interrogatories and Second Set of Requests for Production of Documents including objections to Requests seeking the personal financial information of Jacob Sofer and his family members. (See ECF No. 74).

On August 22, 2018, RJA filed its Response in Opposition to Landlord's Motion for Protective Order. (See ECF No. 84). In its Response, RJA represented to the Court that its inquiries into the financial affairs of Mr. Sofer, Mr. Friedman, and the entities and trusts in which Mr. Sofer had a controlling interest (hereinafter referred to collectively as "Sofer") were appropriate because RJA may seek to pierce the corporate veil to impose personal liability on Mr. Sofer for any judgment in this case. (See ECF No. 84, PageID 1047). RJA also asserted that it needed the Sofer financial information to demonstrate that Landlord's conduct constituted gross negligence or willful misconduct which must be proven by RJA to recover any judgment against Landlord. (See ECF No. 84, PageID 1047).  The Magistrate Judge agreed that such inquiries were relevant and largely denied Landlord's request for a Protective Order. (See ECF No. 107). However, other pleadings filed by RJA confirm that its arguments in support of these discovery requests were nothing more than a sham to convince the Magistrate Judge to deny Landlord's Motion for Protective Order.

On September 10, 2018, RJA filed an Abstract and Notice of Lien Lis Pendens in this cause in relation to the Raymond James Tower. (See ECF No. 93). In this pleading, RJA attempted to justify its entitlement to a Lien Lis Pendens by noting that the "Lease between Tenant Raymond James and Landlord purports to limit the collection of any judgment for damages for Landlord's breach of the Lease to Landlord's interest in the Property." (See ECF No. 93, PageID 1080, ¶5.) Given the fact that the Lien Lis Pendens was filed in close conjunction with the filing of RJA's Response in Opposition to Landlord's Motion for Protective Order, it appears readily apparent that

when RJA filed its Response (ECF No. 84) it must have known that the Lease limited the collection of any judgment to Landlord's interest in the Property and that the "piercing the corporate veil argument" advanced in its Response in opposition to Landlord's Motion for Protective Order was legally and factually invalid.

RJA's Lien Lis Pendens was improper as a matter of law. As a result, on December 20, 2018, Landlord filed a Motion to Dissolve the Lien Lis Pendens. (See ECF No. 135). On January 3, 2019, RJA filed a Response and Supporting Memorandum in opposition to Landlord's Motion. (See ECF Nos. 141 and 141-1). In an attempt to justify the propriety of its Lien Lis Pendens, RJA again claimed that the language of the Lease necessitated the filing of a Lien Lis Pendens and directed the Court to paragraph 40 of the Lease which states as follows:

> 40.   Limitation of Liability.  Notwithstanding anything to the contrary, Tenant's sole exclusive method of collecting on any judgment Tenant obtains against Landlord, or any other award made to Tenant in any judicial process requiring the payment of money by Landlord for the failure of Landlord to perform any of its obligations shall be to proceed against the interest of Landlord in and to the project. **Therefore, Tenant agrees that no personal or corporate liability of any kind or character whatsoever now attaches or at any time hereafter under any condition shall attach to Landlord for payment or performance of any obligations hereunder, including without limitation, any Landlord indemnity obligations under Section 26. The obligations under this Section shall survive the expiration or early termination of this Lease.**

(See Lease, ECF No. 41-1, PageID 398) (emphasis added).

In its Memorandum in opposition to Landlord's Motion, RJA candidly admitted that "if Raymond James prevails on one or more of its claims against Landlord, then Raymond James will need to look to Landlord's interests (if any) in the Raymond James Tower." (See ECF No. 141-1, PageID 2121). Through its pleadings (ECF Nos. 93, 141 and 141-1), RJA acknowledged the fact that when it entered into the Lease, it waived any right to collect any judgment from anyone or anything other than Landlord's interest in the building and the land upon which it sits. Thus, RJA's

4

previous representation to the Court that expansive discovery concerning Sofer's finances was justified by the piercing the corporate veil doctrine was done simply to convince the Magistrate Judge to force Landlord to respond to patently overbroad discovery requests.

