**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

---

| | | |
|---|---|---|
| **RAYMOND JAMES & ASSOCIATES, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 2:18-cv-02104-JTF-tmp** |
| | ) | |
| **50 NORTH FRONT ST. TN, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S COUNTER-COMPLAINT**

---

Plaintiff Raymond James & Associates, Inc. ("Plaintiff" or "Raymond James"), by and through undersigned counsel and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, respectfully submits the following Memorandum in Support of Plaintiff's Motion to Dismiss Defendant's Counter-Complaint. For the reasons explained below, the Court should dismiss with prejudice all of the counterclaims asserted by Defendant 50 North Front St. TN, LLC ("50 North" or "Landlord") in its Answer to First Amended Complaint and Counter-Complaint[1] filed on December 19, 2019 (collectively the "December 2019 Answer").

**INTRODUCTION**

The December 2019 Answer is packed with baseless assertions and bizarre conspiracy theories. For example, 50 North goes so far as to allege that the Lease uses "code language" to

---

[1] (ECF No. 286).

obscure Landlord's obligation to operate the building at a decent level.[2] The parties' negotiating history, along with the language of the Lease itself—in black-and-white text—requires Landlord to "operate" the building, which includes its elevator system, "in at least the form, manner and quality" as existed at the building when the Lease was signed.[3] At the time the Lease was executed back in 2014, there were only occasional issues with the elevators. (*See* ECF No. 41-1 at ¶ 28, PageID 357). Today, half—or more—of the passenger elevators are out of operation **all day, every day** and have been in this deplorable state for months on end. Beyond the taking of such seemingly desperate positions, 50 North's ultimate problem with its Estoppel Certificate-based arguments is that an estoppel certificate speaks only to a single point in time—i.e. at the moment it is given—and even then speaks only as to whether a landlord is currently in breach of the lease. Needless to say, the proof will show that the Estoppel Certificate, which Raymond James provided on January 13, 2015, was accurate in all material respects. The focus of Raymond James's suit is a full two years later when it provided its initial Notice of the Breach in May 2017.

Fortunately, the Court does not have to deal with the added complexities that would arise from 50 North's belated counterclaims because they are barred by the applicable statute of limitations. In addition, they have also been waived. This is because the December 2019 Answer is not 50 North's *initial* Answer. That pleading—which contained no counterclaims—was filed

---

[2] (*See e.g.* ECF No. 286 at ¶ 10, PageID 4975) (alleging that RJA was "strategizing to use language ('code language') with a hidden meaning. . .").

[3] (ECF No. 286-22 at § 10, PageID 5302) ("Landlord shall maintain and operate the Building: (i) in at least the form, manner and quality as exists at the Building on the Effective Date (the 'Current Standard') as it relates to Building maintenance and operation, and (ii) substantially in accordance with the manner and quality of the maintenance and operation of Comparable Buildings at the time a comparison between the Building and Comparable Buildings is made hereunder.").

nearly two years ago on February 26, 2018[4] (the "February 2018 Answer"). The Court thus need not address the six purported counterclaims contained in 50 North's rambling and rhetorically overheated pleading because they are either time-barred on their face or have, in any event, been waived. All of 50 North's counterclaims should therefore be dismissed.

As background, Raymond James filed suit against 50 North in Shelby County Chancery Court on February 2, 2018 (the "February 2018 Complaint"). (*See* Compl., ECF No. 1-1 at PageID 4). In the February 2018 Complaint, Raymond James contended (among other things) that 50 North had breached the terms of the Lease by permitting the Tower to "become unsightly, deteriorated and, at least as far as its elevator system is concerned, dangerously unsafe and unreliable." (*Id.* at ¶ 7, PageID 5). Raymond James further contended (among other things) that 50 North had violated the Lease by failing to "otherwise maintain the Building and Premises (as defined in the Lease) in the condition, to the standards and with the services required by the Lease." (*Id.* at ¶ 35, PageID 16).

50 North, invoking the federal courts' diversity jurisdiction,[5] removed the action to this Court on February 16, 2018. (*See* ECF No. 1 at PageID 1). And, shortly after removing the action, 50 North filed its February 2018 Answer. (*See generally* ECF No. 10) (reflecting a filing date of February 26, 2018). Notably, nowhere in its February 2018 Answer did 50 North (1) assert *any* counterclaims, compulsory or otherwise, or (2) even *mention*, much less rely upon (whether by

---

[4] (*See* ECF No. 10).

