```
         IN THE UNITED STATES DISTRICT COURT
        FOR THE WESTERN DISTRICT OF TENNESSEE
                    WESTERN DIVISION
```

| | |
|---|---|
| RAYMOND JAMES & ASSOCIATES, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) 18-cv-2104-JTF-tmp ) |
| 50 NORTH FRONT ST. TN, LLC, | ) ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Before the court by order of reference is Raymond James & Associates, Inc.'s ("Raymond James") Motion to Dismiss. (Mot. to Dismiss, ECF No. 290; Order of Reference, ECF No. 293.) For the following reasons, it is recommended that the motion be denied.

### I. PROPOSED FINDINGS OF FACT

This is a dispute about a lease. Raymond James is a Florida corporation. (Countercomplaint, ECF No. 286 at 57 ¶ 2.) 50 North Front St. TN, LLC ("50 North") is a Delaware limited liability company whose members are all citizens of New York. (ECF No. 312-3.) The amount in dispute between the parties is over $75,000. (ECF No. 286 at 57 ¶ 3.) The following proposed findings of fact are based on the well-pleaded allegations of the countercomplaint and its attached exhibits.

Raymond James rents space in an office building in Memphis. (Id. at 57 ¶ 4.) It, or a predecessor company, has done so since 1985. (Id.) About a decade ago, Raymond James was unhappy about the condition of the elevators in the building. (Id. at 69-70 ¶ 34-5.) Raymond James also knew the building's then-owner, Parkway Properties ("Parkway"), was planning to sell the building. (Id.) The complaint alleges that Raymond James began a "nefarious plot" to renegotiate its lease and insert "code language" that would obligate its landlord to renovate the elevators without a future buyer being able to realize the lease's hidden meaning.[1] (Id.) Parkway and Raymond James agreed on a new lease. (Id. at 58 ¶ 5.) Then, Parkway sold the property and its interest in the lease to 50 North. (Id. at 59 ¶ 10.)

Before 50 North agreed to buy the property, it insisted on having the current tenants in the building, Raymond James included, execute a document certifying that Parkway was not in default on the lease. (Id. at 60-1 ¶¶ 14-7.) Raymond James executed such a certificate, stating that:

> Landlord is not in default under any of the provisions of the Lease, and no event has occurred and no circumstance exists which, with the passage of time or the giving of notice by Tenant, or both, would constitute such a default. Notwithstanding the foregoing, Tenant is currently waiting for Landlord to satisfy Landlord's obligations as described in the following Lease terms: (a) §5, Addendum of Special Stipulations, Food Service;

---

[1] Raymond James describes this as a "conspiracy theor[y]" in a "rhetorically overheated pleading[.]" (ECF No. 290.)

>    and (b) § 11(d) (Access Control); and Tenant hereby
>    reserves its rights available under the Lease as any
>    performance or non-performance of the aforementioned
>    obligations.

(Id. at 62 ¶ 19.) This estoppel certificate was executed on January 13, 2015. (Id.) 50 North alleges it would not have purchased the building had the estoppel certificate not been executed. (Id. at 61 ¶ 16.)

50 North alleges that the condition of the elevators and building as a whole remained the same or somewhat improved over the next two years. (Id. at 71 ¶ 34.) On May 5, 2017, Raymond James sent 50 North a default notice identifying issues with building maintenance, most notably problems with the elevators, that it contended were breaches of the lease. (Id. at 63-4 ¶ 23.) The parties corresponded to attempt to resolve their dispute. (Id. at 63-4 ¶¶ 23-5.) This failed and Raymond James filed suit on February 2, 2018, alleging contract and tort claims against 50 North for its failure to maintain the building. (Id. at 64 ¶ 25.)

50 North removed the case to federal court and filed an answer. (ECF Nos. 1 & 10.) The answer did not assert any counterclaims against Raymond James. (ECF No. 10.) Raymond James filed an amended complaint. (ECF No. 41-1.) 50 North moved to dismiss. (ECF No. 54.) The case proceeded forward for a year and a half. Then — in December 2019 — 50 North filed an answer asserting six counterclaims based on the estoppel certificate. (ECF No. 286.)

50 North alleges (1) that it is entitled to a declaratory judgment establishing that Raymond James's claims are barred based on the estoppel certificate; (2) that Raymond James committed four different kinds of fraud related to the estoppel certificate; and (3) that Raymond James breached a contract with 50 North by suing after executing the estoppel certificate. Raymond James has moved to dismiss. (ECF No. 290.) Raymond James argues that (1) 50 North waived its claims by failing to either assert them in its initial answer or seek leave of court to amend, and (2) the claims are barred by the applicable statute of limitations.

