# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| **RAYMOND JAMES & ASSOCIATES, INC.,** | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 2:18-cv-02104-JTF-tmp |
| 50 NORTH FRONT ST. TN, LLC, | ) ) ) |
| Defendant. | ) ) |

## REPLY IN SUPPORT OF MOTION FOR LEAVE TO
## FILE A SECOND AMENDED COMPLAINT

Plaintiff Raymond James & Associates, Inc. ("Raymond James") submits this Reply in Support of its Motion for Leave to File a Second Amended Complaint ("Reply"). For the reasons in this Reply and in the Brief in Support of Plaintiff's Motion for Leave to File a Second Amended Complaint ("Brief") (ECF 324-1), the Court should grant Raymond James's Motion for Leave to File a Second Amended Complaint ("Motion") (ECF 324) and give Raymond James leave to file the Second Amended Complaint (the "SAC") (ECF 324-2) against 50 North Front St. TN, LLC ("50 North") and Jacob Sofer ("Mr. Sofer") (collectively "Defendants").

## INTRODUCTION

Raymond James filed its Motion on May 15, 2020. On July 30, 2020, the Court issued its Order Adopting the Magistrate Judge's Report and Recommendation and Granting Defendant's Motion to Dismiss (ECF No. 339) ("Order"). The Order, however, did not decide the Motion, which should be granted for two reasons. First, the Motion should be granted because Raymond James's proposed SAC expands the facts supporting the breach of contract and other claims

1

previously asserted in the First Amended Complaint ("FAC") in a manner that makes them more plainly pled. Second, the Motion should be granted because the SAC also asserts new claims (in Counts 2, 3 and 4) that were not asserted in the FAC and therefore not addressed by the Court's Order. These new claims for fraud, nuisance, and prima facie tort[1] are also well pled, and the Court should allow them to proceed. In addition, the SAC includes for the first time claims against Mr. Sofer individually for his wrongful conduct. As explained below, these amendments are not futile or untimely, and the Defendants will not suffer any prejudice if the Court allows them to proceed. Accordingly, leave to file the SAC should "be freely granted." Fed. R. Civ. P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182 (1962).

## ARGUMENT

### A. The SAC Contains Relevant Negotiating History that Supports Raymond James's Breach of Contract Claim.

As explained in the Opening Brief, the SAC—unlike the FAC—contains a detailed discussion of the negotiating history between Raymond James and 50 North's predecessor, Parkway Properties, LP ("Parkway"), regarding what eventually became the operative Lease. This negotiating history, which shows the context out of which the parties' lease developed, became even more relevant in light of the Magistrate Judge's reliance on what the parties to the Lease must have intended. A prominent example is the Report's conclusion that the "*parties would not have created* a painstakingly detailed alternative to damages suits in the self-help remedy [in Section 11] *had they intended* to allow damages suits to be so easily accessible" and the resulting (erroneous) conclusion that the Lease does not permit the recovery of money damages. (ECF 301

---

[1] Count 4 in the SAC has a new stand-alone prima facie tort claim that was absent from the First Amended Complaint.

at PageID 6253) (emphasis added). Another example is the Report's conclusion that Section 10 of the Lease consists of merely "general building maintenance provisions." (*Id.* at PageID 6250.)

The Court in its Order appears to rely on the Report's conclusions regarding the parties' intent. (ECF No. 339 at 16, PageID 6845 ("These are detailed thresholds, which, as the R & R found, plainly demonstrate the parties' intent to make damages less accessible.")). However, as the SAC alleges in detail, the negotiating history conclusively demonstrates (among other things) that Raymond James was prepared to lease space in a different building if then-landlord Parkway did not commit to: (a) spending whatever capital might be necessary to maintain and operate the Tower in at least the then-current level and at a level similar to that of comparable buildings in the market; (b) making the improvements, repairs, and replacements as necessary to do so; and (c) furnishing services at the Tower at no less than the then-current levels. (ECF No. 324-2 ¶¶ 14-25, PageID 6448-6453.) The same negotiating history detailed in the SAC also makes clear, in accordance with the parties' intent, Section 10 contains meaningful and enforceable obligations. Notwithstanding the Court's conclusions in the Order, this negotiating history articulated in the SAC provides critical context and shows the importance of certain Lease provisions to the parties that the Order instead concluded were unimportant. *See generally BlueCross Individual Healthcare Specialists, Inc. v. BlueCross BlueShield of Tennessee, Inc.*, 566 S.W.3d 671 (Tenn. 2019). As such, the Court should allow Raymond James to assert the negotiating history by way of the SAC and reassert its breach of contract claim against 50 North.

