**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | |
|---|---|
| **RAYMOND JAMES & ASSOCS., INC.,** ) | |
| ) | |
| **Plaintiff/Counter-Defendant,** ) | |
| ) | |
| v. ) | **Case No. 2:18-cv-02104-JTF-tmp** |
| ) | |
| **50 NORTH FRONT ST. TN, LLC,** ) | |
| ) | |
| **Defendant/Counter-Plaintiff.** ) | |

**ORDER ADOPTING REPORT AND RECOMMENDATION, DENYING PLAINTIFF'S MOTION TO DISMISS COUNTER-COMPLAINT, AND DENYING AS MOOT DEFENDANT'S MOTION FOR LEAVE TO FILE COUNTERCLAIMS**

Plaintiff/Counter-Defendant Raymond James & Associates, Inc.'s ("RJA") initial Complaint was removed to federal court on February 16, 2018. (ECF No. 1.) Defendant/Counter-Plaintiff 50 North Front St. TN, LLC ("Landlord" or "50 North") filed an Answer on February 26, 2018 but did not assert counterclaims at that time. (ECF No. 10.) RJA later filed a First Amended Complaint ("complaint" or "FAC") on May 29, 2018. (ECF No. 41-1.) Landlord submitted a sealed Answer and Counter-Complaint on December 19, 2019. (ECF No. 286.) RJA filed a Motion to Dismiss Landlord's Counter-Complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6); the Motion was filed on January 9, 2020. (ECF No. 290.) Landlord's response in opposition was filed on February 4, 2020 (ECF No. 296), which RJA met by reply on February 18, 2020 (ECF No. 299). The Court referred the Motion to Chief Magistrate Judge Pham for report and recommendation, pursuant to 28 U.S.C. § 636. (ECF No. 293.) Judge Pham entered a Report and Recommendation ("R. & R.") on June 23, 2020, advising the Court to deny RJA's Motion to Dismiss in its entirety. (ECF No. 329.) RJA filed objections to the R. & R. (ECF No. 330),

1

Landlord filed a response to those objections (ECF No. 332), and RJA subsequently filed a reply (ECF No. 340).

For the following reasons, the R. & R. should be ADOPTED and RJA's Motion to Dismiss DENIED.

## FINDINGS OF FACT

In his R. & R., the Chief Magistrate Judge provides, and this Court adopts and incorporates, proposed findings of fact in this case. (ECF No. 329, 1-4.)

## LEGAL STANDARD

Congress passed 28 U.S.C. § 636(b) "to relieve some of the burden on the federal courts by permitting the assignment of certain district court duties to magistrates." *United States v. Curtis*, 237 F.3d 598, 602 (6th Cir. 2001). Pursuant to the provision, magistrate judges may hear and determine any pretrial matter pending before the Court, except various dispositive motions. 28 U.S.C. § 636(b)(1)(A). Regarding those excepted dispositive motions, magistrate judges may still hear and submit to the district court proposed findings of fact and recommendations for disposition. 28 U.S.C. § 636(b)(1)(B). Upon hearing a pending matter, "the magistrate judge must enter a recommended disposition, including, if appropriate, proposed findings of fact." Fed. R. Civ. P. 72(b)(1); *see also Baker v. Peterson*, 67 F. App'x 308, 310 (6th Cir. 2003). Any party who disagrees with a magistrate's proposed findings and recommendation may file written objections to the report and recommendation. Fed. R. Civ. P. 72(b)(2).

