IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TENNESSEE, WESTERN DIVISION

| | |
|---|---|
| RAYMOND JAMES & ASSOCIATES, INC., | ) |
| Plaintiff/Counter-Defendant, | ) |
| v. | ) No. 2:18-cv-02104-JTF-tmp |
| 50 NORTH FRONT ST. TN, LLC, | ) |
| Defendant/Counter-Plaintiff. | ) |

**PLAINTIFF'S REPLY IN SUPPORT OF ITS OBJECTIONS TO THE MAGISTRATE'S REPORT AND RECOMMENDATION**

Plaintiff/Counter-Defendant, Raymond James & Associates, Inc. ("Raymond James"), through its undersigned counsel, respectfully submits this Reply in Support of its Objections to the Magistrate's Report and Recommendation (ECF 376) (the "Objections") and to address the Response (the "Response") of Defendant, 50 North Front St. TN, LLC ("50 North" or "Landlord") (ECF 382), filed on September 13, 2021.

**1. RAYMOND JAMES' OBJECTIONS DO NOT VIOLATE LOCAL RULE 7.3.**

Landlord's demand that Raymond James' Objections be "stricken" pursuant to Local Rule 7.3 has no merit for any of several reasons. First, Local Rule 7.3 is inapplicable on its face. Raymond James has not filed a "motion for revision" of an interlocutory order, and the prohibitions in Local Rule 7.3(c) thus simply do not apply. Next, the underlying motion that is before the Court—Raymond James' Motion to Amend and its proposed Second Amended Complaint (the "Motion to Amend")—contain a host of new facts and claims that the Court has not previously had the benefit of evaluating. These include the Lease's lengthy negotiating history (which highlights the operative ambiguity in the Lease (*see* ECF 324-2 at PageID 6448-56)), events that occurred after the filing of the prior complaint which clearly reflect Landlord's efforts to drive Raymond

James out of the building (e.g. deliberately switching off multiple elevators for over a year (*id.* at PageID 6462-65)) and the inclusion of specific claims for prima facie tort, nuisance, and fraud. Finally, the scope of Raymond James' arguments has been dictated in part by the case's unusual procedural posture. Raymond James' Motion to Amend was filed prior to the Court's ruling on Landlord's Motion to Dismiss and included breach of contract claims similar to the ones that the Court only later dismissed. The Magistrate thereafter addressed these claims in its R&R. (ECF 375). Given the potential for waiver, Raymond James felt compelled to raise at least its primary issues regarding the suggested dismissal of its contract claims. (Landlord has, in fact, attempted to claim "waiver" as to matters not explicitly raised in Raymond James' Opposition. *See* Response at PageID 7307, n. 3.) In short, Raymond James has at all times acted in good faith. Landlord's request to strike its Objections is not justified and, rather, is a transparent effort to distract the Court from the serious arguments supporting its contract claims made therein.

2. **RAYMOND JAMES HAS APPROPRIATELY PLED CLAIMS FOR TORT CLAIMS INCLUDING INTENTIONAL CONDUCT/PRIMA FACIE TORT.**

In its Response, Landlord studiously ignores that it has duties *beyond* those merely imposed by the parties' contract. It ignores that, in the absence of an applicable privilege, the law imposes a duty not to *intentionally* harm others. *See e.g. See Hutton v. Waters*, 179 S.W. 134 (Tenn. 1915). It also ignores the Court's treatment of this very issue in its prior Order (ECF 339), where this Court lists examples of intentional conduct which it indicated could be actionable independent of the duties imposed by any contract.[1] Instead, Landlord resorts to misdirection—arguing that the intentional violation of a *contract* is not in and of itself tortious. (PageID 7314). While this may be true, it is

---

[1] These included "willfully forcing a tenant out of its building", "intentionally disrupt[ing] elevator service" and "overlook[ing] a reasonably foreseeable risk to RJA, its employees, or guests." (*See* Order Granting Motion to Dismiss, ECF 339, PageID 6856). While Raymond James addressed the Court's observations here in significant detail in its Objections, (*see* ECF 378, at PageID7290-94), Landlord's Response completely ignored this argument.

