IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| RAYMOND JAMES & ASSOCIATES, INC., ) | |
| Plaintiff, ) | |
| v. ) | 18-cv-2104-JTF-tmp |
| 50 NORTH FRONT ST. TN, LLC, ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Before the court is a series of memoranda in support of monetary sanctions submitted by counsel for plaintiff Raymond James & Associates, Inc. ("Raymond James"). (ECF Nos. 347-48, 350, 362.) These memoranda follow an order imposing Rule 37 sanctions on defendant 50 North Front St. TN, LLC ("50 North"). (ECF No. 341.) Based on the following, it is recommended that Raymond James be awarded $242,262 in discovery sanctions from defendant 50 North.

### I.    PROPOSED FINDINGS OF FACT

On August 7, 2020, the undersigned entered an order granting in part and denying in part a request for sanctions in conjunction with two motions to compel, filed by Raymond James on March 11, 2019, and April 1, 2019. (ECF Nos. 189, 197, 341.) The Order imposed sanctions on 50 North under Federal Rule of Civil Procedure 37(b)(2) for failing to comply with several court orders that

preceded the motions to compel. (ECF Nos. 101, 172.) Specifically, the Order granted Raymond James's request to recover the cost of manually reviewing 283,030 documents that were produced by 50 North without having conducted a responsiveness review as directed by this court. (ECF No. 341.) So that the court could consider "whether all or only some of the expense should be paid by 50 North," the Order concluded by directing Raymond James to file a declaration "setting forth in detail the fees and expenses reasonably incurred as part of its review as well as a memorandum explaining why those expenses were necessary." (ECF No. 341.)

On September 4, 2020, counsel for Raymond James filed a memorandum explaining the necessity of its fees and expenses incurred in manually reviewing the documents produced by 50 North. (ECF No. 348.) Raymond James explained that, in conducting its responsiveness review, it first used targeted keywords to shrink the pool of documents to less than one-third of what it was originally, and then employed contract attorneys to manually review the subset of documents for responsiveness. (ECF No. 348 at 5.) Attached to the memorandum is (1) a declaration by Don Smith, a supervisor for Raymond James who works in the legal department; (2) a declaration by Effie Sahihi, an attorney for Legality; (3) an invoice and billing time sheet prepared by Legality and charged to Raymond James; and (4) a declaration by Nathaniel Prosser, trial counsel for Raymond James. (ECF No. 348.) In the memorandum,

Raymond James requested $241,334 in fees sorted into three categories: Legality's review, TrustPointe's services, and trial counsel's services. (ECF No. 348 at 2.) According to the memorandum, the cost of Legality's review totaled $146,273, the cost of TrustPointe's services totaled $47,286, and the cost of trial counsel's services totaled $47,775. (ECF No. 348 at 2.)

On November 3, 2020, 50 North responded to Raymond James's memorandum, arguing that, should this court deny Raymond James's motion to file a second amended complaint, a provision in the lease would shift any costs imposed on 50 North back to Raymond James, making sanctions superfluous. (ECF No. 357.) Additionally, 50 North argued (1) that it was unnecessary for Raymond James to manually review the documents because they were produced in a searchable format and, in any event, cheaper methods of reviewing the documents existed; (2) that it was unnecessary for Raymond James to store the nonresponsive documents and, in any event, cheaper alternatives existed to store the documents; (3) that the memorandum was deficient because it did not include an itemized billing statement for either TrustPointe or trial counsel; and (4) that it was unreasonable for Raymond James to request fees for attorneys who did not participate in the motion hearing. (ECF No. 357.) On November 19, 2020, Raymond James filed a reply to 50 North's response, amending the total requested fees to $242,317 and including itemized billing statements from TrustPointe and

- 3 -

trial counsel.[1] (ECF No. 362.) 50 North filed a supplemental
response on December 10, 2020, repeating its argument that
sanctions are barred by a fee-shifting provision in the lease and
that the requested fees were unnecessary and unreasonable. (ECF
No. 365.)

