# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

RAYMOND JAMES & ASSOCIATES, INC.,

    Plaintiff/Counter-Defendant,

v.                                              CASE NO. 2:18-cv-02104-JTF-tmp

50 NORTH FRONT ST. TN, LLC,

    Defendant/Counter-Plaintiff.

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO STRIKE ALLEGATIONS AND ATTACHED EXHIBITS FROM PLAINTIFF'S SECOND AMENDED COMPLAINT

COMES NOW the Defendant/Counter-Plaintiff, 50 North Front St. TN, LLC ("Landlord"), by and through counsel, and pursuant to Rules 12(b)(6) and 12(f) of the Federal Rules of Civil Procedure and other applicable law, respectfully submits this Memorandum of Law in Support of its Motion to Dismiss or, in the Alternative, Motion to Strike Allegations and Attached Exhibits from Plaintiff's Second Amended Complaint, stating the following in support thereof:

### FACTUAL BACKGROUND/PROCEDURAL HISTORY

1. On May 29, 2018, the Plaintiff/Counter-Defendant, Raymond James & Associates, Inc. ("RJA"), filed its First Amended Complaint ("FAC") in this cause. (ECF No. 41-1). In the FAC, RJA asserted claims against Landlord for (i) breach of lease; (ii) declaratory judgment; (iii) gross negligence, willful and intentional conduct; and (iv) injunctive relief and specific performance.

2. On June 29, 2018, Landlord filed a Motion to Dismiss RJA's FAC pursuant to Fed. R. Civ. P. 12(b)(6). (ECF No. 54). The Court referred Landlord's Motion to Dismiss to the Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. §636. (ECF No. 284).

3. The Magistrate Judge filed his Report and Recommendation on Landlord's Motion to Dismiss on February 20, 2020 wherein the Magistrate Judge recommended that the Court grant Landlord's Motion to Dismiss in its entirety. (ECF No. 301). RJA filed Objections to the Magistrate Judge's Report and Recommendation. (ECF No. 310). Landlord filed a Response to those Objections (ECF No. 317) and RJA subsequently filed a Reply. (ECF No. 321).

4. After the Magistrate Judge filed his aforementioned Report and Recommendation, RJA filed a Motion for Leave to File a Second Amended Complaint on May 15, 2020. (ECF No. 324).

5. On July 30, 2020, the Court entered an Order Adopting the Magistrate Judge's Report and Recommendation and Granting Landlord's Motion to Dismiss. (ECF No. 339). Pursuant to the Order, Landlord's Motion to Dismiss RJA's FAC was granted in its entirety. (ECF No. 339). However, in the Order, the Court noted that it would consider RJA's Motion for Leave to File a SAC in a separate Order. (ECF No. 339, PageID 6858).

6. RJA's Motion for Leave to File a SAC was referred to the Magistrate Judge for a Report and Recommendation. (ECF No. 361). The Magistrate Judge filed his Report and Recommendation on the subject Motion on July 30, 2021. (ECF No. 375). In the subject Report and Recommendation, the Magistrate Judge recommended that RJA's Motion be granted in part and denied in part. (Id.) The Magistrate Judge recommended that RJA's request to file a SAC be denied with respect to RJA's claims for (i) breach of lease/right of quiet enjoyment; (ii) nuisance; (iii) gross negligence, willful and intentional conduct/prima facie tort; and (iv) declaratory relief.

(ECF No. 375). In its proposed SAC, RJA included allegations to "pierce the corporate veil" and add Jacob Sofer ("Sofer") as a defendant to the lawsuit for purposes of RJA's claims for (i) nuisance and (ii) gross negligence, willful and intentional conduct/prima facie tort. (ECF No. 324-2). In his Report and Recommendation, the Magistrate Judge recommended that RJA's request to add Sofer as a defendant to the lawsuit be denied. (ECF No. 375). In his Report and Recommendation, the Magistrate Judge recommended that RJA should only be granted leave to file a SAC to assert its proposed discrete[1] claim for fraud which related to certain operating expenses for the leased premises. (Id.).

7.   On August 13, 2021, RJA filed Objections to the Magistrate Judge's Report and Recommendation concerning RJA's Motion for Leave to File a SAC. (ECF No. 375). On September 13, 2021, Landlord filed a Response in Opposition to Plaintiff's Objections. (ECF No. 382). On October 11, 2021, RJA filed a Reply to Landlord's Response. (ECF No. 388).