The Sofer financial information also is completely irrelevant to the question of whether Landlord has acted with gross negligence or willful misconduct. To suggest that Mr. Sofer, has any legal responsibility for the acts, debts, liabilities or obligations of Landlord is a gross misstatement of the law. Tenn. Code Ann. §48-249-114 expressly provides that a "member, holder, director, manager, officer, employee or other agent of an LLC does not have any personal obligation and is not otherwise personally liable for the acts, debts, liabilities or obligations of the LLC." See Tenn. Code Ann. §48-249-114 (a)(1)(b).

RJA's false and meritless assertions resulted in Landlord turning over all of its custodian e-mail accounts, as well as Mr. Sofer's and Joel Friedman's personal e-mail accounts, thereby resulting in a breach of their personal privacy. RJA's actions resulted in RJA obtaining hundreds of thousands of documents and, via court filings, making public (at least temporarily) Sofer's financial information, such as information related to his individual net worth, as well as the net worth of Madison Holding Trust, a trust in which Mr. Sofer has an interest. (See ECF No. 214-1, PageID 3532, ¶1).

In light of the foregoing, on May 15, 2019, Landlord filed a Motion for Protective Order and for Sanctions against Plaintiff, along with a "Memorandum of Law in Support of Defendant's Motion for Protective Order and for Sanctions." (ECF Nos. 225 and 225-1). RJA filed a Response in opposition to Landlord's Motion (ECF No. 229) and Landlord filed a Reply Brief in support of its Motion (ECF No. 238).

The Magistrate Judge conducted a hearing on Landlord's Motion on June 25, 2019. (ECF No. 250). At the hearing, counsel for Landlord explained the impropriety of the arguments that RJA had advanced to convince the Magistrate Judge to permit discovery into Mr. Sofer's financial affairs and the financial affairs of other separate legal entities and/or trusts in which Mr. Sofer has an interest. (See ECF No. 252). Landlord's counsel also asserted that even if RJA's proffered reasons for seeking the subject discovery had any merit, which Landlord denies, RJA has already secured more than ample documentation in discovery to satisfy its proffered needs. Through a subpoena that it served on ThyssenKrupp (hereinafter "TKE"), RJA obtained a personal bank statement of Mr. Sofer that showed a balance of over 13 million dollars. The bank statement had been submitted to TKE with an elevator modernization letter of intent. RJA's counsel specifically referenced the balance in the account during a hearing before the Magistrate Judge on February 7, 2019. If RJA's motive for demanding the Sofer financial information was genuinely for the purpose of proving that Landlord has been guilty of gross negligence, then RJA had all the evidence it needed when it acquired the subject bank statement several months ago. The bank statement reflects an account balance that is over four (4) times the cost of modernizing the elevator system. Following RJA's logic, this bank statement, standing alone, would be sufficient financial information to allege that Landlord has been guilty of gross negligence[1].  Nevertheless, it is quite telling that after obtaining the evidence that it allegedly needs to prove that Mr. Sofer had the funds to modernize the elevator system, RJA continues to pursue burdensome and unnecessary discovery

---

[1] Of course, RJA's theory is fatally flawed because, under Tennessee law, neither Mr. Sofer nor any of his other business entities have any responsibility for Landlord's obligations under the Lease.  See Tenn. Code Ann. §48-249-114. And it is undisputable that Landlord (50 North) has been operating at negative cash flow as RJA had a 33-month rent abatement period, and therefore, based on its own admission that Landlord must have the funds available in order to be grossly negligent, RJA has no path to win. Further, as detailed in the Motion to Dismiss (ECF No. 54) incorporated herein, the Lease contains no obligation for Landlord to modernize the elevator system in the first place.