[5] 50 North (a limited liability company) failed to identify, much less adequately plead, the citizenship of all of its members in the Notice of Removal, stating only that "[n]one of Defendant's members are citizens of the State of Tennessee or of the State of Florida." (*See* ECF No. 1 at ¶ 7, PageID 2); *D.B. Zwirn Special Opportunities Fund, L.P. v. Mehrotra*, 661 F.3d 124, 125-27 (1st Cir. 2011) (per curiam) (holding that diversity of citizenship may not be established by a defendant "in the negative" and that a defendant "must not only identify its members and their respective citizenship, but must also trace the citizenship of any member that is an unincorporated association through however many layers of members or partners there may be").

way of affirmative defense or otherwise), the Estoppel Certificate executed by Raymond James in January 2015 concurrently with 50 North's purchase of the Tower or any alleged fraud by Raymond James. (*See generally id.*); *see also* Fed. R. Civ. P. 8(c)(2) (explaining that, "[i]n responding to a pleading, a party must affirmatively state any avoidance or affirmative defense" and listing "estoppel" and "fraud" as affirmative defenses); *see also* Fed. R. Civ. P 12(b) ("Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required.").

Months later, in June 2018, the Court granted Raymond James leave to amend and accepted as filed Raymond James's First Amended Complaint. (*See* ECF No. 45 at PageID 512-13). 50 North, in response to the First Amended Complaint, moved to dismiss it. (*See* ECF Nos. 36 and 36-1). Raymond James responded in opposition in July 2018. (*See* ECF No. 70).

Normally, the filing of a Rule 12(b)(6) motion stays a party's obligation to file an answer until the motion is denied. *See* Fed. R. Civ. P. 12(a)(4)(A). 50 North has apparently decided to abandon its Rule 12(b)(6) motion by filing the December 2019 Answer. Moreover, counsel for 50 North announced to the Court at a June 7, 2019 status conference that 50 North would be filing one or more counterclaims within ten days of the conference. That did not occur. And counsel for 50 North raised 50 North's putative and supposedly imminent counterclaims again at a June 25, 2019 discovery hearing. Despite repeatedly threatening in mid-2019 that 50 North would be asserting various counterclaims in short order, 50 North inexplicably waited until December 19, 2019—more than six months after the status conference—to get around to actually asserting them.

As explained below, all of the counterclaims are plainly time-barred, and they should be dismissed with prejudice for that reason. 50 North also waived all of its counterclaims, which are compulsory in nature, by failing to assert them in its February 2018 Answer. This waiver by 50

North constitutes an additional basis for dismissing all of 50 North's counterclaims. There is simply no scenario under which 50 North's counterclaims should be permitted to go forward.

## LEGAL STANDARD

In evaluating a Rule 12(b)(6) motion to dismiss, the Court "'construe[s] the complaint in the light most favorable to the plaintiff, accept[s] its allegations as true, and draw[s] all reasonable inferences in favor of the plaintiff.'" *Jackson v. First Citizens Bancshares, Inc.*, 2015 WL 10818659, at *3 (W.D. Tenn. Apr. 22, 2015) (quoting *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012)). But the "'tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678). Finally, where a complaint (or a counter-complaint) reveals on its face that the claims (or counterclaims) are barred by the applicable limitations period, then a Rule 12(b)(6) motion is an appropriate vehicle for relief. *See Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012) (so explaining).

## LAW AND ARGUMENT

### A. All of 50 North's counterclaims are time-barred on their face.

Before discussing in detail why 50 North's counterclaims are plainly time-barred and thus subject to dismissal pursuant to Rule 12(b)(6),[6] Raymond James (for the avoidance of doubt) emphasizes that the substance of 50 North's December 2019 Answer and its counterclaims are devoid of merit and, frankly, untethered to reality. This brief is not the proper place to respond to

[6] Raymond James acknowledges that, for purposes of Rule 12(b)(6) only, the Court accepts as true all well-pleaded factual allegations contained in 50 North's counterclaims. To be clear, Raymond James is treating as true certain of 50 North's allegations only for the limited purpose of Plaintiff's Motion to Dismiss Defendant's Counter-Complaint. All of 50 North's counterclaims—in addition to being time-barred and otherwise fatally flawed as a matter of law, and thus subject to dismissal under Rule 12(b)(6)—lack even a shred of merit.

all of 50 North's attacks and innuendo, but two of 50 North's particularly scurrilous allegations in its December 2019 Answer—to wit, that the Lease (which 50 North, as a mere after-the-fact assignee, did not even negotiate) somehow contains so-called "code words" and that the lawsuit is purportedly a "nefarious plot" by Raymond James—are absolutely absurd and patently false. 50 North's position verges on farce.