## II.  PROPOSED CONCLUSIONS OF LAW

### A.  Standard of Review

In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the court views plaintiffs' allegations in the light most favorable to them and accepts all well-pleaded factual allegations as true. Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009). Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim." Fed. R. Civ. P. 8(a)(2). However, "[t]he factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." Fritz v. Charter Twp. of Comstock, 592 F.3d 718, 722 (6th Cir. 2010) (quoting Iqbal, 556

U.S. at 677). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007)). To satisfy this requirement, plaintiffs must plead more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement." Id. (alteration omitted) (quoting Twombly, 550 U.S. at 555, 557). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

**B.   Subject-Matter Jurisdiction**

Before the court can address the merits of this motion to dismiss, there is a preliminary matter. In a footnote in its motion to dismiss, Raymond James questioned whether federal subject-matter jurisdiction had been properly established in this case because 50 North had not appropriately pleaded complete diversity of citizenship in its notice of removal. (ECF No. 290.) The court ordered additional briefing on subject-matter jurisdiction. (ECF No. 305.) In response, 50 North filed documentation identifying its members and their respective citizenships. (ECF No. 312.)

"Federal courts are courts of limited jurisdiction; the plaintiff carries the burden of demonstrating that either the

Constitution or a statute has granted the court jurisdiction over a given suit, and that it may therefore hear it." Jude v. Comm'r of Soc. Sec., 908 F.3d 152, 157 (6th Cir. 2018). One basis for federal jurisdiction is diversity of citizenship. 28 U.S.C. § 1331. Diversity jurisdiction is invoked when the plaintiff "presents a claim between parties of diverse citizenship that exceeds the required jurisdictional amount, currently $75,000." Arbaugh v. Y&H Corp., 546 U.S. 500, 512 (2006). For purposes of diversity jurisdiction, a corporation is a citizen of (potentially) two places: its principal place of business and its state of incorporation. 28 U.S.C. § 1332(c)(1); see also Hertz Corp. v. Friend, 559 U.S. 77, 80 (2010). A limited liability company "is a citizen of every state of citizenship of its members." Pitt Excavating, LLC v. Pitt, 603 F. App'x 393, 396 (6th Cir. 2015). A traditional trust is a citizen of every state of citizenship of its trustees. Americold Realty Tr. v. Conagra Foods, Inc., 136 S. Ct. 1012, 1016 (2016).

Raymond James is a corporation both headquartered and incorporated in Florida. (ECF No. 286 at 57 ¶ 2.) 50 North is an LLC. (ECF No. 312-3.) 50 North has two members, Regal Holding Group LLC and Madison Holding Trust. (Id.) Regal Holding Group LLC is, as the name suggests, an LLC. (Id.) It has one member: Jacob Sofer, a citizen of New York since the filing of the complaint in this case. (Id.) Madison Holding Trust is a traditional trust with two

trustees: Jacob Sofer and his wife, Hanna Sofer. (Id.) Hanna Sofer has also been a citizen of New York since the filing of the complaint in this case. Given this, Raymond James is a citizen of Florida, 50 North is a citizen of New York, and complete diversity is satisfied.

**C.   Failure to Seek Leave to Amend**

Raymond James argues that 50 North's counterclaims should be dismissed for failure to seek leave of court to amend its initial answer. 50 North argues it may assert new counterclaims in response to Raymond James's amended complaint as a matter of right. This case thus presents a fairly simple procedural question: may a party assert new counterclaims as a matter of right when answering an amended complaint?

One would think this simple question would have an established answer in the Federal Rules or caselaw. But the Federal Rules of Civil Procedure do not speak to this question. Caselaw on the subject is wildly divergent; different federal courts have adopted at least six competing approaches. One approach is to always allow a party to file counterclaims without seeking leave of court in response to an amended complaint. Walgreen Co. v. Hummer, No. 1:10-CV-2902, 2012 WL 13033091, at *2 (N.D. Ohio May 3, 2012). A second approach is to never allow a party to file counterclaims without seeking leave of court in response to an amended complaint. Bern Unlimited, Inc. v. Burton Corp., 25 F. Supp. 3d 170, 180 (D. Mass.