  **B.**  **Leave To Amend Should Be Granted Because The SAC Contains New Claims Which Are Not Futile.**

The SAC alleges both relevant facts that transpired since the filing of the First Amended Complaint and ones that were uncovered during discovery that support additional claims against

3

Defendants. Contrary to 50 North's opposition, these new claims are not futile. A claim is futile in the amendment context only if it would not survive a Rule 12(b)(6) motion. *See Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 421 (6th Cir. 2000). Here, Raymond James's proposed new claims meet this standard and the Court should allow them to proceed.

In relevant part, the SAC alleges a new fraud claim against 50 North for materially falsifying billing statements for operating expenses. (ECF No. 324-2 ¶¶ 104-15, PageID 6489-6491.) This new fraud claim is based on alleged conduct that Raymond James could not discover until after the First Amended Complaint was filed—indeed, some of this conduct had not even occurred. In response, 50 North spends a number of pages (*see* ECF 326 at PageID 6718-22) arguing that the factual allegations underlying the new fraud claim have no merit, but that is not the relevant inquiry. *See Rose*, 203 F.3d at 421 (concluding that the district court abused its discretion in denying leave to amend in focusing only on whether the claim might someday fail on the merits). Indeed, Defendants' attack on the merits of these new factual allegations actually favors granting leave to amend; "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Raymond James has alleged that 50 North intentionally inflated operating expenses billed to Raymond James to dupe Raymond James into paying excessive and fraudulent charges. (ECF No. 324-2 ¶¶ 106-12, PageID 6490.) Raymond James, reasonably relying on 50 North's false representations, paid these charges. (*Id.* ¶¶ 108, 113.) These and other related factual allegations in the SAC demonstrate that Raymond James has alleged a viable fraud claim against 50 North. *See, e.g.*, *Brown v. Birman Managed Care, Inc.*, 42 S.W.3d 62, 66-67 (Tenn. 2001) (setting forth the elements of fraud under Tennessee law). Further, Raymond James has pled these facts with

4

particularly, alleging the time, method, and specifics of the fraudulent bills, thus satisfying the requirements of Rule 9. (*See* ECF No. 324-2 ¶¶ 75-79, 106-10, PageID 6482-85, 6490.) The Court should therefore grant Raymond James leave to proceed with its new fraud claim.

Similarly, Raymond James has properly asserted a new nuisance claim against Defendants. In support of this claim, Raymond James alleges facts establishing that 50 North and Mr. Sofer have substantially and unreasonably disturbed and interfered with Raymond James's use and enjoyment of its leased property, actions which constitute a nuisance under Tennessee law. The First Amended Complaint did not specifically allege a nuisance claim, and neither the Parties' lease nor the Court's Order precludes this claim. Accordingly, this is another claim the Court should allow to proceed.

50 North argues the nuisance claim is futile because a portion of Section 25 of the Lease purportedly bars any nuisance-based liability. (ECF 326 at PageID 6724 and 6728.) 50 North is wrong. Indeed, if Section 25 of the Lease is interpreted in the manner advocated by 50 North, then another Lease provision (Section 28) would be rendered illusory. Section 25 states in part: "Landlord agrees to make commercially reasonable efforts to protect Tenant from interference or disturbance by third persons . . . however, Landlord shall not be liable for any such interference, disturbance or breach, whether caused by another tenant or tenants or by Landlord or any other person[.]"[2] Section 28 expressly grants Raymond James a right of quiet enjoyment: "Tenant shall peaceably and quietly hold and enjoy the Premises for the Term, subject to the provisions of this Lease." (*Id.* at PageID 393.) "A party cannot promise to act in a certain manner in one portion of a contract and then exculpate itself from liability for breach of that very promise in another part of

---

[2] (ECF 41-1 at PageID 392).