The standard of review that is applied by the district court depends on the nature of the matter considered by the magistrate judge. *See Baker*, 67 F. App'x at 310 (citations omitted) ("A district court normally applies a 'clearly erroneous or contrary to law' standard of review for nondispositive preliminary measures. A district court must review dispositive motions under the

*de novo* standard."). Upon review of the evidence, the district court may accept, reject, or modify the proposed findings or recommendations of the magistrate judge. *Brown v. Bd. of Educ.*, 47 F. Supp. 3d 665, 674 (W.D. Tenn. 2014); *see also* 28 U.S.C. § 636(b)(1). The court "may also receive further evidence or recommit the matter to the [m]agistrate [j]udge with instructions." *Moses v. Gardner*, No. 2:14-cv-2706-SHL-dkv, 2015 U.S. Dist. LEXIS 29701, at *3 (W.D. Tenn. Mar. 11, 2015). A district judge should adopt the findings and rulings of the magistrate judge to which no specific objection is filed. *Brown*, 47 F. Supp. 3d at 674.

## ANALYSIS

Before assessing the merits of RJA's Motion, the R. & R. first considered whether the parties have properly established federal jurisdiction for their claims. (ECF No. 329, 5.) After ordering and receiving additional briefs from the parties on the question of subject matter jurisdiction (ECF Nos. 305; 312; and 314), the R. & R. found that diversity of citizenship has been satisfied. (ECF No. 329, 5-7) (citing 28 U.S.C. § 1331). The Court agrees and, in the absence of any objections, adopts the R. & R.'s determination that it has subject matter jurisdiction over this case.

RJA raises three primary arguments for why Landlord's Counter-Complaint fails to state a claim upon which relief can be granted and objects to the R. & R.'s finding on each. (ECF No. 290.)

**1. Waiver**

RJA argues that the counterclaims are compulsory and therefore, by failing to raise any in its initial February 2018 Answer, Landlord waived the counterclaims and cannot now assert them in its second Answer. (ECF No. 290, 9.) Landlord does not contest the compulsory nature of its counterclaims but argues that they should not be dismissed because they were filed as a matter of right following RJA's First Amended Complaint. (ECF No. 296, 20.) In response to RJA's Motion

3

to Dismiss and "out of an abundance of caution," Landlord sought leave to file its counterclaims. (ECF No. 297). RJA argues that this motion for leave should not affect the Court's dismissal of the counterclaims because they were waived by Landlord. (ECF No. 299.)

The R. &. R. summarized this waiver issue as a simple procedural question: "may a party assert new counterclaims as a matter of right when answering an amended complaint?" (ECF No. 329, 7.) The parties answer this question differently, but do not object to the Chief Magistrate Judge's summary of the issue. Following its analysis of six competing perspectives, none of which have been provided by the Sixth Circuit, the R & R. applied an approach that has twice been adopted in the Western District of Tennessee and upheld by other circuits. (ECF No. 329, 8-10) (citing *Tralon Corp. v. Cedarapids, Inc*., 966 F. Supp. 812, 832 (N.D. Iowa 1997), *aff'd on other grounds*, 205 F.3d 1347 (8th Cir. 2000); *Krinsk v. SunTrust Banks, Inc.*, 654 F.3d 1194, 1202 (11th Cir. 2011)). Under the "*Tralon* approach," a party is permitted to assert new counterclaims, without seeking leave to do so, if an amended complaint is filed which changes the factual allegations or scope of the case. *Tralon Corp.*, 966 F. Supp. at 831. The counterclaims asserted need not relate to the changes made to the amended complaint; the defendant is "entitled to a fresh-start" in answering the amended complaint if plaintiff majorly amends its pleadings. *See Id*. at 832. ("[I]t would be inequitable to entertain the [p]laintiffs' [s]econd [a]mended [c]omplaint without permitting [the defendant] to completely plead anew."). The R. & R. emphasized the inherent fairness of the *Tralon* approach and discussed its past application in the Western District of Tennessee. (ECF No 329, 9-10) (citing *Avery Outdoors LLC v. Peak Rock Capital, LLC*, No. 16-CV-2229-SHL-tmp, 2017 WL 5177646, at *2 (W.D. Tenn. Apr. 26, 2017) and *Barry Fiala, Inc. v. Stored Value Sys., Inc*., No. 02-2248 MAA, 2006 WL 2578893, at *2 (W.D. Tenn. Sept. 1, 2006)).