2

very much beside the point—especially in the situation here where the same or additional duties are imposed by the law itself. This principal is well-stated in the case that Landlord quotes in its Response (PageID 7315), *Thomas & Assoc. v Metro Gov't of Nashville & Davidson Co*, 2003 WL 21302974 (Tenn. Ct. App. June 6, 2003), as follows,

> If a duty to conform to a standard exists between the parties *irrespective of contract*, and the defendant is negligent, the damaged plaintiff, generally speaking, may sue in tort. However, if the only source of duty between a particular plaintiff and defendant is their contract with each other, then a breach of that duty, without more, ordinarily will not support a negligence action.

*Thomas*, *6, (citations omitted) (emphasis added). Thus, the fact that there is a contract between the parties cannot be used as a shield to avoid duties imposed by law and Landlord cannot hide behind the parties' Lease to evade the duties it owed Raymond James in tort. The fact that some or all or all of Landlord's acts also violated the Lease is irrelevant to whether they are also actionable in tort.

Raymond James cites two Tennessee Supreme Court cases for the proposition that one has a duty not to willfully or intentionally harm another without cause. (*See* Objections at PageID 7271 *citing Large v. Dick*, 343 S.W.2d 693, 667 (Tenn. 1960) ("[a]t common law there was a cause of action whenever one person did damage to another willfully and intentionally, and without just cause or excuse") and *Hutton v. Waters*, 179 S.W. 134, 135 (Tenn. 1915) ("In short, if an act be hurtful to another, intentional, and without legal justification, it is malicious in the true legal sense . . . [and] therefore unlawful, and is actionable.")). In its Response, Landlord claims that these cases are inapplicable because, in those cases, there was "no contractual relationship between the parties." (*See* Response at PageID 7317). The Tennessee Supreme Court, however, nowhere imposed such a prerequisite and Landlord offers no reason why this precondition is necessary. As noted above, liability in contract and tort can run along parallel tracks. Moreover, the duty the Tennessee Supreme Court imposed in *Hutton* and *Large* was limited to preventing *intentional conduct*—something that the public policy of this State does not allow to be contractually disclaimed. There would thus appear

3

to be no reason for such a prerequisite.

Finally, Landlord's alleged acts fit squarely within the type of conduct the Tennessee Supreme Court addressed in these cases—a defendant's willingness to use its power over third parties to force the plaintiff either to bend to the defendant's will or to punish the plaintiff for its refusal to do so. *See e.g. Hutton* (defendant school president using his power over students and faculty to intentionally harm the business of plaintiff boarding house owner). Here, Raymond James has alleged that Landlord repeatedly utilized its ability to harm, frighten and inconvenience its employees/ guests in order to, among other things, drive it out of the building. (*See* Proposed Second Amended Complaint, ECF 324-2 at PageIDs 6474-79). Landlord's intentional interference with these relationships fits comfortably within the intentional tort recognized by these cases and its subsequent use by the Tennessee Supreme Court in *Trauma-Med of Am., Inc. v. Allstate Ins. Co*. 71 S.W. 3d 691, 698 (Tenn. 2002). In short, Raymond James' tort claims are not futile and it should be allowed to proceed under Count IV of its proposed Second Amended Complaint.

3. **LANDLORD MISINTERPERTS THE NUISANCE CASES CITED BY RAYMOND JAMES AND OVERSTATES THE SCOPE OF THE NUSIANCE DISCLAIMER.**

In its Response, Landlord argues that the presence of a contract (i.e. the Lease) automatically precludes any claim for nuisance. (*See* Response at PageIDs 7320-22). The two cases that Landlord cites, however, do not support this contention—and in fact do not even involve a claim for nuisance. For example, *Williams v. Suntrust Mortgage, Inc.* 2013 WL 1209623 (E.D. Tenn. Mar. 25, 2013) does not involve a nuisance claim and stands only for the (unremarkable) proposition that a plaintiff must sue in contract when it has failed to allege the defendant owed any duty beyond its "contractual duty." *Id.* at *4.