## II.  PROPOSED CONCLUSIONS OF LAW

### A.  Applicable Law

The Federal Rules of Civil Procedure grant district courts
the authority to impose sanctions for discovery violations and for
failing to comply with court orders. ECIMOS, LLC v. Nortek Glob.
HVAC, LLC, 736 F. App'x 577, 582 (6th Cir. 2018); see Fed. R. Civ.
P. 37(b). In addition to listing permissible sanctions, Rule 37(b)
provides that "the court must order the disobedient party, the
attorney advising that party, or both to pay the reasonable
expenses, including attorney's fees, caused by the failure, unless
the failure was substantially justified or other circumstances
make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). By
prior order, the court has already granted Raymond James's request
for "fees and expenses reasonably incurred as part of its review"
of the documents produced by 50 North. (ECF No. 341 at 7-8.) Thus,

_____

[1]In preparing its reply, Raymond James amended its fee calculation
for TrustPointe to $46,161 and for trial counsel to $49,828. (ECF
No. 362 at 4-5.) Upon review, the undersigned notes that these
amended requests increase Raymond James's cumulative fee request
by $928 and that, as a result, the total cumulative request should
actually be $242,262.

the primary question before the court is whether Raymond James's proposed fees and expenses are reasonable.

In order for a court to award attorney's fees, a party must "maintain billing time records that are sufficiently detailed to enable courts to review the reasonableness of the hours expended." Smith v. Serv. Master Corp., 592 F. App'x 363, 371 (6th Cir. 2014) (quoting Wooldridge v. Marlene Indus. Corp., 898 F.2d 1169, 1177 (6th Cir. 1990)). "The party seeking fees has 'the burden of providing for the court's perusal a particularized billing record.'" Id. (quoting Perotti v. Seiter, 935 F.2d 761, 764 (6th Cir. 1991)); see also Ohio Right to Life Soc'y., Inc. v. Ohio Elections Comm'n, 590 F. App'x 597, 603 (6th Cir. 2014) ("It is the responsibility of the party seeking attorneys' fees to document its entitlement to fees."). While documentation of expenses need not be exact, "the general subject matter should be identified." Imwalle v. Reliance Med. Prods., Inc., 515 F.3d 531, 553 (6th Cir. 2008) (quoting Cleveland Area Bd. of Realtors v. City of Euclid, 965 F. Supp. 1017, 1020 (N.D. Ohio 1997)). An attorney satisfies his or her burden for providing adequate documentation of expenses by providing the court with "itemized statements describing the subject matter, the attorney, the time allotment, and the charge for all work done on [the] case." Anderson v. Wilson, 357 F. Supp. 2d 991, 999 (E.D. Ky. 2005). Upon reviewing the billing records, "the Court should exclude from its calculation hours that are

'excessive, redundant, or otherwise unnecessary,'" and reduce the award accordingly. <u>Smith</u>, 592 F. App'x at 371 (citing <u>Hensley v. Eckhart</u>, 461 U.S. 424, 433 (1983)); <u>Cooper v. Shelby Cty.</u>, No. 07-2283-STA-cgc, 2010 WL 1050254, at *1 (W.D. Tenn. Mar. 22, 2010) (quoting <u>Hensley</u>, 461 U.S. at 433). Conclusory allegations by a sanctioned party "that the award was excessive and that . . . counsel employed poor billing judgment . . . do not suffice to establish that there was error." <u>Perotti v. Seiter</u>, 935 F.2d 761, 764 (6th Cir. 1991).

## B.    Fee-Shifting Provision

As a preliminary matter, 50 North argues that any award of monetary sanctions is inappropriate in light of Section 50 of the lease. (ECF No 40-1 at 51 § 50.) According to 50 North, this provision operates to shift any expenses imposed on it over to Raymond James. (ECF No. 339.) Raymond James, on the other hand, argues that the fee-shifting provision in the lease does not apply to sanctions issued by the court for a party's misconduct.