8.   On January 28, 2022, the Court entered an Order Adopting the Magistrate Judge's Report and Recommendation and Granting in Part and Denying in Part RJA's Motion for Leave to File a SAC. (ECF No. 391). Pursuant to this Order, the Court expressly denied RJA's request to file a SAC concerning the proposed claims for (i) breach of lease/right of quiet enjoyment; (ii) nuisance; (iii) gross negligence, willful and intentional conduct/prima facie tort; and (iv) declaratory relief. (ECF No. 391). The Court also denied RJA's request to add Sofer as a defendant to the case for purposes of RJA's proposed claims for (i) nuisance and (ii) gross negligence, willful and intentional conduct/prima facie tort. (ECF No. 391). The Court's Order only provided RJA

---

[1] In the Brief that RJA filed in support of its Motion to File a SAC, RJA expressly characterized the fraud claim as a discrete cause of action. (See ECF No. 324-1, PageID 6435). Thus, RJA acknowledged that its fraud claim stood part from its other claims and the factual allegations supporting the fraud claim were confined to paragraphs 75-80 of the proposed SAC.

3

with leave to file a SAC "**to the extent the SAC alleges a claim for fraud**" and denied RJA's SAC "**in all other respects**." (ECF No. 391) (emphasis added). RJA's fraud claim was based on and limited to allegations that Landlord had fraudulently assessed certain operating expenses to RJA and had allegedly failed to credit RJA for a pro-rata share of certain property tax savings that Landlord received for 2017 and 2018. (See ECF 324-2, PageID 6482-6485, PageID 6489-6491).

9.  On February 10, 2022, RJA filed a SAC in this cause. (ECF No. 393). The SAC included eighty-one (81) paragraphs of factual allegations spanning over thirty-five (35) pages in length. (ECF No. 393, PageID 7414-7451). The SAC also attached twenty-eight (28) separate exhibits that were referenced in the eighty-one (81) paragraphs of factual allegations. (See ECF No. 391-1, PageID 7457 to ECF No. 393-28, PageID 7664). The overwhelming majority of the eighty-one (81) paragraphs of factual allegations and the attached exhibits referenced in these paragraphs have nothing to do with the limited fraud claim that RJA was authorized to assert in the SAC. Rather, the overwhelming majority of the allegations and the exhibits referenced therein pertain to the causes of action that RJA was denied leave to assert in a SAC. Landlord respectfully submits that all of the factual allegations in the SAC and the exhibits thereto, which pertain to the disallowed claims, were included in the SAC without proper leave of Court and in contravention of the Court's July 28, 2022 Order. (ECF No. 391).

Landlord respectfully submits that the only remaining claim alleged by RJA, fraud, should be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6), Pleading in the alternative, if RJA's fraud claim is not dismissed in its entirety, Landlord submits that all of the above-referenced allegations and exhibits should be stricken from the SAC because (i) the subject allegations and exhibits exceed the scope of the leave granted by the Court's January 28, 2022 Order (ECF 391) which only allowed RJA to file a SAC to the extent the SAC alleges a claim for fraud and denied

4

RJA's SAC in all other respects and (ii) the subject allegations and exhibits are immaterial and impertinent to the discrete fraud claim that RJA was allowed to assert in a SAC.

## STANDARDS OF REVIEW

### A.    MOTION TO DISMISS

Fed. R. Civ. P. 12(b)(6) authorizes the district courts to dismiss any complaint that fails "'to state a claim upon which relief can be granted.'" QQC, Inc. v. Hewlett-Packard Co., 258 F. Supp. 2d 718, 721 (E.D. Mich. 2003) (citing Fed. R. Civ. P. 12(b)(6)). "The purpose of Rule 12(b)(6) is to permit a defendant to test whether, as a matter of law, the plaintiff is entitled to relief even if everything alleged in the complaint is true." Doe v. Univ. of the South, 687 F. Supp. 2d 744, 750 (E.D. Tenn. 2009). A motion to dismiss tests "the plaintiff's cause of action as stated in the complaint;" it does not challenge the factual allegations of the complaint. Lambert v. Hartman, 517 F.3d 433, 439 (6th Cir. 2008). In considering a Rule 12(b)(6) motion to dismiss, the Court must accept the well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. Lambert, 517 F.3d at 439; and Total Benefits Planning Agency, Inc. v. Anthem Blue Cross and Blue Shield, 552 F.3d 430, 434 (6th Cir. 2008).

The Court is not required to accept the truth of legal conclusions or "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Ashcroft v. Iqbal, 556 U.S. 662, 678 (U.S. 2009). A complaint setting forth allegations that constitute nothing more than "'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice under Fed. R. Civ. P. 8. Id. To survive a motion to dismiss, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The plausibility standard requires more than a sheer possibility that a defendant has acted unlawfully. Iqbal, 556 U.S. at 662. "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. If the factual allegations fail to "present 'enough facts to state a claim to relief that is plausible on its face,'" the Court should grant the motion to dismiss. Id. at 570.