to pry even further into the. Sofer finances. In fact, since obtaining the aforementioned bank statement, RJA has filed three separate Motions to Compel in an effort to procure <u>additional</u> Sofer financial information. (<u>See</u> ECF Nos. 189, 197 and 237). RJA's persistent demands for more and more Sofer financial documentation, when it already has the information reflected in the aforementioned bank statement, firmly evidences an improper strategy on RJA's behalf to increase the cost of this litigation. The subject discovery and therefore further discovery into the Sofer financial information is completely unnecessary and should be precluded by and through the granting of Landlord's Motion for a Protective Order. (<u>See</u> ECF No. 252, PageID 4041-4043).

The Magistrate Judge denied Landlord's Motion, largely because Landlord's former counsel failed to point out the impropriety of the arguments RJA was advancing at the August 29, 2018 hearing on the Motion for Protective Order. (<u>See</u> ECF No. 74). The Magistrate Judge effectively concluded that the arguments of Landlord in support of its Motion for Protective Order and for Sanctions Against Plaintiff (ECF No. 225) had been waived.

The Magistrate Judge treated Landlord's Motion for Protective Order and for Sanctions Against Plaintiff as a motion for revision of an interlocutory order and concluded that proper grounds for revision of the subject Order (ECF No. 107) did not exist under Local Rule 7.3. Notably, the Magistrate Judge's ruling did not expressly address the additional argument that Landlord's counsel advanced at the June 25, 2019 hearing, namely that further discovery into the financial affairs of Mr. Sofer and his other business entities and/or trusts was unwarranted and should be precluded by the entry of a Protective Order.

For the reasons set forth below, Landlord respectfully submits that the Magistrate Judge's ruling was clearly erroneous and contrary to the law.

### III.    LAW AND ARGUMENT

**A.  The Magistrate Judge Erred by Treating Landlord's Motion for Protective Order and for Sanctions Against Plaintiff as a Motion for Revision of an Interlocutory Order Under Local Rule 7.3.**

Contrary to the Magistrate Judge's June 28, 2019 ruling, Landlord's Motion for Protective Order and for Sanctions Against Plaintiff was not brought pursuant to Local Rule 7.3. Rather, Landlord's Motion was predicated on this Court's inherent authority to prevent a gross abuse of discovery by and through RJA's misrepresentations to the Court. Courts always retain the inherent power to govern the proceedings before them to prevent abuses, oppression and injustice. See International Prods. Corp v. Koons, 325 F. 2d 403, 407-408 (2d Cir. 1963) (citing Gumbel v. Pitkin, 124 U.S. 131, 144, 8 S. Ct. 379, 31 L. Ed. 374 (1888)). This inherent power unquestionably extends to a party's improper litigation tactics and abuse of the discovery process. Indeed, the Advisory Committee Comments to the 1983 Amendments to Rule 26 of the Federal Rules of Civil Procedure expressly note that "excessive discovery poses significant problems in a case." The Comments also note that judges are encouraged to be more aggressive in identifying and discouraging discovery overuse. See Notes of Advisory Committee on 1983 Amendments to Rule 26(b)(1). A court may re-examine an earlier ruling if the court has a conviction that the earlier ruling was wrong, and rescinding the erroneous ruling will not cause undue harm to the party that benefitted from it. See United States v. Smith, 389 F.3d 944, 949 (9th Cir. 2004) (citations omitted). This authority would necessarily include instances when a court has issued an interlocutory ruling predicated on a party's misrepresentation of the law and/or the operative facts in a case.

Here, the original discovery order entered by the Magistrate Judge on October 3, 2018, (ECF No. 107), permitted extremely broad discovery into the Sofer finances. This was allowed based on RJA's misrepresentations that the subject information was necessary to support RJA's

claim that Landlord was guilty of gross negligence and to support RJA's <u>potential</u> effort to pierce the corporate veil. However, RJA knew that these arguments were completely invalid under the law and the terms of the Lease.