Turning now to the specifics regarding the time-barred nature of 50 North's counterclaims, because this suit is founded on the Court's diversity jurisdiction, this Court applies Tennessee state law with respect to the determination of whether 50 North's counterclaims are time-barred. *See, e.g.*, *Jackson*, 2015 WL 10818659, at *4 (applying Tennessee's three-year statute of limitations to a plaintiff's Tennessee state law claims for fraud, negligent misrepresentation, and similar torts and dismissing the claims as time-barred).

The appropriate statute of limitations is not supplied by the mere form of the action—i.e., contract or tort—but rather by the "gravamen" of the complaint. When "determining the applicable statute of limitations for . . . Tennessee state law-based claims," this Court must "look at the 'gravamen of the complaint, which in turn is assessed by the type of injuries claimed and damages sought.'" *Id.* (quoting *Mackey v. Judy's Foods, Inc.*, 654 F. Supp. 1465, 1471 (M.D. Tenn. 1987)); *see also Borque v. Bank of Am.*, 2018 WL 1535467, at *5 (M.D. Tenn. Mar. 29, 2018) (applying the gravamen standard to Tennessee state law claims of fraud and dismissing the claims as time-barred), *report and recommendation adopted*, 2018 WL 1940673 (Apr. 25, 2018). Although 50 North purports to raise some contract-based claims, the gravamen of its counterclaims sounds in fraud, which has only a three-year statute of limitations under Tennessee law.

**1. The gravamen of the counterclaims is alleged fraud.**

The gravamen of 50 North's counterclaims is Raymond James's supposed "fraud." Tennessee courts (and federal courts applying Tennessee law), in determining the gravamen of a claim or a set of claims, look to the "type of injuries claimed and damages sought." *Jackson*, 2015 WL 10818659, at *4 (internal quotation marks omitted). Here, 50 North's counterclaims are ultimately founded in tort, and in particular Raymond James' alleged fraud in executing the Estoppel Certificate in January 2015. For example, 50 North alleges in pertinent part:

> Pursuant to the Lease and the Estoppel Certificate, RJA had an affirmative duty to disclose any facts or circumstances that could form the basis of any contention that Parkway was in default under the Lease, or that any even had occurred which, with the passage of time or the giving of notice by RJA, or both, would constitute a default. Furthermore, RJA had an affirmative duty under the Lease and Estoppel Certificate to disclose any obligations that were outstanding under the Lease. Despite these affirmative duties, the Estoppel Certificate did not reference any problems with the elevator system, water intrusion problems from the roof, or the need to caulk and seal the exterior of the Building. . . . *At all relevant times, RJA had an affirmative duty to disclose all of the aforementioned matters in the Estoppel Certificate. However, RJA willfully, intentionally, and/or recklessly failed to do so.*

(ECF No. 286 at ¶ 36, PageID 5036) (emphasis added).

Four of the six counterclaims asserted by 50 North are expressly styled as fraud or fraud-like claims: (1) "fraud and intentional misrepresentations" (*id.* at ¶ 61, PageID 5043); (2) "fraud-negligent misrepresentation" (*id.* at ¶ 66, PageID 5044); (3) "promissory fraud" (*id.* at ¶ 70, PageID 5044); and (4) "fraud by silence and/or concealment." (*Id.* at ¶ 77, PageID 5046). 50 North's remaining two counterclaims are: (1) a request for a declaratory relief (*id.* at ¶ 49, PageID 5042) and (2) breach of contract. (*Id.* at ¶ 51, PageID 5042). The breach of contract claim, moreover, is expressly founded on Raymond James's purported "breache[s] [of] the Lease *by fraudulently misrepresenting* in the Estoppel Certificate" the condition of the Tower. (*Id.*) (emphasis added).

And there can be no reasonable dispute that 50 North's alleged injuries are primarily economic and flow from the purported fraud. 50 North avers that it has "sustained enormous damages including, but not limited to, damages flowing from Landlord's inducement to purchase the Building in reliance on RJA's misrepresentations." (*Id.* at ¶ 79, PageID 5046); *see also Borque*, 2018 WL 1535467, at *5 (holding that the gravamen was fraud where a plaintiff alleged that the defendant's misrepresentations "induced [the plaintiff] to commit . . . to a higher-than-bargained-for purchase price").