-7-

2014). A third approach is that "a party is only entitled to respond as of right to an amended complaint if its answer is strictly confined to the new issues raised by the amended complaint." S. New England Tel. Co. v. Glob. NAPS, Inc., No. CIVA 3:04-CV-2075 JC, 2007 WL 521162, at *2 (D. Conn. Feb. 14, 2007). A fourth approach is that a party may assert new counterclaims without seeking leave of court if the amended complaint changed the theory or scope of the case, regardless of whether the counterclaim relates to the changes made to the amended complaint. Tralon Corp. v. Cedarapids, Inc., 966 F. Supp. 812, 832 (N.D. Iowa 1997), aff'd on other grounds, 205 F.3d 1347 (8th Cir. 2000); Krinsk v. SunTrust Banks, Inc., 654 F.3d 1194, 1202 (11th Cir. 2011). A fifth approach is that a party may assert new counterclaims without seeking leave of court if the amended complaint changed the theory or scope of the case, so long as the new counterclaims "reflect the breadth of changes in the amended complaint." Elite Entm't, Inc. v. Khela Bros. Entm't, 227 F.R.D. 444, 446 (E.D. Va. 2005). The sixth approach, created just last year by the Second Circuit, calls for a sliding-scale rule depending on how far along the litigation has progressed. GEOMC Co. v. Calmare Therapeutics Inc., 918 F.3d 92, 100 (2d Cir. 2019).

Courts and commentators are in agreement that the majority rule is the "moderate" approach. Unfortunately, courts and commentators do not agree on what constitutes the moderate

approach. Some say the moderate approach is the one taken by the Tralon court, which held that a party may assert new counterclaims without seeking leave of court if the amended complaint changed the theory or scope of the case, regardless of whether the counterclaim relates to the changes made to the amended complaint. Hydro Eng'g, Inc. v. Petter Investments, Inc., No. 2:11-CV-00139-RJS, 2013 WL 1194732, at *3 (D. Utah Mar. 22, 2013). Others say the moderate approach is the one taken by the Elite Entm't court, where the scope of permissible new counterclaims must "reflect the breadth of changes in the amended complaint." Adobe Sys. Inc. v. Coffee Cup Partners, Inc., No. C 11-2243 CW, 2012 WL 3877783, at *5 (N.D. Cal. Sept. 6, 2012). Both sides are confident their version of the moderate approach is the majority view. Hydro Eng'g, 2013 WL 1194732 at *3; Coffee Cup, 2012 WL 3877783, at *5.

The rationale for the Tralon court's approach is fairness. When a court allows a plaintiff to amend his or her complaint in a way that changes the theory or scope of the case, the plaintiff is essentially getting a mulligan on his or her initial pleading. Tralon, 966 F. Supp. at 832. If the plaintiff gets a mulligan, it is only right that the defendant gets one too. Krinsk, 654 F.3d at 1202 ("It simply would be unfair to allow the plaintiff to change the scope of the case without granting the defendant an opportunity to respond anew."). The rationale for the Elite Entm't court's approach is a combination of fairness and efficient docket

-9-

management. Coffee Cup, 2012 WL 3877783, at *5. If major changes are made to the complaint, fairness requires that the defendant be allowed to make major changes, but minor changes require only minor changes in response. Id.

The Sixth Circuit has not ruled on this question. However, the United States District Court for the Western District of Tennessee has twice adopted the Tralon court's approach. Avery Outdoors LLC v. Peak Rock Capital, LLC, No. 16-CV-2229-SHL-tmp, 2017 WL 5177646, at *2 (W.D. Tenn. Apr. 26, 2017); Barry Fiala, Inc. v. Stored Value Sys., Inc., No. 02-2248 MAA, 2006 WL 2578893, at *2 (W.D. Tenn. Sept. 1, 2006). The undersigned does so here as well. In addition to being the approach previously adopted by this court, the Tralon court's approach minimizes the risk of dismissal based on procedural grounds, consistent with the general preference in the Federal Rules — Rule 15 in particular — of resolving cases on their merits. See Krupski v. Costa Crociere S. p. A., 560 U.S. 538, 550 (2010).

50 North may thus assert new counterclaims as a matter of right if Raymond James's amended complaint changed the theory or scope of the case. The amended complaint did that. As Raymond James explained in its memorandum in support of its motion to file the first amended complaint, the amended complaint "makes additional allegations regarding Defendant's knowledge of the problems facing the subject elevator system . . . ; b) includes additional breaches

of the Lease by Defendant beyond the ones previously alleged; and c) expands the remedies and relief sought." (ECF No. 41-2.) Given this, 50 North was entitled to file its counterclaims as a matter of right.