5

the contract." *Jewelers Mut. Ins. Co. v. Firstar Bank of Ill.*, 820 N.E.2d 411, 415 (Ill. 2004).[3] And in any event, Section 25 does not even purport to protect *third parties* from nuisance liability, so Raymond James's nuisance claim against Mr. Sofer is indisputably unaffected by that Section.

As for the new prima facie tort claim in the SAC, while Raymond James acknowledges the Order dismissed its gross negligence and willful and intentional conduct tort claims, the rationale behind this dismissal is no longer applicable in light of the SAC's new factual allegations. Referring to the First Amended Complaint, the Order observed "[t]here are not allegations that Landlord, for example, intentionally disrupted elevator service . . . everything RJA described are Lease violations, not intentional torts." (*See* ECF No. 339, PageID 6856.) The SAC, however, specifically alleges "Defendants intentionally made the situation worse—by, for example, turning certain elevators off rather than getting them repaired—in an effort to force Raymond James from the Tower." (*See* ECF No. 324-2, PageID 6447.) Tennessee has long recognized a prima facie tort claim stemming from the principle that "[a]t common law there was a cause of action whenever one person did damage to another willfully and intentionally, and without just cause or excuse." *Large v. Dick*, 343 S.W.2d 693, 667 (Tenn. 1960) (internal quotation marks omitted); *see also Hutton v. Waters*, 179 S.W. 134, 135 (Tenn. 1915) ("In short, if an act be hurtful to another, intentional, and without legal justification, it is malicious in the true legal sense . . . [and] therefore unlawful, and is actionable."); *accord Schmitz v. Smentowski*, 785 P.2d 726, 734 (N.M. 1990) (noting that prima facie tort "provides a remedy for plaintiffs who have been harmed by a defendant's intentional and malicious acts that fall outside of the rigid . . . tort categories"). Thus, contrary to 50 North's argument, Tennessee tort law does in fact provide a remedy to a plaintiff

---

[3] *See also Shorr Paper Prods., Inc. v. Aurora Elevator, Inc.*, 555 N.E.2d 735, 738 (Ill. App. Ct. 1990) (same); *Sniffen v. Century Nat'l Bank of Broward*, 375 So. 2d 892, 893-94 (Fla. Dist. Ct. App. 1979) (same).

6

(like Raymond James) that has been intentionally harmed by another's wrongful conduct (as 50 North and Mr. Sofer have done), even if the wrongful conduct does not fit neatly into a tort category. *Schmitz*, 785 P.2d at 734.

The SAC also names an additional Defendant, Mr. Sofer (who operates 50 North as his alter ego) for his personal wrongful conduct. 50 North contends the claims against Mr. Sofer are futile because, under a veil-piercing theory, Mr. Sofer and 50 North would be treated as a single unit, and thus, various lease provisions would insulate Mr. Sofer. (*See* ECF 326 at PageID 6724.) Aside from having other defects, this argument ignores the well-established rule that a person (typically an officer or director)[4] who commits or participates in the commission of a tort by a corporate entity "is liable to third parties regardless of the liability of [the] corporation." *Traffic Safety Devices, Inc. v. Safety Barriers, Inc.*, 2005 WL 8162604, at *3 (E.D. Tenn. Apr. 25, 2005); *see also Cooper v. Cordova Sand & Gravel Co.*, 485 S.W.2d 272 (Tenn. Ct. App. 1971). Nothing in the Lease would shield Mr. Sofer from liability for any tortious conduct that he has committed, directed, or participated in. As such, the Court should grant Raymond James leave to pursue its claims against Mr. Sofer individually.

The additional factual allegations in the SAC are material and support the claims against both 50 North and Mr. Sofer. The heart of this case involves the Tower's elevator system and the resulting damages to Raymond James. That the elevator system continued to injure Raymond James employees after the First Amended Complaint was filed highlights (among other things) that the elevator system is dangerous, and 50 North and Mr. Sofer should have modernized it long

---

[4] 50 North has represented that it has two members, Regal Holding Group, LLC ("Regal") and a trust. Regal—which appears to be a shell entity—has only one member, Mr. Sofer. Mr. Sofer is also a trustee of the trust. As alleged in the SAC, the evidence to date shows that Mr. Sofer exercises dominion and control over all three entities. (*See* ECF 324-2 at ¶ 2, PageID 6444.)