Following these cases and adopting the described approach, the R. & R. found that RJA's First Amended Complaint "changed the theory or scope of the case." (*Id*. at 10.) In making this determination, the R. & R. relied on RJA's own explanation that the amended complaint: "a) makes additional allegations regarding Defendant's knowledge of the problems facing the subject elevator system . . . ; b) includes additional breaches of the Lease by Defendant beyond the ones previously alleged; and c) expands the remedies and relief sought." (*Id*.) (quoting RJA's Motion for Leave to File First Amended Complaint (ECF No. 41-2, 2)). Given the scope of the changes made in RJA's First Amended Complaint, the R. & R. found that Landlord "was entitled to file its counterclaims as a matter of right." (*Id*. at 11.)

RJA objects, arguing that the R. & R. erred by adopting the wrong approach. (ECF No. 330, 15.) RJA warns that the view taken by the R. & R., and at least two other judges in this district, "may lead to sandbagging," permitting a party to "sit on its compulsory counterclaims for an unduly long period" before filing, as Landlord did here. (*Id*. at 16.) To RJA, this approach fails to give proper effect to the compulsory nature of counterclaims, i.e., the compulsory counterclaims rule is rendered "largely toothless if *any* later amendment to a complaint will excuse waiver . . ." (*Id*.) (emphasis in original). The Court agrees that indiscriminately authorizing all counterclaims filed after *any* amended complaint *would* render the compulsory counterclaim rule ineffective, but that is not the approach advocated by the R. & R. Far from allowing "*any*" amended pleading to serve as a gateway for the filing of compulsory counterclaims, the approach adopted by the R. & R. permits a party to file compulsory counterclaims without leave of court only if the amended complaint changes the scope or theory of the case. *Avery Outdoors LLC*, 2017 WL 5177646, at *2.

RJA asserts that a better approach is to allow a party to file compulsory counterclaims for the first time in response to an amended complaint only if the counterclaims themselves "reflect the breadth of changes in the amended complaint." (ECF No. 330, 16) (quoting *Elite Entm't, Inc. v. Khela Bros. Entm't*, 227 F.R.D. 444, 446 (E.D. Va. 2005)). Applying this approach, RJA argues that Landlord's counterclaims should be dismissed because they fully respond to the allegations found in the initial Complaint and do not reflect the breadth of changes made by the First Amended Complaint. (*Id.*) The R. & R. already considered this more-narrow approach and weighed its strengths and weaknesses against the view taken by the *Tralon*, *Avery Outdoors LLC*, and *Barry Fiala, Inc.* courts. (ECF No. 329, 9-10.) While RJA's suggested view offers some judicial efficiency, the R. & R. found, and this Court agrees, that the *Tralon* approach maximizes fairness and minimizes the risk of dismissals based on purely procedural grounds, which is consistent with Federal Rule 15's preference to resolve disputes on their merits. (*Id.* at 10); *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 550, 130 S. Ct. 2485, 2494 (2010).

In footnotes, RJA attempts to distinguish this case from *Avery* and *Barry* but the result is unpersuasive. (ECF No. 330, 15-16.) The R. & R. relied on *Avery* and *Barry*, not because of factual parallels, as RJA contends, but rather, as two examples of courts in the Western District of Tennessee applying the *Tralon* approach to this issue of waiver. Decisions made by district courts within the same district are not binding on one another.[1] *Chinn v. Jenkins*, No. 3:02-CV-512, 2018 WL 488159, at *2 (S.D. Ohio Jan. 19, 2018) (citing *United States v. Article of Drugs Consisting of 203 Paper Bags*, 818 F.2d 569, 572 (7th Cir. 1987). Nonetheless, the R. & R. properly weighed