In its Objections, Raymond James cited several cases demonstrating that liability for nuisance can be imposed *independent* of a claim for breach of contract based upon the duties

imposed by the law of nuisance, itself. (*See* Objections at PageID 7290-94). Landlord's attempt to distinguish these cases is disingenuous. For example, Landlord purports to distinguish *Stoiber v. Honeychuck*, 101 Cal. App. 903 (Cal. Ct. App. 1980) on grounds that a later court described *Stoiber* as applicable only to "residential"—not "commercial"—leases. (*See* Response at PageID 7321, citing to *Butler-Rupp v. Lourdeaux*, 134 Cal App. 4th 1220 (Cal. Ct. App. 2005)). Landlord nowhere explains why this distinction has any significance. Moreover, *Butler-Rupp* is not a nuisance case and therefore did not address the question at issue here—whether the duties imposed by nuisance are independently actionable when the parties also have a lease. Indeed, the *Butler-Rupp* court cited and distinguished *Stoiber* for a wholly different reason—due to its award of damages for emotional distress within the context of a lease-related dispute, finding that such damages were available there only because *Stoiber* involved a residential (rather than a commercial lease). *See Butler-Rupp,* at 692-693 (*citing Stoiber* at 922-925). The "commercial"/ "residential" distinction thus has no bearing on the issues in this case, and Landlord's attempt to evade the applicability of the logic of *Stoiber* in the case at bar thus falls flat.

In addition, despite what Landlord alleges it its Response, the Lease's exculpatory clause for nuisance does not extend to apply to direct acts of interference by Landlord. (*See* Objections at PageID 7297). In relevant part, Section 25 of the Lease states as follows:

> Landlord agrees to make commercially reasonable efforts to protect Tenant from interference or disturbance **by third persons**, including other tenants; however, Landlord shall not be liable for **any such** interference, disturbance or breach, whether caused by another tenant or tenants or by Landlord or any other person, nor shall Tenant be relieved from any obligation under this Lease because of such interference, disturbance or breach.

*See* Lease at § 25, ECF 41-1 at PageID 32. (emphasis added). In its Response, Landlord focuses on the "by Landlord" language in this Section and claims this serves as a disclaimer of liability for even direct interference "by Landlord." *See* Response at PageID7322-23. Landlord's reasoning is

5

flawed because it ignores the import of the phrase "any such." This phrase limits the scope of the disclaimer in Section 25 solely to acts involving the "interferences and disturbances" by "third persons." It is well-settled under Tennessee law that all words in a contract are intended to have meaning and the phrase "any such" should not be ignored. The Lease's disclaimer of liability thus does not extend to instances where Landlord is acting directly—rather than on the behalf of a third persons. Since Raymond James alleges that Landlord acted on its own behalf, its nuisance claim has not been disclaimed.

## CONCLUSION

For the reasons discussed above as well as its Objections (ECF 378), Raymond James asks that the Court grant Raymond James' Motion to Amend in its entirety.

Respectfully submitted this 11th day of October, 2021.

**THE PROSSER LAW FIRM**

  /s/ Kyle Johnson

Niel Prosser (BPR No. 11647)
Rob Clapper (BPR No. 34180)
Kyle Johnson (BPR No. 36066)
5865 Ridgeway Center Parkway, Suite 300
Memphis, TN 38120
T:  (901) 820-4433
E:  np@prosserlaw.com
     rclapper@prosserlaw.com
     kjohnson@prosserlaw.com

- and –

**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC**

        /s/ John Branson

John Branson (BPR No. 10913)
Clinton Simpson (BPR No. 20284)
165 Madison Avenue, Suite 2000
Memphis, TN 38103
T: (901) 577-2323
E: jbranson@bakerdonelson.com
   csimpson@bakerdonelson.com


*Attorneys for Raymond James*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing document was filed using the Court's CM/ECF system on October 11, 2021, which will automatically send an electronic copy of the filing to all counsel of record in this case.

    /s/ Kyle Johnson