The court agrees with Raymond James that the fee-shifting provision does not apply to bar monetary sanctions imposed by a court. Section 50 of the lease provides that

> If Tenant fails to pay any Rent or other sum due under this Lease, or fails to perform an obligation of Tenant hereunder, and Landlord engages an attorney to collect such sum or enforce such obligations, then, in addition to such sums, Tenant shall also pay Landlord's reasonable attorneys' fees and other reasonable costs and expenses incurred in such engagement. If Landlord

and Tenant litigate any provision of this Lease or the subject matter thereof, the unsuccessful party will pay to the successful party all costs and expenses, including reasonable attorneys' fees and expenses and court costs, incurred by the successful party, including any cost incurred by the successful party on appeal; provided, however that a recovery of attorneys' fees by Landlord under this sentence shall include, but shall not duplicate, the recovery by Landlord of its reasonable attorneys' fees and other reasonable costs and expenses of collection permitted under the first sentence of this Section

(ECF No. 41-1 at 51 § 50.) While this fee-shifting provision purports to cover the successful party's costs and expenses, it does not cover discovery sanctions imposed by the court for that party's litigation misconduct. See Linde v. Arab Bank, PLC, 293 F.R.D. 138, 140 (E.D.N.Y. 2013) ("[W]hether or not claims are ultimately successful, a violator of discovery orders is not relieved of the monetary sanctions imposed for those violations."). Indeed, "[t]he role of a monetary sanction under Rule 37 is to compensate a party for unnecessarily expended attorneys' fees and expenses; it is not to reward the prevailing party in the suit." Id.; see Grange Mutual Cas. Co. v. Mack, 270 F. App'x 372, 378 (6th Cir. 2008) ("Discovery abusers must be sanctioned, because '[w]ithout adequate sanctions, the procedures for discovery would be ineffectual.'") (quoting 8A Wright, Miller & Marcus, Federal Practice and Procedure § 2281 (2d ed. 1994)). Consequently, Section 50 is immaterial to the issue of whether monetary sanctions can or should be imposed against 50 North. See

Applegate v. United States, 52 Fed. Cl. 751, 754, 766 (Fed. Cl. 2002) (holding that "fees associated with sanctioned conduct are *per se* not 'reasonable' and [are], therefore, unrecoverable" under a settlement agreement entitling plaintiffs to "reasonable attorneys' fees and costs").

To hold otherwise would effectively immunize a party who ultimately prevails from monetary sanctions due to their own litigation misconduct. See Burton Way Hotels, Ltd. v. Four Seasons Hotels Ltd., No. CV 11-303, 2015 WL 13081297, at *5 ("[I]t would be inequitable to compensate Four Seasons for fees that it incurred defending itself from the repercussions of its own sanctionable conduct, particularly when the Panel determined that its manner of defense was intentionally evasive and reprehensible."). In this case, on multiple occasions, this court ordered 50 North to conduct a responsiveness review prior to beginning its document production. See (ECF No. 101 at 2) (ordering 50 North to "conduct a reasonably diligent search (with the supervision of counsel), review those documents, [and] produce all responsive documents[.]"); (ECF No. 172 at 2) (ordering 50 North to "produce all responsive, non-privileged documents"); (ECF No. 341 at 4, 6) (observing that "[t]his court's orders were clear that 50 North had an obligation to review the documents it produced in response to the disputed requests for production" and that "50 North should have conducted a responsiveness review"). In granting in part

Raymond James's motion for sanctions, this court found that "instead of conducting a responsiveness review, 50 North ran the required email searches, conducted a privilege review, and then simply produced all of the remaining documents — whether responsive to Raymond James's requests or not" – in direct contravention of this court's prior orders. (ECF No. 341 at 2-3); see Mack, 270 F. App'x at 378 (affirming a district court's order of sanctions "both to punish [defendant] for his egregious conduct and to deter other litigants who might be tempted to make a mockery of the discovery process"). The undersigned finds that Section 50 of the lease does not bar the court from awarding attorney's fees to Raymond James under Rule 37.

## C.  Legality

Raymond James requests $146,273 in expenses for Legality's manual review of the document production. (ECF No. 348 at 7.) These expenses reflect charges for seventeen contract attorneys who each billed between $55 and $75 per hour.[2] (ECF Nos 348-2 at 2, 5.) In support of this request, Raymond James provides an invoice from Legality that details the total number of hours worked by each contract attorney, each contract attorney's billing rate, and a brief description of each time entry. (ECF No. 348-2 at 5-28.)

---

[2]Sahihi, Jamie Machamir, a Team Leader for Legality, and Robert M., an experienced contract attorney, each billed at a rate of $75 per hour. (ECF No. 348-2 at 5.) The remaining fourteen contract attorneys billed at a rate of $55 per hour. (ECF No. 348-2 at 5.)