### B. MOTION TO STRIKE

Fed. R. Civ. P. 12(f) expressly authorizes a Court to strike from a pleading any "insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." See Fed. R. Civ. P. 12(f). Rule 12(f) is "designed to reinforce the requirement in Rule 8 ... that pleadings be simple, concise and direct." Tray, Inc. v. Devon Int'l Grp., Inc., Civil Action No. 21-1254, 2021 U.S. Dist. LEXIS 84016, at *29 (E.D. Pa. May 3, 2021) (quoting United States v. Educ. Mgmt. Corp., 871 F. Supp. 2d 433, 460 (W.D. Pa. 2012). Matters are "immaterial" if they have "no essential or important relationship to the claim for relief or the defenses being pleaded" and "impertinent" if they "do not pertain, and are not necessary, to the issues in question." Fantasy, Inc. v. Fogerty, 984 F. 2d 1524, 1527 (9th Cir. 1993), rev'd on other grounds, 510 U.S. 517, 114 S. Ct. 1023, 127 L. Ed. 2d 455 (1994).

While motions to strike are generally disfavored, Federal Courts have recognized that allegations in an amended complaint that pertain to previously-dismissed claims may be properly stricken pursuant to Rule 12(f) as being immaterial or impertinent. See Paul M. Harrod Co. v. A.B. Dick Co., 194 F. Supp. 502 (N.D. Ohio, 1961) (holding allegations relating to a dismissed claim were immaterial, prejudicial to defendant and would be stricken even though the plaintiff tried to contend that the subject allegations provided necessary background); CogniTest Corp. v. Riverside Publ'g Co., 94 C 4741, 1995 U.S. Dist. LEXIS 8721 (N.D. Ill. June 22, 1995) (striking paragraphs from complaint that pertained to breach of contract claims that had been previously dismissed

because the subject allegations were irrelevant, immaterial and moot.); Penderson v. Greenpoint Mortg. Funding Inc., No. 2:11-cv-00642-KJM-EFB, 2013 U.S. Dist. LEXIS 109111 (E.D. Cal. Aug. 2, 2013) (striking allegations from a complaint as immaterial because they pertained to a previously dismissed claim).

In Small v. RMK High Income Fund, Inc., (In Re: Regions Morgan Keegan Secs.), No. 2:09-2009-SHM-V, 2015 U.S. Dist. LEXIS 18048 (W.D. Tenn. July 23, 2015), the defendants moved to strike the plaintiff's second amended complaint because it allegedly contained redundant, immaterial, impertinent and/or scandalous material. Id. at *13-14. In addressing the matter, the Honorable Samuel H. Mays, Jr. of the United States District Court for the Western District of Tennessee ruled as follows:

> On August 4, 2014, the Court dismissed several of Small's claims and authorized the filing of an amended complaint to pursue claims under Sections 11 and 15. Although Small excised the dismissed claims, he left allegations supporting them in the Second Amended Complaint. Movants contend that the supporting allegations are immaterial and that, because the allegations are numerous and spread across more than 131 pages, sifting through them to address the operative allegations would be unduly burdensome.
>
> Movants' argument is well taken. By leaving vestigial allegations across more than 130 pages, Small's shortcut in amending the Complaint would strike a heavy and undue burden on the Movants. Striking pleadings, however, is a "drastic remedy to be resorted to only when required for the purpose of justice", and that remedy would be inappropriate here. Brown v. 201, F. 3d. at 822. The better course is to deny leave to amend by filing a Second Amended Complaint in its present form. The Motion for Leave is DENIED.

Id. at *14.

While Judge Mays denied the movants' motion to strike in Small v. RMK High Income Fund, this was because the immaterial allegations could be removed by denying the plaintiff leave to file an amended complaint with the immaterial allegations. However, this remedy is not available in the case at bar because RJA already has filed a SAC with over thirty-three (33) pages

of exhaustive factual allegations that are immaterial and impertinent to the discrete fraud claim that RJA was allowed to assert in a SAC.

## LEGAL ARGUMENTS

### A.   MOTION TO DISMISS

Under Tennessee law, there are four elements for a prima facie fraud claim: "(1) intentional misrepresentation of a material fact; (2) knowledge that the representation was false — that the misrepresentation was made knowingly or recklessly or without belief or regard for its truth; (3) reasonable reliance on the misrepresentation by the plaintiff and resulting damages; (4) 'that the misrepresentation relates to an existing or past fact[.]'" Dog House Invs., LLC v. Teal Props., 448 S.W.3d 905, 916 (Tenn. Ct. App. 2014) (quoting Stacks v. Saunders, 812 S.W.2d 587, 592 (Tenn. Ct. App. 1990)).

In its SAC, RJA falsely accuses Landlord of fraud in connection with certain billing matters, namely: (1) Landlord's failure to remit credits to RJA in connection with a reduction in the property taxes for the Building; and (2) billing RJA for expenses that RJA erroneously claims to be non-chargeable expenses under the Lease. Even assuming all of RJA's factual allegations are true, the legal conclusions and terms of the Lease, as shown below, demonstrate that Landlord acted in accordance with the Lease. The Lease does not entitle RJA to any credit relating to the property taxes and Landlord rightfully billed Operating Expenses to RJA pursuant to the Lease.