This Court has the inherent power to issue appropriate orders to rectify a party's misrepresentations and improper litigation tactics, especially when an interlocutory order is involved. This is the exact relief that Landlord is requesting from this Honorable Court. RJA's attempt to invoke the doctrine of waiver to shield itself from scrutiny and sanctions for its wrongful conduct is unavailing and should be summarily rejected by this Honorable Court.

**B.   <u>Proper Grounds Existed for the Magistrate Judge to Enter a Protective Order in This Cause.</u>**

Rule 26(c) of the Federal Rules of Civil Procedure permits a court to issue a protective order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. <u>See</u> Fed. R. Civ. P. 26(c). Rule 26(c) also gives a district court the authority to issue a protective order controlling the disposition of discovery materials after a party has acquired the materials, as well as fixing and controlling the conditions in which discovery may be obtained in the first instance. <u>See</u> <u>Krause v. Rhodes</u>, 535 F. Supp. 338 (N.D. Ohio 1979). Through discovery, RJA has requested and obtained some of the Sofer financial information which are separate and apart from Landlord.

It must be remembered that Mr. Sofer and the other unrelated business entities/trust(s) are not parties to this litigation. As noted by the Court in <u>Universal Delaware Inc. v. Comdata Network, Inc.</u>, 2011 U.S. Dist. LEXIS 28963 (M.D. Tenn. Mar. 21, 2011), where "discovery is sought from a nonparty, the Court should be particularly sensitive to weighing probative value of the information sought against the burden of production on the non-party." <u>Id.</u> at *7 (citations omitted). As demonstrated above, the Sofer financial information is completely irrelevant to the issues in

this case. RJA's assertion that the subject information is relevant based on the "piercing the corporate veil doctrine" and its burden to prove that Landlord has acted with gross negligence or willful misconduct is completely invalid from both a factual and legal standpoint. The probative value of the requested information is nonexistent.

A protective order is necessary to protect Mr. Sofer from being subjected to annoyance, embarrassment, oppression, undue burden and expense. Allowing RJA to request, obtain and use the Sofer financial information is of great annoyance and embarrassment to Mr. Sofer. Mr. Sofer cannot be subject to any liability for the claims in this case, and has no legal obligation for any of the debts, acts, liabilities or obligations of Landlord. A protective order is necessary to protect Mr. Sofer from continued oppression and undue burden and expense in having to produce additional irrelevant financial information in discovery; from being subjected to repetitious, unwarranted and ever expanding inquiries into his personal affairs by RJA, and being subjected to the extremely time consuming and expensive process of gathering the documents requested by RJA's overly broad discovery requests. Good cause exists for the entry of a protective order and the Magistrate Judge erred by denying Landlord's request for such an order.

**C.** **The Magistrate Judge Erred by Failing to Exercise His Inherent Power to Sanction RJA for its Bad Faith and Abuse of the Discovery Process.**

Federal Courts possess certain inherent powers, including "the ability to fashion an appropriate sanction for conduct which abuses the judicial process." See Chambers v. NASCO, Inc., 501 U.S. 32, 44-45, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991). In Chambers, the United States Supreme Court noted that even if there were sanctions available under certain federal statute(s) and/or various Rules in the Federal Rules of Civil Procedure, the inherent authority of the Court is an independent basis for sanctioning bad faith conduct in litigation. Id. at 38. In Chambers, the Supreme Court affirmed the District Court's resort to its inherent authority to award attorney fees

amounting to almost $1,000,000.00, despite the potential availability of sanctions under 28 U.S.C.