Thus, as pleaded by 50 North in its December 2019 Answer, all of 50 North's purported damages stem from the alleged fraud by Raymond James in connection with the execution of the Estoppel Certificate in January 2015. (*See, e.g.*, ECF No. 286 at ¶ 79, PageID 5046) (averring that 50 North would not have bought the Tower but for Raymond James's alleged misrepresentations and omissions); *see also Jackson*, 2015 WL 10818659, at *4 (concluding that the gravamen of a plaintiff's complaint was fraud where the plaintiff's non-fraud claims were "based on the same set of facts that [the plaintiff] relies on in his tort claims"). Accordingly, the gravamen of 50 North's counterclaims is (alleged) fraud.

**2. The counterclaims are subject to a three-year statute of limitations and thus time-barred on their face.**

Because the gravamen of 50 North's counterclaims is alleged fraud, the three-year limitations period of Tenn. Code Ann. § 28-3-105 applies to all of the counterclaims. *See, e.g.*, *Precision Tracking Solutions, Inc. v. Spireon, Inc.*, 2014 WL 3058396, at *5 (E.D. Tenn. July 7, 2014) ("Economic losses caused by misrepresentation or fraud claims are treated under the gravamen-of-the-complaint analysis as a tortious injury to personal property and are governed by the three-year statute of limitations in Tenn. Code Ann. § 28-3-105.") (citing, *inter alia*, *Vance v. Schulder*, 547 S.W.2d 927, 932 (Tenn. 1977)); *see also Jackson*, 2015 WL 10818659, at *4

(applying Tenn. Code Ann. § 28-3-105's three-year limitations period to a plaintiff's fraud-based claims and to the plaintiff's non-fraud claims because they were "based on the same set of facts that [the plaintiff] relies on in his tort claims"). The application of this three-year limitations period thus bars all of 50 North's counterclaims. These counterclaims allegedly arose due to Raymond James's execution of the Estoppel Certificate on January 13, 2015[7] and, therefore, expired three years later on January 12, 2018—before the time that the current action by Raymond James was even filed. 50 North's counterclaims should be dismissed in their entirety.

**B. 50 North waived all of its counterclaims, which are compulsory in nature, by failing to assert any counterclaim in its February 2018 Answer.**

Even if 50 North's counterclaims were not time-barred on their face, 50 North waived its counterclaims by failing to assert any of them in its February 2018 Answer. (*See generally* ECF No. 10) (containing no counterclaims). There is no doubt that 50 North's belatedly asserted counterclaims are compulsory in nature under Rule 13(a); the test for whether a counterclaim is compulsory is the so-called "logical relationship" test. *See Allegra Network LLC v. Cormack*, 2012 WL 6757244, at *3 (E.D. Mich. Dec. 3, 2012) (citing *Sanders v. First Nat'l Bank & Trust*, 936 F.2d 273, 277 (6th Cir. 1991)), *report and recommendation adopted*, 2013 WL 27958 (Jan. 2, 2013). 50 North's counterclaims arise out of Raymond James's alleged fraud with respect to the condition of the Tower when Raymond James executed the Estoppel Certificate in January 2015. The counterclaims are thus logically related to the claims raised in the February 2018 Complaint, where Raymond James contended (among other things) that 50 North had violated the Lease by failing to "*otherwise maintain the Building and Premises (as defined in the Lease) in the condition,*

[7] The Estoppel Certificate is attached to the December 2019 Answer. (*See* ECF No. 286-21 at PageID 5289-92).

*to the standards and with the services required by the Lease*." (ECF No. 1-1 at ¶ 35, PageID 16) (emphasis added).

District courts have held that compulsory counterclaims must be timely asserted in an answer or they are deemed waived. *See Allegra Network*, 2012 WL 6757244, at *4 (holding that a counterclaim was waived where the defendants failed to assert it in their initial answer); *see also Va. Cmty. Bank v. Fisher*, 2009 WL 4430282 (E.D. Va. Dec. 1, 2009) ("Defendants were required to state their counterclaim at the time they answered VCB's Complaint. Because Defendants failed to file their counterclaim with their Answer, Defendants waived their right to file a compulsory counterclaim. Thus, Defendants' Counterclaim is untimely."); *accord Retirement Care Assocs., Inc. v. Forum Healthcare Grp., Inc.*, 2006 WL 8434193, at *20 (N.D. Ga. Apr. 20, 2006) (concluding that defendants had "waived the counterclaim by failing to assert it in their Answers"). Here, all of 50 North's counterclaims existed when 50 North filed its February 2018 Answer, and 50 North should have asserted its counterclaims at that time.[8] 50 North failed to do so, and that failure means that its counterclaims have been waived.[9]