**D.   Statute of Limitations**

Raymond James argues that all of 50 North's counterclaims are barred by the applicable statute of limitations. It argues that all of 50 North's claims are governed by T.C.A. § 28-3-105's three-year statute of limitations because the gravamen of each claim is fraud. See Precision Tracking Sols., Inc. v. Spireon, Inc., No. 3:12-CV-00626-PLR, 2014 WL 3058396, at *6 (E.D. Tenn. July 7, 2014) (fraud claims are governed by T.C.A. § 28-3-105); Fortune v. Unum Life Ins. Co. of Am., 360 S.W.3d 390, 401 (Tenn. Ct. App. 2010) (same). Raymond James further argues that the statute of limitations for each claim began running when the estoppel certificate was executed on January 13, 2015. Under this theory, 50 North's counterclaims became untimely three years later, about a month before Raymond James filed its complaint.[2]

---

[2] The parties appear to agree that the date Raymond James filed its complaint is the date that matters here, not the date that 50 North filed its counterclaims. See T.C.A. § 28-1-114(a) (establishing that a "counterclaim or third party complaint or cross-claim is not barred by the applicable statute of limitations or any statutory limitation of time, however characterized, if it was not barred at the time the claims asserted in the complaint were interposed[.]")

50 North sees things differently. 50 North disputes that its declaratory judgment and breach of contract claims are subject to T.C.A. § 28-3-105's three-year statute of limitations. The gravamen of the breach of contract claim is breach of contract, it argues, and the claim is thus subject to T.C.A. § 28-3-109(a)(3)'s six-year statute of limitations. Its declaratory judgment claim is subject to the catch-all ten-year statute of limitations established by T.C.A. § 28-3-110(a)(3). Furthermore, though 50 North concedes its fraud claims are governed by T.C.A. § 28-3-105's three-year statute of limitations, it argues the claims are timely. The statute of limitations did not start running on those claims until (at the earliest) Raymond James's first default notice because T.C.A. § 28-3-105 codifies the discovery rule. All of its claims were thus timely asserted. 50 North argues in the alternative that its claims were tolled by the doctrine of fraudulent concealment.

Assuming without deciding that all of the claims in this case are subject to T.C.A. § 28-3-105's three-year statute of limitations, none of the claims are time-barred. "A motion under Rule 12(b)(6), which considers only the allegations in the complaint, is generally an inappropriate vehicle for dismissing a claim based upon the statute of limitations." Cataldo v. U.S. Steel Corp., 676 F.3d 542, 547 (6th Cir. 2012). Such a step is appropriate only when "the allegations in the complaint

affirmatively show that the claim is time-barred." Id. T.C.A. § 28-3-105 codifies the discovery rule, under which a plaintiff's claim accrues "when he discovers his injury or should have discovered his injury with reasonable diligence." Chunn v. Se. Logistics, Inc., 794 F. App'x 475, 477 (6th Cir. 2019). 50 North's alleged injury is that Raymond James promised there was no breach of the lease on January 13, 2015 and then sued for breach of the lease based on conditions that existed on January 13, 2015. The statute of limitations would thus begin running when 50 North was aware that Raymond James believed the conditions of the building were a breach of the lease. The earliest date from the face of the complaint when that can be inferred is May 5, 2017, when Raymond James sent its first default notice. There are less than three years between May 5, 2017 and February 2, 2018. The claims are thus timely.

Raymond James argues that 50 North was aware of the basis of its claims even before the estoppel certificate was signed because its pre-purchase due diligence revealed problems with the elevators. But the court may not "improperly conflate the statute of limitations with the merits of the claim." Peabody Coal Co. v. Dir., Office of Workers' Comp. Programs, U.S. Dep't of Labor, 718 F.3d 590, 594 (6th Cir. 2013). If 50 North was aware that the representations in the estoppel certificate were false at the time the document was signed, its fraud claims fail on the

-13-

merits, not because of a statute of limitations problem. Furthermore, the alleged false claims in the estoppel certificate are not about the actual condition of the building's elevators, but rather Raymond James's opinions about whether the condition of those elevators constituted breach of the lease. The earliest point from the face of the complaint 50 North could have known about Raymond James's belief the elevator conditions were a breach of the lease was the default notice.

### III. RECOMMENDATION

For the reasons above, it is recommended that Raymond James's motion to dismiss be denied.

Respectfully submitted,

s/ Tu M. Pham
TU M. PHAM
Chief U.S. Magistrate Judge

June 23, 2020
Date

**NOTICE**

**WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDED DISPOSITION, ANY PARTY MAY SERVE AND FILE SPECIFIC WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS. ANY PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(2); L.R. 72.1(g)(2). FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.**