7

before. Similarly, emails eventually produced by 50 North and by third parties during discovery demonstrate that 50 North—despite representing to the Court at the preliminary injunction stage[5] that the elevators were safe—knew they were unsafe. An email exchange between Joel Friedman ("an agent of 50 North") and Shellie Moses (a Colliers employee) about the Tower's elevators captures this succinctly. In that exchange, Mr. Friedman said: "Sounds like this is getting dangerous." (ECF 324-2 at ¶ 43, PageID 6461.) Courts routinely permit litigants to amend their pleadings to assert new facts learned during discovery; *see, e.g.*, *Spruance v. Sunbelt Rentals*, 2014 WL 12654912, at *3 (S.D. Ohio Apr. 30, 2014), and the Court should do the same here as these facts support Raymond James's additional claims.

### C. 50 North's Procedural Arguments For Denying Leave Have No Merit.

Raymond James's Motion is timely given that the SAC relies on facts that occurred after the First Amended Complaint was filed or that were uncovered during the parties' extensive document discovery. Raymond James has not acted with undue delay, nor is it proposing the amended complaint in bad faith or with dilatory motive. 50 North's arguments, to the contrary, are without merit. For instance, 50 North completely ignores that it only recently—i.e., in February 2020, over a year-and-a-half after the First Amended Complaint was filed—requested leave from the Court to assert (time-barred and otherwise fatally flawed) counterclaims and (already-waived) affirmative defenses out of time. (*See* ECF 297-26). And in any event, the Sixth Circuit has emphasized that, as a general matter, "delay alone . . . does not justify denial of leave to amend." *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002) (vacating a denial of a motion for leave

---

[5] (*See* ECF 19-4 at PageID 207) (unsworn statement from elevator modernization salesperson asserting that the elevators are "safe for the riding public" and denying that any repairs have been "due to safety issues").

to file a second amended complaint).  Given 50 North's own recent amendment to its pleading, its bad-faith and dilatory-motive arguments ring hollow.

50 North's arguments regarding prejudice also fail.  Again, 50 North recently asserted to the Court—in connection with its own amendment request—that "RJA will not be prejudiced if the Court amends the Scheduling Order deadline to permit Landlord to file an Answer to RJA's [First Amended Complaint] with additional affirmative defenses and counter-claims."  (ECF 297-26 at PageID 6193.)  50 North fails to explain how its own representations to the Court now somehow do not apply when Raymond James requests leave to amend.

And in the face of Sixth Circuit precedent (*Morse*) holding that another round of motion practice typically does not constitute undue prejudice in the context of pleading amendments of pleadings, 50 North tries to distinguish that case[6] on the basis that the report and recommendation in *Morse* recommended dismissal without prejudice.  (*See* ECF 326 at PageID 6726 n.10.)  But the procedural posture in *Morse* actually supports Raymond James's position and undercuts 50 North's.  The plaintiffs in *Morse* requested leave to file a second amended complaint only after the district court had "adopted and modified portions of the magistrate's report [and] *dismissed the complaint with prejudice*."  *Morse*, 290 F.3d at 798 (emphasis added).  The Sixth Circuit held that the district court had abused its discretion in denying the plaintiffs' *post-judgment* request for leave to file a second amended complaint.  *See id.* at 797-99 (discussing the procedural history and the standard of review and vacating the district court's denial of leave).  In so holding, the Sixth Circuit

---

[6] Other cases relied upon by 50 North in its opposition brief are inapposite.  One case relied upon by 50 North, *Leary v. Daeschner*, 349 F.3d 888 (6th Cir. 2003), involved a request for amendment after *four* summary judgment motions had been filed.  *See id.* at 896 (discussing the procedural history and noting that the plaintiffs' request to amend was filed "[a]fter Daeschner's fourth motion for summary judgment").  Another case relied upon by 50 North, *McDaniel v. Am. Gen. Fin. Servs. Inc.*, 2006 WL 8434939 (W.D. Tenn. July 14, 2006), involved a trial date that had already been continued once (*see id.* at *1) and a request to file a *third* amended complaint (*see id.*).