---

[1] "Judges of the same district court customarily follow a previous decision of a brother judge upon the same question except in unusual or exceptional circumstances . . . but 'there is no such thing as "the law of the district."'" *Reuss v. First Fin. Collection Co.*, No. 1:08-CV-697, 2009 WL 4828600, at *3 (S.D. Ohio Dec. 11, 2009) (quoting *Buna v. Pacific Far East Line, Inc*., 441 F.Supp. 1360, 1365 (N.D.Cal.1977); *Threadgill v. Armstrong World Indus., Inc*., 928 F.2d 1336, 1371 (3rd Cir.1991)).

the persuasive effect of these decisions and adopted the same approach to the issue after conducting a thorough and independent analysis. *See Threadgill*, 928 F.2d at 1371 (3d Cir. 1991) ("Where a second judge believes that a different result may obtain, independent analysis is appropriate."). Although RJA disagrees with the R. & R.'s conclusion on the issue of waiver, it fails to point out any error in the Chief Magistrate Judge's decision. The Court adopts the R. & R.'s determination that Landlord was entitled to file its counterclaims as a matter of right. Having reached that conclusion, the Court finds that Landlord's Motion for Leave to File Counterclaims (ECF No. 297) should be denied as moot.

### 2. Statute of Limitations

RJA argues that Landlord's counterclaims should be dismissed as time-barred under Tennessee's three-year statute of limitations because the gravamen of the Counter-Complaint is fraud and Tenn. Code Ann. § 28-3-105 imposes a three-year statute of limitations on fraud claims. (ECF No. 290-1, 8.) Central to this argument is RJA's assertion that the statute of limitations for the counterclaims began running on January 13, 2015, the day RJA signed the Estoppel Certificate. (*Id.* at 9.) As a result, RJA contends that Landlord's Counter-Complaint, which was filed on December 19, 2019, violated the statute of limitations and should be dismissed as untimely. (*Id.*) Landlord concedes that four of its counterclaims are fraud related and subject to the state's three-year statute of limitations, but disagrees with RJA's accrual date analysis, arguing instead that the statute of limitations, at the earliest, did not begin to run until May 5, 2017 when RJA sent Landlord its first Notice of Default letter. (ECF No. 296, 10.) Landlord asserts that its other two counterclaims were timely because they are subject to longer statutes of limitations: the breach of contract counterclaim, subject to a six-year statute of limitations, pursuant to Tenn. Code Ann. § 28-3-109(a)(3); and the declaratory judgment counterclaim, subject to a ten-year statute of

limitations, pursuant to Tenn. Code Ann. § 28-3-110. (ECF No. 296, 6-7.) Without making any determination on the applicable statute of limitations for each counterclaim, the R. &. R. turned first to the issue of accrual and found that even if a three-year statute of limitations were to be applied under Tenn. Code Ann. § 28-3-105, none of the counterclaims would be time-barred. (ECF No. 329, 12.) The Court agrees.

Generally, a motion seeking dismissal under Fed. R. Civ. P. 12(b)(6) "is [] an inappropriate vehicle for dismissing a claim based upon the statute of limitations" unless the allegations in the complaint "affirmatively show that the claim is time-barred." *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012). *See Jones v. Bock*, 549 U.S. 199, 215, 127 S. Ct. 910, 920–21 (2007) ("If the allegations . . . show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim[.]"). The parties agree that under Tennessee law, the clock starts on this three-year statute of limitations, or in other words the claim accrues, when the plaintiff discovers or should have discovered his injury through the exercise of reasonable diligence. (ECF Nos. 296, 13 & 330, 12); *Chunn v. Se. Logistics, Inc.*, 794 F. App'x 475, 477 (6th Cir. 2019) (applying the three-year statute of limitations from Tenn. Code Ann. § 28-3-105 to civil claims of fraud) (citing *Redwing v. Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 458-59 (Tenn. 2012)). Stated differently, the discovery rule, as it is called, provides that "a cause of action accrues and the statute of limitations begins to run not only when the plaintiff has actual knowledge of a claim, but also when the plaintiff has actual knowledge of 'facts sufficient to put a reasonable person on notice that he [or she] has suffered an injury as a result of wrongful conduct.'" *Redwing*, 363 S.W.3d at 459 (citation omitted).