Upon review, the court finds that the invoices sufficiently describe "the subject matter, the attorney, the time allotment, and the charge for all work" done by Legality in Raymond James's case. Anderson, 357 F. Supp. 2d at 999. As such, the issue is whether the Legality charges are reasonable. See Cooper, 2010 WL 1050254, at *1.

50 North first argues that the requested fees are unreasonable because Raymond James should have used a technology-aided review ("TAR") platform, rather than manually reviewing the documents, in order to reduce costs. 50 North relies on Federal Deposit Insurance Corp. v. Boggus, No. 2:13-cv-00162-WCO, 2015 WL 11457700 (N.D. Ga. May 13, 2015), for the proposition that it was not necessary to perform a manual responsiveness review because the documents were produced in a searchable format and thus compatible with a TAR program. Boggus is distinguishable from the present case. In that case, before document production had begun, the court held that the plaintiff was not required to perform a manual responsiveness review before making a document production. Id. at *2. Notably, the court found it "hard to fathom that the [plaintiff] [would] end up producing anything close to 150,000 documents" if it were to forgo conducting a pre-production manual responsiveness review.[3]

---

[3]Additionally, the Boggus court reasoned that "[t]he production . . . is presumed to have some underlying logic to the organization and structure of the production." Id. at *1. Based on examples of some of the documents produced by 50 North (all of which came just

Id. at *2. By contrast, in the instant case the court had ordered 50 North to conduct a pre-production responsiveness review, which it did not do. See (ECF Nos. 101, 172, 341.); see also Rothman v. Emory Univ., 123 F.3d 446, 455 (6th Cir. 1997) ("[B]ecause Rothman blatantly (and repeatedly) rebuffed his obligation to sort through the documents and produce only those responsive to Emory's request . . . we would easily find that the district court did not abuse its discretion in imposing sanctions under Federal Rules of Civil Procedure 26(g) and 37."). The fact that more efficient means of sorting through the documents existed is not dispositive. See Youngevity Int'l Corp. v. Smith, No. 16CV00704BTMJLB, 2017 WL 6541106, at *10 (S.D. Cal. Dec. 21, 2017) (a party "may not frustrate the spirit of the discovery rules by producing a flood of documents it never reviewed . . . and thus bury responsive documents among millions of produced pages"); Scott Hutchison Enters., Inc. v. Cranberry Pipeline Corp., 318 F.R.D. 44, 54 (S.D.W. Va. 2016) ("Such a tactic can bury relevant evidence and force the receiving party to expend considerable time and expense

---

from the first 100 documents reviewed), 50 North's production lacked organization and structure. See (ECF No. 341 at 3) (listing some of the more egregious examples of irrelevant produced documents, such as: "[e]mail regarding renovations to a tattoo parlor in Ohio;" "[a] newsletter from the United Talmudical Academy in Kiryas Joel, New York (written mostly in a foreign language);" "[e]mails regarding a McDonalds in Landlord's Hartford, Connecticut building;" and "[e]mail regarding a 'Heal-a-thon' in New Jersey[.]").

parsing through documents in order to glean information which may be relevant.").

In determining the issue before the court, the question is not simply whether Raymond James could have been more efficient in reviewing the produced documents (such as with a TAR platform), but whether it was reasonable for Raymond James to incur the expenses that it did. See In re Mercedes-Benz Emissions Lit., No. 2:16-cv-881 (KM) (ESK), 2020 WL 103975, at *1 (D.N.J. Jan. 9, 2020) ("While the case law has developed to the point that it is now black letter law that where the producing party wants to utilize TAR for document review, courts will permit it, no court has ordered a party to engage in TAR over the objection of that party." (internal citations and quotations omitted)). Indeed, 50 North was "better equipped than the court to identify and utilize the best process for producing their own ESI," yet 50 North neglected to perform any sort of responsiveness review when ordered to and instead produced hundreds of thousands of documents, more than ninety percent of which were not responsive to Raymond James's discovery requests. Winfield v. City of New York, 15-CV-05236 (LTS) (KHP), 2017 WL 5664852, at *9 (S.D.N.Y. Nov. 27, 2017). Furthermore, prior to beginning the manual review, Raymond James utilized search terms that shrank the pool of documents by two-

thirds.[4] (ECF No. 347 at 5.) It is too late for 50 North to assert that Raymond James should have sorted through the documents in its preferred manner, especially where Raymond James's chosen method for reviewing the documents was not unreasonable. See Youngevity Int'l Corp., 2017 WL 6541106, at *10; Scott Hutchison Enters., Inc., 318 F.R.D. at 54. The undersigned submits that Raymond James's request for $146,273 in expenses for hiring Legality to review the document production is reasonable.