The Base Rent due under the Lease includes the costs that Landlord incurs in operating the Building during a fixed "Base Year"[2] such as Operating Expenses and Taxes. For years subsequent to the Base Year, the Lease calls for RJA to pay its pro rata share of any increase in either Operating Expenses or Taxes that are in excess of the Base Operating Expenses or Base Taxes. (See Section 7

---

[2] Pursuant to the Lease, the Base Year is 2016. (See Lease, ECF 393-4, PageID 7483).

of Lease, ECF 393-4, PageID 7485). In the event Landlord is successful in reducing Operating Expenses or Taxes to an amount less than it was during the Base Year, the Lease does not provide RJA with any right to a credit for those savings. (See Lease generally, ECF 393-4).

At the Raymond James Tower, Operating Expenses typically increased year over year, while Taxes decreased following the Base Year. Section 6 of the Lease addresses RJA's rent obligation under the Lease and provides, in pertinent part, as follows:

> **6. Rent.** Base Rent as of the Reduction Date includes a component attributable to Operating Expenses (defined below) for the Base Year as specified in Section 1 ("Base Operating Expenses"), and to Taxes (defined below) for the Base Year ("Base Taxes") ... if Operating Expenses during any Operating Period, as reasonably estimated by Landlord, exceed Base Operating Expenses, Tenant shall pay to Landlord for such Operating Period an amount equal to the product of (a) the difference between Operating Expenses for such Operating Period and the Base Operating Expenses, multiplied by (b) the Pro-rata Share; and if Taxes during any Operating Period, as estimated by Landlord, exceed Base Taxes, Tenant shall pay to Landlord for such Operating Period an amount equal to the product of (i) the difference between Taxes for such Operating Period and the Base Taxes, multiplied by (ii) the Pro-rata Share (the sum of (such amounts referred to herein as "Additional Rent"); such Additional Rent shall be paid in monthly installments of one twelfth (1/12) of the Additional Rent owed from Tenant for such Operating Period, with such installments being due at the same time and in the same manner as Tenant's monthly payments of Base Rent. (See Lease, ECF 393-4, PageID 7484-7485.)

Section 7 of the Lease clearly defines everything that is included in Operating Expenses as follows:

> (a) <u>Definition of Operating Expenses.</u> Subject to the exclusions set forth in Section 7(b) below, "Operating Expenses," shall mean all expenses, costs and disbursements of every kind and nature relating to or incurred or paid during any Operating Period in connection with the operation, repair and maintenance of the Project, including, but not limited to, wages and salaries of all employees engaged in the operation, maintenance or security of the Project, whether billed directly or through a common or master association, including taxes, insurance and benefits relating thereto; the cost of all labor, supplies, equipment, materials and tools used in the operation and maintenance of the Project; management fees; the cost of all legal and accounting expenses incurred in connection with the management and operation of the Project; the cost of all utilities for the Project, including, but not

9

limited to, the cost of HVAC, water, sewer, waste disposal, gas, and electricity; the cost of all maintenance and service agreements for the Project, including but not limited to, security service, window cleaning, elevator maintenance and janitorial service; the cost of all insurance relating to the Project and Landlord's personal property used in connection therewith, plus the cost of all deductible payments made by Landlord in connection therewith; the cost of all license and permit fees; the cost of repairs, replacements, refurbishing, restoration and general maintenance; a reasonable amortization charge on account of any capital expenditure incurred in an effort (i) to comply with any Laws, except as and to the extent specifically excluded below, or (ii) to reduce the Operating Expenses of the Project; costs billed to the Building, Project or Landlord through a declaration or any cross-easement agreement which encumbers the Project, or any declaration of condominium or other like instrument that encumbers any or all of the improvements on the Project; costs or assessments required to be paid by Landlord in connection with any community improvement district; and, all other items constituting operating and maintenance costs in connection with the Project according to generally accepted accounting principles. Landlord and Tenant intend that the increase in Operating Expenses paid by Tenant under this Lease reimburse Landlord for Tenant's Pro-rata Share of any actual increase in costs incurred by Landlord over Base Year Operating Expenses but not provide a profit to Landlord. In no event shall the increase in Operating Expenses per rentable square foot over Base Year Operating Expenses per rentable square foot, as determined by Landlord for any Operating Period, multiplied by the rentable area of the Building, exceed one hundred percent (100%) of the actual increase in Operating Expenses over Base Year Operating Expenses incurred by Landlord for such Operating Period. (See Lease, ECF 393-4, PageID 7485).