§1927 and/or Rule 11 of the Federal Rules of Civil Procedure. Id. at 46. In affirming the District

Court's award of sanctions, the Supreme Court stated as follows:

> We discern no basis for holding that the sanctioning scheme of the statute and the rules displaces the inherent power to impose sanctions for the bad-faith conduct described above. These other mechanisms, taken alone or together, are not substitutes for the inherent power, for that power is both broader and narrower than other means of imposing sanctions. First, whereas each of the other mechanisms reaches only certain individuals or conduct, the inherent power extends to a full range of litigation abuses. At the very least, the inherent power must continue to exist to fill in the interstices.

Id. at 46.

> In Chambers, the Supreme Court went on to say:

> There is, therefore, nothing in the other sanctioning mechanisms or prior cases interpreting them that warrants a conclusion that a federal court may not, as a matter of law, resort to its inherent power to impose attorney's fees as a sanction for bad-faith conduct. This is plainly the case where the conduct at issue is not covered by one of the other sanctioning provisions. But neither is a federal court forbidden to sanction bad-faith conduct by means of the inherent power simply because that conduct could be sanctioned under the statute or the Rules. A court must, of course, exercise caution in invoking its inherent power, and it must comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees. See Roadway Express, supra, at 767. Furthermore, when there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power. But if in the informed discretion of the court, neither the statute nor the Rules or up to the task, the court may safely rely on its inherent power.

Id. at 50.

> In Chambers, the Supreme Court also stated as follows:

> [A] court may assess attorney's fees when a party has "acted in bad faith, vexaciously, wantonly, or for oppressive reasons." []. In this regard, if a court finds "that fraud has been practiced upon it, or that the very temple of justice has been defiled," it may assess attorney's fees against the responsible party, as it may when a party shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order []. The imposition of sanctions in this instance transcends a court's equitable power concerning relations between the parties and reaches a court's inherent power to police itself, thus serving the dual purpose of

> "vindicating judicial authority without resort to the more drastic sanctions available for contempt of court and making the prevailing party whole for expenses caused by his opponent's obstinacy.

Id. at 45-46 (citations omitted).

In First Bank v. Hartford Underwriters Ins. Co., 307 F.3d 501 (6th Cir. 2002), the United States Court of Appeals for the Sixth Circuit addressed the question of whether the Supreme Court's decision in Chambers required a district court to consider whether the conduct at issue could be sanctioned under any other potential applicable Rules or statutes before resort was made to the Court's inherent powers. In resolving this question, the Sixth Circuit stated as follows:

> In our view, Chambers should be read broadly to permit the district court to resort to its inherent authority to sanction bad-faith conduct, even if the court has not expressly considered whether such conduct could be sanctioned under all potentially applicable rules or statutes. While a district court should ordinarily consider whether "the conduct could also be sanctioned under the statute or the Rules", Chambers, 501 U.S. at 50, there is nothing in Chambers that explicitly requires a court to determine whether "the conduct at issue is covered by one of the other sanctioning mechanisms."

First Bank, 307 F.3d at 515.

In the First Bank case, the Sixth Circuit recognized that a district court has the inherent authority to impose sanctions pursuant to its inherent powers based on a finding that the actions of the party in question were taken in bad faith or that the party had engaged in conduct that was "tantamount to bad faith." See First Bank, 307 F.3d at 517 (citing Chambers, 501 U.S. at 50 and Roadway Express, Inc. v. Piper, 447 U.S. 752, 767, 65 L. Ed.2d 488, 100 S. Ct. 2455 (1980).

During the course of this action, RJA has implemented a scorched earth litigation strategy to make this litigation as expensive as possible on Landlord to force Landlord to capitulate and allow RJA to vacate the Raymond James Tower without having to pay the required early termination fee. As part of this abusive litigation strategy, RJA propounded extraordinarily overbroad discovery requests to Landlord which included numerous requests seeking information

and documentation concerning the finances of Sofer. Landlord objected to these overbroad discovery requests. In response, RJA represented to this Court that said discovery was necessary because RJA may seek to pierce the corporate veil in this case. RJA also argued that it needed the financial information that it requested in discovery to demonstrate that Landlord has been guilty of gross misconduct or willful misconduct.