There is no basis for the Court to set aside this waiver. To assert a counterclaim out of time, a party must obtain leave from the Court to do so. *See Va. Cmty. Bank*, 2009 WL 4430282, at *8 ("Because Defendants had previously filed a responsive pleading without raising the instant

---

[8] Moreover, although the Court has (at the parties' joint request) extended certain discovery deadlines in this case, the Court has never altered the deadline for amending pleadings. That deadline—May 29, 2018—has long since expired. (*See* ECF No. 33 at PageID 312).

[9] The same is true of the affirmative defenses asserted in 50 North's December 2019 Answer that were not asserted in its February 2018 Answer; "a failure to plead an affirmative defense . . . results in the waiver of that defense." *Henricks v. Pickaway Corr. Inst.*, 782 F.3d 744, 750 (6th Cir. 2015) (internal quotation marks omitted). Notably, 50 North did not raise estoppel or fraud in its February 2018 Answer; estoppel and fraud are expressly listed as affirmative defenses in Rule 8. *See* Fed. R. Civ. P. 8(c)(1).

counterclaim, Defendants were required to seek either the opposing party's written consent or the court's leave to amend their pleadings to include the instant counterclaim.") (internal quotation marks omitted).

No such leave has been sought by 50 North. Nor should leave be given even if sought. For one thing, seeking leave—much less granting it—would be futile because the counterclaims are, as explained above, time-barred on their face. *See Crestwood Farm Bloodstock v. Everest Stables, Inc.*, 751 F.3d 434, 444 (6th Cir. 2014) (explaining that leave to amend may be denied on futility grounds); *Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 (6th Cir. 2005) (noting that leave to amend is futile where the amendments would not "survive a motion to dismiss").

50 North has also engaged in inexcusable delay. On that point, counsel for 50 North announced to the Court at a June 7, 2019 status conference that 50 North would be filing one or more counterclaims within ten days of the conference. That did not occur. Rather, that ten days inexplicably turned into more than six months. Moreover, 50 North knew or should have known about the existence of its counterclaims when it filed its initial February 2018 Answer. Nevertheless, it waited almost two years—until December 19, 2019—to assert any counterclaims. This is simply too long. *See FDIC v. Staudinger*, 797 F.2d 908, 911 (10th Cir. 1986) ("Staudinger's first assertion of the counterclaim came sixteen months after he was made aware of the facts underlying the counterclaim. Under these circumstances, the court did not abuse its discretion in denying leave to amend."). Asserting such claims now can only serve to delay this action, particularly when the operative Scheduling Order closed the pleadings as of May 29, 2018. (*See* ECF No. 33 at PageID 312).

In short, even if 50 North's counterclaims were somehow not time-barred, 50 North has waived its counterclaims by failing to assert them in anything resembling a timely fashion.

**CONCLUSION**

For the foregoing reasons, Raymond James respectfully submits that all of the counterclaims asserted by 50 North should be dismissed with prejudice.

Respectfully submitted,

**BURCH, PORTER & JOHNSON, PLLC**

/s/ Gary Scott Peeples
Jef Feibelman (BPR No. 7677)
Melissa A. Maravich (BPR No. 13876)
Gary Scott Peeples (BPR No. 32303)
130 North Court Avenue
Memphis, TN 38103
T: (901) 524-5000
F: (901) 524-5024
E: jfeibelman@bpjlaw.com
mmaravich@bpjlaw.com
gpeeples@bpjlaw.com

- and -

**THE PROSSER LAW FIRM**

/s/ Niel Prosser
Niel Prosser (BPR No. 11647)
Rob Clapper (BPR No. 34180)
Kyle Johnson (BPR No. 36066)
5865 Ridgeway Center Parkway, Suite 300
Memphis, TN 38120
T: (901) 820-4433
E: np@prosserlaw.com
rclapper@prosserlaw.com
kjohnson@prosserlaw.com

*Counsel for Raymond James*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing document has been filed using the Court's CM/ECF system on January 9, 2020, which will automatically send an electronic copy of the filing to all counsel of record in this case.

_/s/ Gary Scott Peeples_______________