9

noted that, in the "post-judgment context, we must also take into consideration the competing interest of protecting the finality of judgments and the expeditious termination of litigation." *Id.* at 800 (internal quotation marks omitted). In contrast, here there is no finality-of-judgment concern because Raymond James filed this Motion before the Order from the Court on the Report and Recommendation and the Court did not dismiss the First Amended Complaint *with prejudice*. In short, *Morse* held in favor of amendment even though, unlike here, leave to amend was sought after dismissal *with prejudice*.

50 North also invokes the specter of additional discovery as an argument against amendment. But 50 North goes out of its way to avoid identifying *what* additional discovery might be necessary. The vagueness of 50 North's argument is deliberate since it only recently represented to the Court that Raymond James would not suffer any prejudice if 50 North is permitted to assert affirmative defenses and counterclaims out of time. (*Cf.* ECF 297-26 at PageID 6194) (asserting that "RJA already has almost every conceivable non-privileged document that pertains to Landlord's purchase, ownership and operation of the Building"). 50 North's vague and conclusory argument about additional discovery should be rejected. *See Triplett v. Connor*, 109 F. App'x 94, 96 n.4 (6th Cir. 2004) (explaining "conclusory arguments are waived on appeal").

Finally, 50 North's consultation argument should be rejected out of hand. 50 North argues the Motion should be denied because of a supposed failure to comply with Local Rule 7.2(a)(1)(B). (ECF 326 at PageID 6712-13). According to 50 North, it did not have an "opportunity to consider the Motion or discuss it." (*Id.* at PageID 6713.) But as the certificate states, counsel for Raymond James (Niel Prosser) made repeated attempts to contact counsel for 50 North (by telephone, by voice mail, and by email). (ECF 324 at PageID 6422.) Second, as a practical matter, there was nothing for 50 North to "consider." As its filings demonstrate, 50 North vigorously opposes

Raymond James's request for leave to file the SAC.  An extended consultation would not have changed that,[7] and the "law does not require a futile act." *Hardy v. City Optical Inc.*, 39 F.3d 765, 770 (7th Cir. 1994).  Third, 50 North has not suffered any material prejudice since it had the opportunity to fully argue its opposition in a twenty-page brief (*see* ECF 326), and its position on amendment is abundantly clear.

## CONCLUSION

For the foregoing reasons and for those contained in the Brief, Raymond James respectfully submits that the Court should grant the Motion and permit Raymond James to file the Second Amended Complaint.

---

[7] Local Rule 7.2(a)(1)(B) recognizes this because there is no consultation requirement for dispositive motions.  *See id.* (no requirement for motions under Rules 12, 56, 59, and 60).

11

Respectfully submitted,

**BURCH, PORTER & JOHNSON, PLLC**

/s/ Charles Silvestri Higgins
Charles Silvestri Higgins (BPR No. 30184)
Sarah Elizabeth Stuart (BPR No. 35329)
130 North Court Avenue
Memphis, TN 38103
T:  (901) 524-5000
F:  (901) 524-5024
E: chiggins@bpjlaw.com
　　sstuart@bpjlaw.com

- and -

**THE PROSSER LAW FIRM**

/s/ Niel Prosser
Niel Prosser (BPR No. 11647)
Rob Clapper (BPR No. 34180)
Kyle Johnson (BPR No. 36066)
5865 Ridgeway Center Parkway, Suite 300
Memphis, TN 38120
T:  (901) 820-4433
E: np@prosserlaw.com
　　rclapper@prosserlaw.com
　　kjohnson@prosserlaw.com

*Attorneys for Raymond James*

## CERTIFICATE OF SERVICE

　　The undersigned hereby certifies that a true and correct copy of the foregoing document was filed using the Court's CM/ECF system on October 14, 2020, which will automatically send an electronic copy of the filing to all counsel of record in this case.

/s/ Kyle Johnson