Determining the accrual date of Landlord's counterclaims is a two-step process. First, the Court must determine, based on the allegations in the Counter-Complaint, what injury Landlord

claims to have incurred and second, when the injury was discovered, or should have been discovered, through reasonable diligence. *Chunn*, 794 F. App'x at 477.

The R. & R. found that Landlord's alleged injury is that RJA, by signing the Estoppel Certificate, promised there was no breach of the lease on January 13, 2015, but then sued Landlord for breach based on conditions that existed when the Estoppel Certificate was signed. (ECF No. 329, 13.) Thus, according to the R. & R., the statute of limitations began running "when 50 North was aware that Raymond James believed the conditions of the building were a breach of the lease," a fact that could not have been discovered until May 5, 2017 when RJA sent its first Notice of Default letter. (*Id*.) Under this interpretation, the counterclaims could have been filed up until May 4, 2020 and still be within the three-year statute of limitations. By filing on December 19, 2019, the counterclaims were timely. RJA raises three objections to this finding, which the Court will address in turn.

### A. *The Basis of Landlord's Alleged Injuries*

RJA argues that Landlord's purported injuries "stem from the execution of the Estoppel Certificate in January 2015." (ECF No. 330, 4.) For support, RJA quotes a "laundry list" of allegations from the Counter-Complaint, pointing specifically to Landlord's claim that it was induced to purchase the Tower "in reliance on RJA's misrepresentations" and sustained damages as a result. (*Id*. at 6) (quoting ECF No. 286:79.) RJA is correct that Landlord references its purchase of the building several times throughout the Counter-Complaint. *See* e.g. (ECF No. 286, 69:35) ("RJA made various fraudulent misrepresentations in the Estoppel Certificate which Landlord relied upon in deciding to purchase the Building."); (*Id*. at 78:68) ("In the Estoppel Certificate, RJA intentionally misrepresented facts . . . that were material to the transaction involving Landlord's purchase of the Building from Parkway."). However, as the R. & R. found, Landlord's

9

allegations describe damages caused by the actions RJA took following its execution of the Estoppel Certificate, not damages caused by the execution itself or Landlord's purchase of the building. This subtle mischaracterization of the counterclaims pervades RJA's Objections and skews its arguments. A brief review of the Counter-Compliant is helpful here.

The Estoppel Certificate and the representations RJA made therein, are central to the counterclaims, particularly sections 5, 7, and 11, as quoted in the Counter-Complaint. (ECF No. 286, 62:19-20.) Summarizing theses sections, Landlord alleges RJA "expressly represented that Parkway was not in default and no event had occurred and no circumstances existed which, with the passage of time or the giving of notice by RJA, or both, would constitute such a default." (*Id*. at 63:21) (quoting the Estoppel Certificate (ECF No. 332-1, 3:5.)) According to Landlord, RJA also certified that the only obligations it was waiting for Parkway to satisfy, pertained to food service and access control in the building, but said nothing "about Parkway being in default under the Lease for failing to modernize the elevator system in the Building" or failing to address problems related to water leakages and other building maintenance. (*Id*.) Further, RJA expressly acknowledged in the Certificate that, as Buyer of the building and assignee of Parkway's interest in RJA's ongoing lease, Landlord "shall be entitled to, rely on the representations in this Certificate as being true and correct." (*Id*. at 63:20) (quoting (ECF No. 332-1, 4:11.))