**D.   TrustPointe**

Raymond James also requests that this court award it $46,161 in fees charged by TrustPointe. (ECF No. 362 at 4.) That total is comprised of expenses from three sources: $9,038 in technical support; $34,814 in data storage costs; and $2,310 in user fees to access the stored documents. (ECF No. 362 at 4.) In its reply, Raymond James attaches several invoices and billing statements charged by TrustPointe, along with a declaration by Raymond James's IT Documentation/Electronic Discovery Supervisor, Don Smith. (ECF No. 362-1.) To support its request for technical support expenses, Raymond James provides a billing statement describing every hour that Nick Klobier, the TrustPointe employee assigned to the Raymond James file, worked on helping the Legality attorneys review the

---

[4]According to Raymond James, these key word searches reduced the universe of documents from 283,030 to 90,753. (ECF No. 347 at 5.)

produced documents.[5] (ECF No. 362-1 at 6.) As for its request for
expenses to store the non-responsive documents (totaling 169
Gigabytes), Raymond James asserts that it was charged $15 per
gigabyte initially, though volume discounts brought this price
down to $10 per gigabyte on August 31, 2019, and ultimately $8 per
gigabyte by June 30, 2020. (ECF No. 362-1 at 8.) Lastly, regarding
user fees, Raymond James asserts that it was charged $70 per month
for each Legality attorney who had access to the stored documents.[6]
(ECF No. 362-1 at 10.) According to Raymond James, these expenses
were necessary to process, manage, and store the hundreds of
thousands of documents produced by 50 North.

    50 North argues that it should not be charged for Raymond
James's expenses for storing documents determined to be non-
responsive. This, essentially, boils down to an argument that
Raymond James should have disposed of information that 50 North

---

[5]Because Raymond James employs TrustPointe for e-discovery matters
distinct from this litigation and "its invoices not only include
costs [associated with 50 North's document production], but also
other matters that are independent of its work [regarding the
document production]," the actual invoices are redacted to omit
unrelated information. (ECF Nos. 348-1 at 2; 362-1 at 4.) To make
the invoices clear and aid in understanding what expenses Raymond
James is seeking to recover, Raymond James provided charts
summarizing the three categories of expenses within the request.
(ECF No. 362-1 at 2-3.)

[6]In February 2019, Raymond James paid for only one TrustPointe
login. In March 2019, Raymond James paid for all seventeen Legality
attorneys to have a TrustPointe login. In April 2019, Raymond James
paid for fifteen of Legality's attorneys to have a TrustPointe
login. (ECF No. 362-1 at 10.)

produced in discovery, but that would not have been produced had 50 North complied with the court's order. It is reasonable for a party to store documents produced in discovery that it considers to be irrelevant while a responsiveness review is ongoing. It is also reasonable for a party to continue storing non-responsive documents while litigation remains pending regarding the very issue of whether the production of those documents was reasonable. Therefore, the undersigned submits that Raymond James should be awarded the $34,814 it spent in electronic storage costs.

Alternatively, 50 North argues that Raymond James could have chosen a cheaper method for storing the non-responsive documents. 50 North points to three different storage options that could have provided the same services as TrustPointe at a lower rate: Nearline, Offline, and Cold Storage. (ECF No. 365-1 at 4.) 50 North, however, does not explain how much cheaper these alternatives would have been or recommend a reduction in fees to make Raymond James's request more reasonable. A party opposing sanctions is required to "cite the court to specific instances of abuse to justify the requested reduction." LaQuinta Corp. v. Heartland Props., LLC, No. 3:05CV-328-S, 2009 WL 10728149, at *7 (W.D. Ky. Apr. 30, 2009). The undersigned submits that this is not a basis for a reduction in Raymond James's fee award.