Section 7(d) of the Lease clearly defines everything that is included in Taxes as follows:

(d) Definition of Taxes. "**Taxes**," as used herein, means all ad valorem taxes, personal property taxes, and all other taxes, assessments, and all other similar charges, if any, which are levied, assessed, or imposed upon or become due and payable in connection with, or a lien upon, the Project or any portion thereof or facilities used in connection therewith, and all taxes of whatsoever nature that are imposed in substitution for or in lieu of any of the taxes, assessments, or other charges included in this definition of Taxes, such as taxes paid through a private agreement with respect to the Project as a part of or in connection with an inducement resolution with a development authority and all costs, expenses and fees associated or incurred by Landlord in connection with that inducement resolution and transaction involving a development authority; but excluding, however, taxes and assessments attributable to the personal property of tenants and paid by such tenants as a separate charge. In the event Landlord shall retain any consultant to negotiate the amount of taxes, tax rate, assessed value or other factors influencing the amount of Taxes, then the aggregate of all such reasonable third-party fees (including, without limitation, reasonable attorneys' and appraisers' fees)

10

and all disbursements, court costs and other items paid or incurred by Landlord during the applicable tax year with respect to such proceedings shall be included in Taxes. Tenant shall not institute any proceedings with respect to the assessed valuation of the Building, Project, or the Property or any part thereof for the purpose of seeking or securing a tax reduction. If a rental tax, gross receipts tax or sales tax on Rent is imposed on Landlord by any Governmental Authority, Tenant shall, as additional Rent, reimburse Landlord, at the same time as each monthly payment of Rent is due, an amount equal to all such taxes Landlord is required to pay by reason of the Rent paid hereunder. To the extent that Taxes assessed to Landlord during the Base Year or any Operating Period reflect a reduction in Taxes due to any governmentally sponsored abatement or incentive program, then Taxes for the Base Year and such Operating Period shall be adjusted to reflect an assessment of such Taxes that would have been made had such abatement or incentive program not been applicable. (See Lease, ECF 393-4, PageID 7487).

RJA's assertion that Landlord defrauded RJA in connection with property tax reductions that Landlord received for the 2017 and 2018 tax years is frivolous. A review of Sections 1, 6, and 7 of the Lease confirms the complete lack of merit in RJA's assertions.

Notably, the Lease only provides RJA with a credit in the event that (i) RJA has paid Additional Rent for estimated Taxes in excess of the Base Taxes and (ii) the actual Taxes in excess of the Base Taxes turn out to be less than the estimate. (See Lease, ECF 393-4, Page ID 7485-7488). RJA is undoubtedly aware that Landlord did not assess any Additional Rent for Taxes in 2017 or 2018, neither as estimated Taxes in advance nor as actual Taxes after incurring the property tax expense. As a matter of fact, Landlord never billed RJA Additional Rent on account of Taxes, and there are no allegations suggesting otherwise in the SAC.[3] Therefore, RJA was not entitled to any credit under the Lease and RJA's accusation of fraud is completely baseless.

It is difficult to believe that RJA's false accusation was merely the result of a misinterpretation of the Lease. After all, RJA maintains a Corporate Real Estate Department that negotiates complex leases throughout the country. This is just another example of RJA's bad faith.

---

[3] The only thing Landlord ever billed RJA as Additional Rent under Section 6 of the Lease was for excess Operating Expenses.

The *smoking gun* that RJA found in discovery in the form of an unused 2017 Expense Statement showing a credit for Taxes was a template excel sheet used to generate the Expense Statement reconciliation in its state prior to the deletion of the bottom portion of the sheet. (See ECF 393-27). The bottom portion of the sheet is typically used for the reconciliation of Taxes in the event that Taxes are higher than Base Taxes. Id. In this case, Taxes never increased above Base Taxes and RJA never paid any estimated Additional Rent for Taxes. Hence, there was no need to reconcile any payments and match them up to the actual expense of Taxes. The credit shown on that Expense Statement is in contradiction to the Lease and was therefore deleted prior to the statement being sent to RJA. (See ECF 393-27).

RJA's assertion that Landlord fraudulently invoiced the cost of capital improvements under the guise of Operating Expenses is equally meritless, as these items are clearly allowed by the Lease to be included in Operating Expenses as the Lease expressly includes the following in the definition of "Operating Expenses": "the cost of repairs, replacements, refurbishing, restoration and general maintenance". (See Section 7(a) of Lease, ECF 393-4, PageID 7485). In its SAC, RJA references and complains about the following expenditures:

- $24,760 for improvements to the roof (including the spire and steel canopy) and a cooling tower deck;
- $15,692 for sheet metal improvements on the 18th floor balcony;
- $11,806 for new furniture, computers, and security cameras;
- $11,629 to update/replace the awning on the outside of the east entrance of the Tower; and
- $9,142 to replace the revolving door at the east entrance of the Tower.

The first line item is for work related to the roof and spire of the Building. As noted in RJA's FAC, a portion of the roof and spire were damaged in a storm and were in need of repair (See ECF 41-1, PageID 361), while the cooling tower deck was leaking and needed repairs/replacement. (Id.). The same is true for the other line items listed by RJA such as repairs

to the 18th floor balcony; repairing the awning on the east entrance of the Building due to leaks; and repairing the revolving door at the east entrance of the Building. (See ECF 324-2, PageID 6484.) Landlord cannot find a bill in the amount of $11,806 that RJA lists, however, furniture, computers, and security cameras are regularly repaired and replaced in the course of maintaining and operating a building and represent Operating Expenses under the Lease. (See Section 7 of Lease, ECF 393-4, PageID 7485). Therefore, RJA was properly billed for these expenses pursuant to the Lease, and it was not fraud on Landlord's behalf in doing so.