Both of these arguments are completely devoid of legal and factual merit. Notwithstanding the foregoing, relying upon RJA's improper arguments, the Magistrate Judge decided to overrule Landlord's objections to RJA's discovery requests and required the production of significant Sofer financial information.

RJA knew that there was no legitimate basis to advance a piercing the corporate veil argument to justify its improper fishing expedition into the Sofer finances. This is conclusively demonstrated by the Lien Lis Pendens that RJA filed, and RJA's subsequent arguments in opposition to Landlord's Motion to Dissolve the Lien Lis Pendens wherein RJA claimed that its Lien Lis Pendens was proper because paragraph 40 of the Lease expressly limits the recovery of any judgment against Landlord to Landlord's interest in the Raymond James Tower and the land upon which it sits. Pursuant to paragraph 40 of the Lease, RJA waived any right to pursue other means of collecting any judgment against Landlord including, but not limited to, invocation of the piercing the corporate veil doctrine. RJA knew the foregoing when it invoked the piercing the corporate veil doctrine to convince the Magistrate Judge to overrule Landlord's objections to RJA's discovery requests for the Sofer financial information. RJA already had the evidence that it needed to allege that Mr. Sofer himself had the funds to modernize the elevator system. They had his personal bank statement showing a balance of over 13 million dollars. But, in fact, the entire

issue of funds available to modernize is made moot: RJA was willing to fund or advance expenditures itself.[2]

RJA's improper tactics resulted in Landlord incurring significant and unnecessary expenses by having to respond to RJA's improper discovery requests relating to the Sofer financial information. The inconsistent positions that RJA took in connection with Landlord's objections to RJA's overly broad discovery and RJA's response in opposition to Landlord's Motion to Dissolve the Lien Lis Pendens conclusively demonstrates RJA's bad faith in this matter.

As the Sixth Circuit recognized in the First Bank case, a court may exercise its inherent powers to sanction a party based on a finding that the claims or positions advanced by a party were meritless, that counsel knew or should have known this and that the motive for filing or pursuing the suit or particular course of conduct in the litigation was for an improper purpose such as harassment or other improper reasons. First Bank, 307 F.3d at 524. Here, all of these elements are easily met. RJA knew that the piercing-the-corporate-veil argument was completely meritless. This is expressly confirmed by RJA's Lien Lis Pendens and the arguments that RJA advanced in opposition to Landlord's Motion to Dissolve the Lien Lis Pendens. RJA's invocation of the piercing the corporate veil doctrine was clearly utilized for the purpose of harassment and other improper reasons. RJA used this argument to secure Sofer financial information that is completely irrelevant to these proceedings and to which RJA had no legitimate right of access.[3] The overly broad discovery requests are exemplary of RJA's abusive litigation tactics in this case.

---

[2] See Exhibit A hereto, RJA's Derek Recer's Email to Joel Friedman of October 24, 2017.

[3] The same holds true for any assertion that the Sofer financial information is relevant to the issue of whether Landlord has been guilty of gross negligence or willful misconduct. As a matter of law, see Tenn. Code Ann. 48-249-114, neither Mr. Sofer nor any of his other unrelated businesses/trusts have any personal responsibility for any acts, debts, liabilities or obligations of Landlord.

In <u>Goodyear Tire & Rubber Co. v. Hager</u>, 137 S. Ct. 1178, 197 L. Ed.2d 585 (2017), the United States Supreme Court held that a but-for causation standard should be used by a district court when awarding attorney fees and/or expenses in sanctioning a party through its inherent powers. In explaining the application of this standard, the Supreme Court stated as follows:

> This but-for causation standard generally demands that a district court assess and allocate specific litigation expenses – yet still allows it to exercise discretion and judgment. The court's fundamental job is to determine whether a given legal fee – say, for taking a deposition or drafting a motion – would or would not have been incurred in the absence of the sanctioned conduct. The award is then the sum total of the fees that, except for the misbehavior, would not have been accrued. <u>See</u> <u>Id.</u>, at 837-838, 131 S. Ct. 2205, 180 L. Ed.2d 45 (providing illustrative examples). But as we stressed in <u>Fox</u>, trial courts undertaking that task "need not and indeed should not, become green-eyeshade accountants" (or whatever the contemporary equivalent is). <u>Id.</u>, at 838, 131 S. Ct. 2205, 180 L. Ed.2d 45. "The essential goal" in shifting fees is "to do rough justice, not to achieve auditing perfection." <u>Ibid</u>. Accordingly, a district court "may take into account [its] overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." <u>Ibid</u>. The court may decide, for example, that all (or a set percentage) of a particular category of expenses – say, for expert discovery – were incurred solely because of a litigant's bad-faith conduct.

<u>Id</u>. at 1187. (citing <u>Fox v. Vice</u>, 563 U.S. 826, 836, 131 S. Ct. 2205, 180 L. Ed.2d 45 (2011)).

But for RJA's bad-faith conduct in the case at bar, Landlord would never have been required to incur the unnecessary expenses associated with responding to RJA's overly broad discovery requests concerning the Sofer financial information. The record in this cause strongly supports the imposition of significant sanctions against RJA and the Magistrate Judge erred by failing to impose such sanctions against RJA.

## IV.    CONCLUSION

For the foregoing reasons, Landlord respectfully submits that its Appeal should be sustained and that the Magistrate Judge's Order denying Landlord's Motion for Protective Order and for Sanctions Against Plaintiff should be reversed. Landlord respectfully requests this Honorable

Court to grant Landlord all of the relief prayed for in its Motion for Protective Order and for

Sanctions Against Plaintiff.

Respectfully submitted,

BLACK MCLAREN JONES RYLAND AND GRIFFEE, P.C.

By: /s/ Michael G. McLaren _____
     Michael G. McLaren (#5100)
     John C. Ryland (#16878)
     Christopher M. Williams (#36256)
     530 Oak Court Drive, Suite 360
     Memphis, Tennessee 38117
     (901) 762-0535
     (901) 762-0539 – fax
     mmclaren@blackmclaw.com
     jryland@blackmclaw.com
     cwilliams@blackmclaw.com
     *Attorneys for Defendants 50 North Front St. TN, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and attested copy of the foregoing has been sent to the below-

listed counsel via the Court's ECF system on this 12th day of July, 2019.

| | |
|---|---|
| Niel Prosser, Esq. | A. Scott Derrick, Esq. |
| Rob Clapper, Esq. | William C. Scales, Jr., Esq. |
| Kyle Johnson, Esq. | GULLETT SANFORD ROBINSON |
| THE PROSSER LAW FIRM, PLC | & MARTIN PLLC |
| 5865 Ridgeway Center Pkwy, Ste. 300 | 150 Third Avenue South, Suite 1700 |
| Memphis, Tennessee 38120 | Nashville, Tennessee 37201 |
| | |
| Jeff Feibelman, Esq. | Blair B. Evans, Esq. |
| Melissa A. Maravich, Esq. | Zachary A. Kisber, Esq. |
| Gary Scott Peeples, Esq. | BAKER, DONELSON, BEARMAN |
| BURCH, PORTER & JOHNSON, PLLC | CALDWELL & BERKOWITZ, P.C. |
| 130 North Court Avenue | 165 Madison Avenue, Suite 2000 |
| Memphis, Tennessee 38103 | Memphis, Tennessee 38103 |
| | |
| Kanon C. Conway, Esq. | |
| HARRIS SHELTON HANOVER | |
| WALSH, PLLC | |
| 6060 Primacy Parkway, Suite 100 | |
| Memphis, Tennessee 38119 | |

/s/ Michael G. McLaren