The linchpin of Landlord's allegations, for purposes of identifying its purported injuries, is that the conditions of the building, which RJA describes in its First Amended Complaint, "are the same conditions that existed during Parkway's ownership of the Building" and "RJA was fully aware" of them when executing the Estoppel Certificate. (ECF No. 286, 65:28.) Describing the implications of RJA's actions, Landlord summarized its counterclaims and the nature of its alleged damages as follows: "RJA committed fraud by failing to disclose and/or concealing Parkway's

10

default and the capital improvement obligations that RJA is now claiming that Landlord has under the Lease. As a direct and proximate cause of RJA's fraud by silence and/or concealment, Landlord has incurred substantial damages as referenced below." (ECF No. 286, 79:77.) In the proceeding section on damages, Landlord claims that the injuries it incurred are the "result of the conduct complained of above." (ECF No. 286, 80:79.)

The Court finds, based its plain reading of the Counter-Complaint, that the damages Landlord claims do not stem from RJA's execution of the Estoppel Certificate. Rather, the Court adopts the R. & R.'s determination that Landlord's purported injuries were caused by RJA suing Landlord for failing to cure deficiencies it had certified did not exist.

### *B. Declarations of Building Employees and Landlord's Knowledge*

Next, RJA urges the Court to reject the Chief Magistrate Judge's conclusion that the counterclaims were timely because the R. & R. failed to consider the "claim-dispositive" declarations of Keith Jackson and Audrey Davis, who were employed by Parkway and then Landlord prior to and following Landlord's purchase of the building. (ECF Nos. 330, 7 & 340.) According to these declarations, which Landlord relied upon in its Counter-Complaint, Jackson and Davis knew about "ongoing issues with [the building's] elevators and water infiltration." (ECF No. 330, 9.) Particularly significant to RJA is Mr. Jackson's declaration that he was in "constant contact with Raymond James" in 2013 and 2014 regarding these ongoing issues with the building. (*Id.*) RJA asserts that Jackson and Davis' knowledge was imputed to Landlord, and thus, Landlord was aware of the building's issues in January 2015 before the Estoppel Certificate was executed and the building was purchased. (*Id.* at 10.) To RJA, the imputation of Jackson and Davis' knowledge means that Landlord "had at least constructive knowledge of various (alleged) issues with the Tower's condition" and thus, "necessarily" knew the Estoppel Certificate contained

11

misrepresentations and omissions. (*Id*.) Because Landlord knew about the alleged misrepresentations by January 2015 at the latest, RJA argues that is when Landlord's counterclaims began running. (*Id*.) As a result, the three-year statute of limitations had expired by the time Landlord filed its counterclaims in December 2019. (*Id*. at 10-11.) Given their dispositive effect, RJA contends that the R. & R. erred by failing to consider the employees' declarations. (*Id*. at 11.)

The Court disagrees and finds instead that the R. & R. addressed the very issue RJA raises in its argument for why the declarations are "claim dispositive"—that is, the R. & R. considered whether Landlord's knowledge of the misrepresentations contained in the Estoppel Certificate impacts the Court's ruling on RJA's Motion to Dismiss, and found that it does not. (ECF No. 329, 13-14.) Although the R. & R. did not analyze the declarations directly, it did consider RJA's argument that Landlord "was aware of the basis of its [counter]claims even before the estoppel certificate was signed because its pre-purchase due diligence revealed problems with the elevators." (ECF No. 13.) It was during this pre-purchase phase, in the months leading up to and including January 2015, that RJA asserts Landlord should have discovered—through Jackson and Davis' knowledge or otherwise—the building's issues and subsequent misrepresentations in the Certificate. However, as the R. & R. found, even if Landlord was aware that the Certificate contained misrepresentations, such knowledge would have no effect on the statute of limitations because, as discussed above, the counterclaims "are not about the actual condition of the building's elevators, but rather Raymond James's opinions about whether the condition of those elevators constituted breach of the lease." (*Id*. at 14.) Ultimately, as the R. & R. points out, if RJA is able to show that Landlord knew the Estoppel Certificate contained false representations at the time it was

12

executed, then Landlord's fraud claims will fail on the merits, not because they were time-barred. (*Id.*)

By focusing on the execution date, what conditions existed at the time of execution, and what Landlord knew at that time about the building's condition, RJA "improperly conflate[s] the statute of limitations with the merits of the claim." (*Id.* at 13) (quoting *Peabody Coal Co. v. Dir., Office of Workers' Comp. Programs, U.S. Dep't of Labor*, 718 F.3d 590, 594 (6th Cir. 2013)). The R. & R. addressed RJA's underlying argument related to Landlord's knowledge but did not directly analyze the declarations because it was unnecessary to do so when evaluating the timeliness of the counterclaims. RJA's argument fails to disrupt the Court's finding that the Counter-Complaint was timely.