As for the other two categories of expenses (technical support and user login fees), the undersigned submits that Raymond James's

- 15 -

requests are reasonable. Raymond James provides copies of
Klobier's billing invoices from February 20, 2019, through April
25, 2019, that describe which days he worked on the Raymond James
litigation, how many hours he worked each day, and what work was
done on each day. (ECF No. 362-1.) This is more than sufficient to
"identify the general subject matter" of each time expenditure.
Smith, 592 F. App'x at 371 (quoting Hensley, 461 U.S. at 437 n.12).
In light of the undersigned's finding that it was reasonable under
the circumstances for Raymond James to manually conduct a
responsiveness review, 50 North's argument that these expenses –
along with the user fees – are unreasonable (because the manual
review itself was unnecessary) is not well-taken. Thus, the
undersigned recommends that Raymond James be awarded $46,161 in
expenses related to Trustpointe's services.

**E.    Attorney's Fees**

Finally, Raymond James requests $49,828 in expenses for its
trial counsel in overseeing the manual review and in litigating
the two motions for sanctions that led to this court's order
awarding sanctions. (ECF No. 362 at 5.) In support, Raymond James
provides a declaration by Nathaniel Prosser, lead trial counsel
for Raymond James who is overseeing the litigation, and a
comprehensive billing statement describing each time entry. (ECF
No. 362-2.) In addition to Prosser (67.9 hours), four other
attorneys billed hours related to the manual review: Rob Clapper

- 16 -

(44.6 hours), Gary Peebles (34.2 hours), Kyle Johnson (37.9 hours),
and Brad Jacobs (4.3 hours).[7] (ECF No. 348-3.) 50 North argues that
because only Prosser and Peebles argued the motions for sanctions,
it would be excessive for Raymond James to be awarded expenses for
all five lawyers. Additionally, 50 North argues that the proposed
expenses appear to include attorney's fees that would have been
incurred regardless of whether 50 North complied with this court's
orders and that were unrelated to the order for sanctions.

Specifically, 50 North points to two billing entries that
appear to be unrelated to the order for sanctions: (1) an entry on
February 20, 2019, by Prosser that reads: "Work on issues raised
by Def's discovery dump yesterday/ conf. with GP re same/ work on
review of Colliers documents, including search terms and conf.

---

[7]The declaration divides the requested attorney's fees into two
categories: hours spent reviewing the document production and
hours spent preparing the motions for sanctions related to the
document production. (ECF No. 347-3 at 3-4.) Prosser billed 26
hours reviewing the production and 41.9 hours preparing the
motions. (ECF No. 347-3 at 3-4.) Clapper billed 27.8 hours
reviewing the production and 16.8 hours preparing the motions.
(ECF No. 347-3 at 3-4.) Peebles billed 3.7 hours reviewing the
production and 30.5 hours preparing the motions. (ECF No. 347-3 at
3-4.) Johnson billed 22.9 hours reviewing the production and 15
hours preparing the motions. (ECF No. 347-3 at 3-4.) Jacobs billed
all 4.3 of his hours preparing the motions. (ECF No. 347-3 at 3-
4.)

Prosser's billing rate is $310 per hour. (ECF No. 347-3 at 4.)
Clapper's billing rate is $235 per hour. (ECF No. 347-3 at 4-5.)
Johnson's billing rate is $195 per hour. (ECF No. 347-3 at 5.)
Jacob's billing rate is $185 per hour. (ECF No. 347-3 at 5.)
Peebles's billing rate is $235 per hour. (ECF No. 347-3 at 5.)

call with Sarah and Cara at BP&J;" and (2) an entry on March 12, 2019, by Johnson that reads: "email to Nick K. at trustpoint re uploading of documents for 180,000 more pages of documents i.e. Document Dump, modifying searches, and uploading of new documents (.3); confer with NP on latest Document Dump and parameters of same - briefly review re purchase and sale agreement (.6)." (ECF No. 362-2 at 7, 9.) 50 North is correct that neither reviewing documents produced by a third-party (Colliers) nor reviewing a purchase and sale agreement are germane to Raymond James's manual review of the document production at issue. However, on review of the billing statement, the court finds that both entries have already been significantly reduced to reflect the time that was spent related to the manual review. In particular, Raymond James is only requesting expenses for 3 out of the 6.2 hours billed in the February 20 entry and for 0.9 out of the 8.5 hours billed in the March 12 entry.[8] (ECF No. 362-2 at 7, 9.) "[B]lock billing is

---

[8]In his declaration, Prosser explains that he did this for many of the billing entries, as not all the time billed to Raymond James was attributable to the document production. Indeed, Exhibit 1 to his declaration, which is a chart explaining the billing entries that Raymond James relies on in its request for fees, includes separate columns for "Total Time Spend on Work Related to the Document Dump" and for "Time Reflected in Attorney's Entire Time Entry." (ECF No. 362-2.)