RJA claims that Landlord included in Operating Expenses elevator related expert witness fees.Landlord had contemplated using the subject vendor as an expert witness in such event Landlord would have to pay for that service separately. However, the invoice in question pertained to services to investigate, advise, and produce a report on the state of the Building's elevator system since RJA had alleged that the elevators are unsafe, and Landlord was looking for a third-party consultant to advise on the actual state of the elevator system. The consultant's services in providing Landlord with guidance relating to the elevators falls within the definition of "Operating Expenses" in Section 7(a) of the Lease. (See Lease, ECF 393-4, PageID 7485).

RJA also accuses Landlord of denying RJA's request for an audit under the Lease for the 2018 tax year. Section 7(g) of the Lease addresses when RJA can request an audit of Landlord's books and provides as follows:

> (g) Tenant's Audit. Tenant shall have the right to have Landlord's books and records pertaining to Operating Expenses and Taxes for each Operating Period reviewed, copied (provided Landlord is reimbursed for the cost of such copies) and audited ("Tenant's Audit"), provided that: (a) such right shall not be exercised more than once during any calendar year; (b) if Tenant elects to conduct Tenant's Audit, Tenant shall provide Landlord with written notice thereof ("Tenant's Audit Notice") no later than one hundred eighty (180) days following Tenant's receipt of the Expense Statement for the year to which Tenant's Audit will apply; (c) Tenant may not conduct Tenant's Audit during any period in which an uncured Default by Tenant exists either at the time of Landlord's receipt of Tenant's Audit Notice or at

any time during Tenant's Audit; (d) no subtenant shall have any right to conduct an audit and no assignee shall conduct an audit for any period during which such assignee was not in possession of the Premises; (e) conducting Tenant's Audit shall not relieve Tenant from the obligation to timely pay Base Rent or the Additional Rent, pending the outcome of such audit; (f) Tenant's right to conduct such audit for any calendar year shall expire one hundred eighty (180) days following Tenant's receipt of the Expense Statement for such year, and if Landlord has not received Tenant's Audit Notice within such one hundred eighty (180) day period, Tenant shall have waived its right to conduct Tenant's Audit for such calendar year; provided, however, that with respect to any audit of Operating Expenses and Taxes for the Base Year, Tenant's right to conduct an audit for such year shall expire the earlier of one hundred twenty (120) days following Tenant's receipt of the Expense Statement for the Base Year or one hundred twenty (120) days following Tenant's receipt of the first Expense Statement forwarded by Landlord to Tenant for any Operating Period during the Term; (g) Tenant's Audit shall be conducted by a Certified Public Accountant whose compensation is not contingent upon the results of Tenant's Audit or the amount of any refund received by Tenant, and who is not employed by or otherwise affiliated with Tenant; (h) Tenant's Audit shall be conducted at Landlord's office where the records of the year in question are maintained by Landlord, during Landlord's normal business hours; (i) Tenant's Audit shall be completed within sixty (60) days after the date after Landlord provides to Tenant access of Landlord's books and records that Tenant begins such audit, and a complete copy of the results thereof shall be delivered to Landlord within sixty (60) days after Tenant completes such audit; and (j) Tenant's Audit shall be conducted at Tenant's sole cost and expense. If Tenant's Audit is completed and submitted to Landlord in accordance with the requirements of this Section and such audit establishes that Landlord has overstated the Operating Expenses or Taxes for the year audited, then Landlord shall reimburse Tenant for any overpayment, and if such Operating Expenses or Taxes (in the aggregate) have been overstated by more than five percent (5%), then Landlord shall also reimburse Tenant for Tenant's actual, reasonable cost incurred in conducting Tenant's Audit (not to exceed $17,500.00), together with interest at the Default Rate calculated from the date such reimbursement is owed, with such reimbursement(s) to be made within thirty (30) days after the amount of such overpayment has been established.

Landlord submits that RJA's audit request was not submitted in a timely fashion pursuant to the Lease. (See ECF 326-7 - The January 21, 2020, correspondence from Landlord's representative, Hershy Brown, to Derek Recer which explains the foregoing.) Therefore, RJA was not entitled to conduct an audit under the Lease. (See ECF 393-4, PageID 7488-7489). RJA's alleged audit rights are referenced in paragraph 80 of the SAC. See SAC, ECF 393, PageID 7451. However, the allegations in paragraph 80 of the SAC appear to be background allegations and the

SAC does not appear to assert any independent fraud claim based on RJA's audit request. However, to the extent the SAC intends to assert any claim based on RJA's audit request, the claim should be dismissed pursuant to Rule 12(b)(6). (See SAC, ECF 393, PageID 7452-7453).