### C.  Date of Accrual

RJA objects to the R. & R.'s determination that the earliest Landlord could have reasonably discovered the injuries it alleges in the Counter-Complaint was on May 5, 2017 when RJA sent its first notice of default. (ECF No. 330, 11.) RJA argues that the R. & R. "overlooks the fact that some of Landlord's alleged injuries . . . occurred when the Estoppel Certificate was executed in January 2015." (ECF No. 330, 11.) To RJA, Landlord's counterclaims were unduly delayed and violate the three-year statute of limitations because they were reasonably discoverable and thus, began to accrue in January 2015, but were not filed until almost four years later in December 2019. (*Id.* at 12; 16.) RJA's conclusion, however, relies on its previous arguments, which the Court has rejected. This is where RJA's mischaracterization of the Counter-Complaint comes full circle.

As discussed, identifying the accrual date requires the Court to determine what injury the counterclaims allege, and when those injuries should have been discovered through reasonable diligence. *Chunn*, 794 F. App'x at 477. Above, the Court found that Landlord's alleged injuries

13

stem from RJA's post-Certificate conduct—that is, RJA filing suit against Landlord for failing to cure deficiencies under the lease that it certified did not exist. The statute of limitations, therefore, began running when Landlord became aware that RJA might sue under the lease, having come to believe that the conditions of the building constituted breach. As the R. & R. found, the earliest date Landlord's awareness of that fact can be inferred from the face of the Counter-Complaint is May 5, 2017 when Landlord first received a notice from RJA accusing Landlord of being in default. To arrive at a January 2015 accrual date requires the Court to reach an entirely different conclusion about the nature of the counterclaims, which it declines to do for the reasons discussed above. The Court adopts the R. & R.'s determination that Landlord's counterclaims began to accrue, at the earliest, on May 5, 2017 and thus, even if a three-year statute of limitations were applied to each of the claims, as RJA contends, the entire Counter-Complaint was still timely filed on December 19, 2019.

### 3. Procedural Issues Created by Accepting the Counterclaims as Filed

RJA argues, without authority, that the Court will create a "procedural swamp" if it allows the counterclaims to go forward after dismissing its First Amended Complaint. (ECF No. 330, 16-17.) As Landlord points out, this is a natural outcome of cross litigation that does not create any kind of procedural anomaly for the Court to avoid. (ECF No. 332, 19.) Notwithstanding a jurisdictional challenge, which RJA does not raise, the fact that the First Amended Complaint has been dismissed and RJA is now facing these counterclaims has no effect on the Court's decision here. *See Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 835 (3d Cir. 2011) ("[T]he dismissal of the complaint 'will not preclude adjudication of a counterclaim over which the court has an independent basis of jurisdiction.'") (citation omitted).

## CONCLUSION

Upon *de novo* review, the Court hereby **ADOPTS** the Chief Magistrate Judge's Report and Recommendation and **DENIES** RJA's Motion to Dismiss Landlord's counterclaims. Further, Landlord's Motion for Leave to File Counterclaims is **DENIED** as **MOOT**. (ECF No. 297). The Court will consider RJA's Motion for Leave to File a Second Amended Complaint (ECF No. 324) in a separate order.

**IT IS SO ORDERED** this 13th day of November 2020.

*s/John T. Fowlkes, Jr.*
JOHN T. FOWLKES, JR.
United States District Judge