Prosser also explains in his declaration that he imposed a self-reduction on many of the billing entries as a "courtesy discount." (ECF No. 362-2 at 3-4.) This courtesy discount reduced the number of hours billed to Raymond James for many of Prosser's, Clapper's, Johnson's, and Jacobs's (the attorneys employed by The

not *per se* prohibited." <u>Howe v. City of Akron</u>, 705 F. App'x 376, 383 (6th Cir. 2017). "[S]o long as the description of the work performed is adequate, blockbilling can be sufficient." <u>Smith</u>, 592 F. App'x at 371. While these two entries are problematic in that they include expenses that were not "caused by the failure" of 50 North to follow court orders, the undersigned submits that Raymond James's self-imposed reduction is sufficient to remedy this issue. Further, the undersigned notes that none of the other billing entries appear to include expenses that are unrelated to the manual review.

---

Prosser Law Firm, PLC) billing entries by percentages ranging from ten to fifty percent. Exhibit 1 to Prosser's declaration lists the total amount of time reflected in the attorney's actual time entry, the number of hours that Prosser discounted from the actual time entry, the corresponding percentage that the actual time entry was reduced by, and the final number of hours billed to Raymond James for the time entry after the courtesy of discount was applied. (ECF No. 362-2 at 6-12.) Prosser also explains that, after calculating the percentage discount for the attorney's actual billing entry, he then applied the same percentage discount to the hours billed that were spent on work related to the document dump. (ECF No. 362-2 at 4.) Because Peebles is employed by Burch Porter, & Johnson PLLC, Peebles's billing entries were not subject to the courtesy discount.

Further, after applying the courtesy discount, Prosser explains in his declaration that he reduced Raymond James's request for time entries related to preparing the motion to compel by fifty percent because "only approximately half of the Motion related to the Document Dump." (ECF No. 362-2 at 4.) Similarly, he reduced the time spent preparing for and arguing the motions for sanctions by sixty-six percent because "those Motions only took up roughly a third of the hearing that day." (ECF No. 362-2 at 4.)

As for 50 North's argument that Raymond James is requesting expenses for multiple lawyers who did not participate in the hearings, "[m]ultiple-lawyer litigation is common and not inherently unreasonable." The Ne. Ohio Coal. for the Homeless v. Husted, 831 F.3d 686, 704 (6th Cir. 2016). Multiple-lawyer litigation, though, becomes an issue when a case is "overstaffed" such that the billing statement does not reflect those hours that are "reasonably expended." Id. (quoting Hensley, 461 U.S. at 434). Here, beyond multiple attorneys working on the case, there is no indication that Raymond James overstaffed this litigation as it relates to discovery, document review, and the sanctions motion. Trial counsel was tasked with arguing motions to compel and for sanctions, all while supervising a manual review of nearly 300,000 documents. The undersigned finds that it was not unreasonable for Raymond James to employ multiple lawyers in connection with litigating the motions for sanctions.

50 North also argues that Prosser included expenses for attorneys reviewing responsive documents and thus would have been incurred regardless of any misconduct. 50 North, however, does not identify which entries are at issue. Upon reviewing the billing entries, the undersigned does not see a basis for reducing the fee award on this ground. As such, the undersigned submits that Raymond James should receive $49,828 in attorney's fees for trial counsel's work.

## III. RECOMMENDATION

For the reasons above, it is recommended that Raymond James be awarded $242,262 in fees and expenses to be paid by 50 North.

Respectfully submitted,

s/ Tu M. Pham
TU M. PHAM
Chief United States Magistrate Judge

February 8, 2022
Date

### NOTICE

**WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDED DISPOSITION, ANY PARTY MAY SERVE AND FILE SPECIFIC WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS. ANY PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(2); L.R. 72.1(g)(2). FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.**