Landlord respectfully asks that the court dismiss the entire SAC for failure to state a claim upon which relief can be granted, because as a matter of law RJA is not entitled to any relief as RJA was not defrauded nor damaged because Landlord acted in accordance with the Lease. In addition, it is well settled under Tennessee law that a tort cannot be predicated on a breach of contractSee Mid-South Milling Co. v. Loret Farms, Inc., 521 S.W. 2d 586 (Tenn. 1975) (a contract may be negligently or fraudulently breached and the cause of action remains in contract rather than in tort). Therefore, RJA's tort claim for fraud fails as a matter of law and should be dismissed.

### B.  MOTION TO STRIKE

Given the procedural posture of this case, Rule 12(f) is the proper means to remove the immaterial and impertinent allegations from RJA's SAC. In addition to Rule 12(f), Landlord respectfully submits that the allegations in RJA's SAC that pertain to the previously dismissed claims should be stricken because RJA's inclusion of the subject allegations in its SAC was in violation of the Court's Order Granting in Part and Denying in Part RJA's Motion for Leave to File a SAC. (ECF No. 391). In the aforementioned Order, the Court noted that RJA's proposed SAC sought to assert a detailed history of the negotiations of the Lease to support RJA's breach of lease claim. However, RJA's request to file a SAC to include the negotiation history of the lease in support of its breach of lease claim was denied. (See ECF No. 390, PageID 7351-7359). The same holds true for the exhaustive allegations in the SAC relating to elevator malfunctions, elevator outages and related injuries thereto. The Court likewise denied RJA's request to file a SAC to allege intentional tort claims based on allegations that Landlord intentionally disrupted

15

elevator service in the building to force RJA from the building. (See ECF No. 391, PageID 7361). The Court ruled similarly in relation to RJA's claims and supporting allegations that Landlord was liable for nuisance and gross negligence and that Sofer should be added as a defendant to the lawsuit. (See ECF No. 391, PageID 7364-7366). In the Order, the Court only gave RJA leave to file a SAC "to the extent that the SAC alleges a claim for fraud" but denied RJA's SAC "in all other respects." (See ECF 391, PageID 7368).

Despite the clear import of the Court's aforementioned Order, RJA filed a 47 page SAC that retained virtually all of the allegations that were originally included to support the various claims that were subsequently disallowed by the Court. Moreover, the SAC that RJA filed on February 10, 2022 attached an extensive number of exhibits that pertain to the disallowed claims. Forcing Landlord to respond to these extensive, immaterial and impertinent allegations and associated exhibits would be highly prejudicial to Landlord because Landlord would be unduly and unnecessarily burdened by the time and expense of having to sift through, respond to and/or defend against these allegations and exhibits when they pertain to claims that already have been dismissed. Allowing these immaterial and impertinent allegations and exhibits to remain in the SAC would be contrary to the requirement in Fed. R. Civ. P. 8 that pleadings be simple, concise and direct and this Court's January 28, 2022 Order which expressly limited the scope of the allegations and claims that could be included in the SAC. (ECF No. 391).

The allegations, claims for relief and exhibits to RJA's SAC that are immaterial and impertinent to the discrete fraud claim that RJA was allowed to assert in a SAC include the following:

    A.    The last two sentences in paragraph 2 of the SAC allege that Sofer exercises complete dominion and control over 50 North and the entities that own 50 North.

16

These allegations pertain to RJA's attempt to pierce the corporate veil to assert claims against Sofer for (i) nuisance, and (ii) gross negligence, willful and intentional conduct/prima facie tort. Pursuant to the Court's January 28, 2022 Order (ECF No. 391), RJA's request to assert the subject claims against Sofer was denied. Thus, the subject allegations are immaterial and impertinent to the sole and discrete fraud claim that RJA was granted leave to include in a SAC. Therefore, the subject allegations should be stricken from the SAC.

B. The second sentence in paragraph 3 of the SAC alleges that Mr. Sofer has sufficient minimum contacts with Tennessee to support this Court's exercise of personal jurisdiction over him for purposes of the tort claims that RJA sought to advance against him. As noted, RJA's request to add Sofer as a defendant to this lawsuit was denied. Therefore, the subject allegations in paragraph 3 of the SAC should be stricken from the SAC.

C. The allegations in paragraph 5 of the SAC also pertain to RJA's request to pierce the corporate veil and sue Sofer personally. These allegations are immaterial and impertinent to the limited fraud claim that RJA was allowed to assert in a SAC. Therefore, the subject allegations should be stricken from the SAC.

D. Paragraphs 10 through 74 of the SAC pertain to RJA's claims for (i) breach of lease/right of quiet enjoyment (Landlord), (ii) nuisance (Landlord and Sofer), (iii) gross negligence, willful and intentional conduct/prima facie tort (Landlord and Sofer), and (iv) declaratory relief (Landlord). However, all of these claims have been dismissed and/or disallowed from inclusion in the SAC because they are futile. (See the Court's January 28, 2022 Order, ECF No. 391). Paragraphs 10 through 74

of the SAC also reference multiple exhibits that were attached to the SAC. Only one of these exhibits, namely, the Lease that was attached as Exhibit D to the SAC, is relevant and material to the discrete fraud claim that RJA was allowed to assert in a SAC. Notably, the only factual allegations in the SAC that actually pertain to the subject fraud claim are set forth in paragraphs 75 through 80 of the SAC. In fact, paragraph 75 begins with the express heading of "**50 North's Fraudulent Assessment of Operating Expenses**" which expressly denotes when the allegations that pertain to RJA's fraud claim begin. Paragraph 76 of the SAC references Exhibit D, the Lease. Thus, striking all of the allegations in paragraphs 10 through 74 of the SAC and the non-Lease exhibits referenced therein will not impact the limited fraud claim that RJA was authorized to include in the SAC.

E. Paragraph 81 of the SAC references damages for Landlord's "numerous breaches of the Lease." (See ECF No. 393, PageID 7451). However, RJA's breach of lease claims have been dismissed and RJA was denied leave to include any breach of lease claims in a SAC. (See ECF No. 391). Therefore, the subject allegations in paragraph 81 of the SAC should be stricken.

F. Paragraph 82 of the SAC incorporates by reference paragraphs 1-81 of the SAC as though set forth therein verbatim. The subject paragraph is improper because it incorporates multiple paragraphs from the SAC that are identified above which include allegations that are completely immaterial and impertinent to the single fraud claim that RJA was allowed to assert in a SAC. Therefore, as written paragraph 82 of the SAC should be stricken.

G. Paragraph 94 of the SAC incorporates by reference paragraphs 1-93 of the SAC as though set forth therein verbatim. The subject paragraph is improper because it incorporates multiple paragraphs from the SAC that are identified above which include allegations that are completely immaterial and impertinent to the single fraud claim that RJA was allowed to assert in a SAC. Therefore, as written paragraph 94 of the SAC should be stricken.

H. Paragraph D. in the Prayer for Relief section of the SAC requests an award of punitive damages against Sofer. (See ECF 393, PageID 7455). However, RJA's request for leave to assert claims against Sofer in a SAC was denied by the Court. (See ECF No. 391). The subject claim for relief is immaterial and impertinent to RJA's fraud claim and should be stricken from the SAC.

I. Paragraph E. in the Prayer for Relief section of the SAC includes a request for RJA to be awarded reasonable attorney fees and all costs and expenses incurred in this litigation. (See ECF 393, PageID 7455). However, the claim for attorney fees and recovery of costs/expenses was predicated on the breach of lease claim that was dismissed and disallowed from the SAC. The subject request for relief is immaterial and impertinent to the limited fraud claim that RJA was allowed to include in a SAC. Therefore, the subject request for relief should be stricken from the SAC.

## **CONCLUSION**

For the foregoing reasons, Landlord respectfully submits that RJA's fraud claim should be dismissed with prejudice pursuant to Fed R. Civ. P. 12(b)(6). Pleading in the alternative, should RJA's Motion to Dismiss not be granted in its entirety, Landlord respectfully submits that all of the abovementioned allegations, requests for relief and exhibits that are immaterial and impertinent

to RJA's discrete fraud claim should be stricken from the SAC. The subject allegations, requests for relief and exhibits also should be stricken from the SAC because they exceed the scope of leave granted by the Court's January 28, 2022 Order which only allowed RJA to file a SAC **"to the extent the SAC alleged a claim for fraud"** and **denied "RJA's SAC in all other respects."** (See Order, ECF 391, PageID 7368). (emphasis added).

                    Respectfully submitted,

                    BLACK MCLAREN JONES RYLAND & GRIFFEE, P.C.

                    /s/ Michael G. McLaren
                    Michael G. McLaren (#5100)
                    John C. Ryland (#16878)
                    530 Oak Court Drive, Suite 360
                    Memphis, Tennessee 38117
                    (901) 762-0535 – telephone
                    (901) 762-0539 – fax
                    mmclaren@blackmclaw.com
                    jryland@blackmclaw.com

                    *Attorneys for Plaintiff 50 North Front St. TN, LLC*

## CERTIFICATE OF SERVICE

    The undersigned hereby certifies that a true and correct copy of the foregoing was served upon the below-listed counsel this 7th day of March, 2022, through the Court's ECF System:

| | |
|---|---|
| Niel Prosser, Esq. | John R. Branson, Esq. |
| Rob Clapper, Esq. | BAKER, DONELSON, BEARMAN, |
| Kyle Johnson, Esq. | CALDWELL & BERKOWITZ, PC |
| THE PROSSER LAW FIRM, PLC | 165 Madison Avenue, Suite 2000 |
| Suite 300 | Memphis, Tennessee 38103 |
| 5865 Ridgeway Center Parkway | |
| Memphis, Tennessee 38120 | |

                    /s/ Michael G. McLaren