IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TENNESSEE, WESTERN DIVISION

| | |
|---|---|
| RAYMOND JAMES & ASSOCIATES, INC., )<br>)<br>Plaintiff/Counter-Defendant, )<br>)<br>v. )<br>)<br>)<br>50 NORTH FRONT ST. TN, LLC, )<br>)<br>Defendant/Counter-Plaintiff. ) | No. 2:18-cv-02104 and<br>No. 2:21-cv-02433 |

**RAYMOND JAMES' THIRD MOTION FOR DISCOVERY SANCTIONS**

Plaintiff, Raymond James & Associates, Inc. ("Raymond James"), pursuant to Rule 37 of the Federal Rules of Civil Procedure, files this Motion for Discovery Sanctions (the "Motion") against Defendant, 50 North Front St. TN, LLC ("Landlord"), and Madison Realities, LLC ("Madison") due to their failure to provide documents as ordered by the Court and/or the Magistrate Judge.

**INTRODUCTION**

Much of the relevant background here is set forth in Raymond James' recently filed Opposition to Landlord's Motion for a Protective Order, et al. (ECF 423) ("Raymond James' Opposition"). For brevity, it is hereby incorporated by reference.

Landlord and Madison (hereinafter collectively the "Recalcitrant Parties") should be sanctioned for choosing to ignore no fewer than four (4) of the Court's discovery Orders. The most recent of those Orders triggered the production obligations now at issue. That Order, which this Court issued on March 21, 2022, affirmed the Magistrate Judge's earlier refusal to quash Raymond James' subpoena to Madison. (*See* ECF 401 (hereinafter the "Friedman Order")). There, the Court

1

affirmed the Magistrate Judge's finding that documents involving Madison's agent, Joel Friedman, were not privileged. This ruling not only imposed production obligations on Madison[1], but also on Landlord—which had withheld at least 2,000 Friedman-related documents as "privileged." But for that claim, these documents should have been produced pursuant to the Magistrate Judge's earlier discovery Orders.[2]

The Recalcitrant Parties have produced no documents in response to the Friedman Order. Rather—usurping the role of this Court—*they* determined that the Friedman Documents need not be produced because they supposedly were no longer relevant given the dismissal of Raymond James' First Amended Complaint. The Court, however, clearly knew it had dismissed the FAC at the time it decided the Friedman Order and it would not have issued an Order to address a nullity. Moreover, Raymond James' discovery is still highly relevant to the current claims in the case. This is because there is tremendous factual overlap between the dismissed FAC, Landlord's own Counterclaim, and the other claims asserted in the balance of the Consolidated Action. (*See* Raymond James' Opposition, ECF 423 at PageIDs7885-88). It was only after Raymond James challenged this usurpation that Landlord sought relief from the Friedman Order, and even then, Landlord did so based upon the obviously false premise that the Freidman Documents had no relevance.

---

[1] Madison, to date has not produced *any* documents in this case. It has only been Landlord that has produced/withheld any Friedman-related documents, most of which were produced as part of Landlord's 800,000 page document dump. Landlord has previously contended that only it had possession of all Madison documents. (*See* ECF 73 at PageID 904.) However, in another example of its tendency to "bait and switch" (as the Court previously noted at ECF 401, PageID 7731), Landlord also contended in that same document that Madison, in fact owns, controls, or possesses "communications, primarily emails." (*See* ECF 73 at PageID 904.) (*See also* Raymond James' Opposition, ECF 423 at PageID 7880 and n. 19).

[2] *See* footnote 4, infra.

The Recalcitrant Parties thus stand in deliberate violation of no fewer than four of this Court's discovery Orders. This contempt warrants serious sanction.

## BACKGROUND

Landlord is the owner of the Raymond James Tower (the "Building") located in downtown Memphis, Tennessee. Madison serves as the remote "asset manager" for the Building, with its agent, Joel Friedman, living in Canada. On July 26, 2018, Raymond James issued a subpoena to Madison seeking the production of various documents (the "Madison Subpoena").[3] (*See* ECF 73-1). While Madison made no objection to the Subpoena, Landlord filed a Motion to Quash contending, among other things, that communications of Landlord and Madison—particularly those of its agent Joel Friedman ("Mr. Friedman")—were privileged because Madison and Friedman were "functional employees" of Landlord. (*See* ECF 73 at PageIDs 903-904). For the reasons described at length in Raymond James' Opposition, (*see* ECF 423 at PageIDs 7780-83), this claim of privilege was rejected by the Magistrate. (*See* ECF 138). Landlord, only, (and not Madison) thereafter appealed this determination. (*See* ECF 142).

During roughly the same time period, the Magistrate issued a series of discovery orders to Landlord ordering the production of documents sought in Raymond James' First and Second Requests For Production. By February 11, 2019, no fewer than three discovery Orders (ECFs 101, 107 and 172) were in place requiring Landlord to produce responsive, non-privileged documents to Raymond James.[4] These Orders, plus the Court's recent Friedman Order, are collectively

---

[3] The Madison Subpoena was necessary because Landlord refused to comply fully with Raymond James' first set of discovery requests—forcing it to seek discovery from third parties such as Madison. (*See* ECF 83 at PageIDs 1021-22).

referred to as the "Discovery Orders at Issue."[5] (*See* Raymond James' Opposition, ECF 423 at PageIDs 7874-7875 and FN. 2; 7876-82). Landlord ultimately provided a privilege log in conjunction with its productions which reflected that some 2,000 emails involving Mr. Friedman had been withheld on the basis of privilege. (ECF 423-5). Landlord's claim of privilege as to these 2,000 emails—as well as to any other documents to or from Mr. Friedman responsive to the Magistrate's Orders found at ECF 101, 107 and 107 (collectively the "Friedman Documents")—depended upon the outcome of Landlord's Appeal of the Magistrate's denial of Landlord's Motion to Quash. (ECF 142).

On March 21, 2022, the Court rejected Landlord's Appeal, holding that no privilege existed for communications between Mr. Friedman and Landlord. (*See generally* the Friedman Order, ECF 401). This meant that Landlord's prior productions pursuant to the Magistrate Judge's prior discovery Orders were deficient since they had withheld Friedman Documents based upon a non-existent privilege. (*Id.*) The 2,000 emails reflected on Landlord's privilege log—plus any other responsive Friedman-related documents then existing or subsequently generated[6] in the control of

---

[4] These Orders are as follows:

    A. Order Granting Plaintiff's Motion to Compel (ECF 101);
    B. Order Granting In Part And Denying In Part Defendant's Motion For A Protective Order (ECF 107); and
    C. Order Resolving Notice of Non-Compliance (ECF 172).

(*See generally,* Raymond James' Opposition, ECF 423 at PageIDs 7874-82.

[5] The "Discovery Orders at Issue", as well as other defined terms have the same meaning here as in Raymond James' Opposition. (ECF 423).

[6] Landlord is obligated to supplement its production per Rule 26(e) of the Federal Rules of Civil Procedure.

either Landlord or Madison—were thus due to be produced pursuant to the Discovery Orders at Issue.

Over two (2) months have passed since entry of the Friedman Order and neither Landlord nor Madison have produced any of the Freidman Documents. Initially, Landlord and Madison chose to do nothing. When Raymond James thereafter inquired about the status of the ordered production (*see* 4/21/22 email from N. Prosser, attached as **Exhibit A**), Landlord stated that no production would be made based upon *its determination* that, given the dismissal of the FAC, the Friedman Documents were no longer relevant. (*See* 4/25/22 letter from J. Ryland, attached as **Exhibit B**). Raymond James challenged this assertion (*see* 4/28/22 email from N. Prosser, attached as **Exhibit C**), and Landlord thereafter filed a Motion for Protective Order based upon the facially faulty premise that Raymond James' discovery requests had no relevance to the claims that remained in the case. (ECF 418). This Motion for Sanctions now follows.

## LEGAL STANDARD

"Discovery sanctions may be appropriate when a party 'fails to obey an order to provide or permit discovery.'" *Raymond James & Associates, Inc. v. 50 N. Front St. TN, LLC*, 2020 WL 4572356, at *3 (W.D. Tenn. Aug. 7, 2020), *quoting Peltz v. Moretti*, 292 F. App'x 475, 479 (6th Cir. 2008). Pursuant to the Federal Rules of Civil Procedure, "if a party or a party's officer, director, or managing agent…fails to obey an order to provide or permit discovery" the court may "issue further just orders," including deeming facts as proven, issuing adverse inferences, and prohibiting the introduction of evidence. Fed. R. Civ. P. 37(b)(2)(A). In addition, "the court *must* order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses,

including attorney's fees, caused by the failure." Fed. R. Civ. P. 37(b)(2)(C) (emphasis added). Per Wright and Miller,

> The sanctions enumerated in the rule are not exclusive and arbitrary but flexible, selective, and plural. The district court may, within reason, use as many and as varied sanctions as are necessary to hold the scales of justice even.

8B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §2284 (3d.).

Taken together, the Discovery Orders at Issue order Landlord to produce all the Friedman Documents that it should have produced in response to Raymond James' first and second requests for production, and order Madison to produce all documents subject to the Madison Subpoena. These Orders do not empower the Recalcitrant Parties to make up their own exceptions to these Orders, or to put forth specious relevance arguments to avoid or further delay compliance. Landlord and Madison have failed to obey this Court's Orders and should thus be sanctioned.

## **ARGUMENT**

The Discovery Orders at Issue require Landlord and Madison[7] to produce Friedman Documents responsive to Raymond James' First and Second requests for production, as well as in response to the Madison Subpoena. Landlord attempts to avoid this production by arguing that this discovery is no longer relevant in light of procedural developments in the case. (*See* ECF 418-1 at PageIDs 7831-34). As demonstrated by Raymond James' Opposition, however, this is simply wrong. (*See generally* Raymond James' Opposition, ECF 423 at PageIDs 7785-88). Landlord's argument studiously ignores the substantial factual overlap between the dismissed First Amended Complaint on the one hand (ECF 41-1)—and Landlord's Counterclaim (ECF 286) and many of

---

[7] As described in Raymond James' Opposition, it is still unclear whether Landlord or Madison has possession/control of the Friedman Documents. (*See* ECF 423 at PageID 7880, n. 19).

the claims/counter-claims/defenses present in the Consolidated Action—on the other hand. Landlord barely treats this critical point in its Motion for Protective Order, addressing it in conclusory terms in a single footnote. (*See* Landlord's Memorandum In Support of Motion for Protective Order, ECF 418-1, PageID 7830, n. 2). There, Landlord attempts to differentiate the FAC from its Counterclaim, contending that the two pleadings "entail a different scope of discovery, both in content and in timeframe." (*Id.*) As noted above, this contention is simply wrong. Rather, the "content" and "timeframe" involved in Landlord's Counterclaim are largely *the same* as that raised in the now dismissed FAC.

By way of example, this factual overlap is apparent from Landlord's Counterclaim as follows. In alleging that Raymond James deceived Landlord regarding the condition of the Building when it signed the Estoppel Certificate in December of 2015— including as it regarded the condition of the elevators—Landlord's Counterclaim alleges that

> the conditions and issues that RJA complains about in its FAC are the same conditions that existed during Parkway's ownership of the Building...

(Landlord's Counterclaim, ECF 285, PageID 5031, para. 28.) Landlord thus alleges that the problems Raymond James complained of in its FAC actually pre-dated Landlord's purchase. Raymond James' FAC alleged the exact opposite—that the Building's problems largely developed only on Landlord's watch.[8] The Building's condition both before and after 2015 will thus be critical to each side as it attempts to prove its own case—or rebut the case of its opponent. Landlord's Counterclaim puts the condition of the Building, including its elevators, at issue

---

[8] *See e.g.* ¶ 14 of the FAC, which alleged "[t]he performance/operation of the elevators has deteriorated materially and substantially from the form, manner, and/or quality that existed at the time the Lease was signed (and which existed at or about the time Landlord purchased the Building)." ECF 41-4, PageID354.

7

generally for the entire period covered by the FAC. Indeed, Landlord's Counterclaim is frequently factually the mirror-image opposite of Raymond James' FAC. For example, Landlord alleges that "elevator entrapments, mis-levelings, and callbacks" were worse prior to its purchase of the Building. (*See* PageID 5037-5038) (*Compare* First Amended Complaint, ECF 41-1 at PageIDs 354-60, that alleges for nearly six pages describing the myriad of issues with the elevators over time).The prior discovery that Landlord now claims is irrelevant, in fact, goes directly to *when* these issues with the Building developed.[9] The "context" and "timeframe" of the FAC and Counterclaim could hardly be more similar, and Landlord's contention that Raymond James' prior discovery is now "irrelevant" is facially untrue.

The Recalcitrant Parties' justification for their defiance is thus entirely illusory. The outstanding discovery propounded by Raymond James is highly relevant to the issues that remain

---

[9] See for example:

- Raymond James' First RFP, Request No. 8 – "Please produce all Documents that relate to the maintenance, servicing, repair, and/or testing of the Elevator System from 1/1/2012 to present." (ECF 53-1, PageID 603.)

- Raymond James' First RFP, Request No. 21 – "Please produce all Documents from 1/1/2014 to present between or among Defendant and any property manager for the Tower (including Colliers International Memphis) that relate to the Elevator System." (ECF 53-1, PageID 606.)

- Raymond James' First RFP, Request No. 24 – "Please produce all Documents from 1/1/2014 to present between or among Defendant, its employees, its agents and/or its independent contractors that relate to the Elevator System, including malfunctions, entrapments, safety issues, service outages, maintenance issues, possible modernization or replacement, costs, and/or capital improvement budgets, etc." (ECF 53-1, PageID 606.)

- Raymond James' Second RFP, Request No. 12 – "Please produce all Documents from 1/1/2014 to present that relate to any discussions, plans, capital improvement budgets or the like that contemplated upgrading, modernizing or replacing some or all of the Tower's elevators or that addressed cleaning and/or sealing/waterproofing the Tower's windows and exterior." (ECF 74-2, PageID 946.)

in this case and the Recalcitrant Parties' arguments to the contrary are just a pretext to avoid compliance.

## REQUESTED RELIEF & CONCLUSION

Landlord is no stranger to discovery sanctions, having already been sanctioned once in this case for ignoring the Magistrate's discovery orders. (*See* ECF 392). It is thus astonishing that Landlord would double down and do so again, first by ignoring the Discovery Orders At Issue, and then by advancing a specious argument that the ordered production is no longer relevant.

Accordingly, and for the reasons set forth above, Raymond James respectfully requests:

1. that Landlord and Madison be ordered to produce all the Friedman Documents requested herein within two weeks of the entry of the Court's on this Motion;
2. that Landlord and Madison be sanctioned as the Court deems appropriate; and
3. that Landlord and Madison be ordered, jointly and severally, to pay Raymond James' costs and expenses including its reasonable attorneys' fees for addressing Landlord's and Madison's refusal to produce the Friedman Documents

Respectfully submitted,

**PROSSER, CLAPPER & JOHNSON, PLC**

 /s/ Kyle Johnson

Niel Prosser (BPR No. 11647)
Rob Clapper (BPR No. 34180)
Kyle Johnson (BPR No. 36066)
5865 Ridgeway Center Parkway, Suite 300
Memphis, TN 38120
T: (901) 820-4433

   E: np@prosserlaw.com
    rclapper@prosserlaw.com
    kjohnson@prosserlaw.com

   - and –

**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC**

/s/ John Branson

John Branson (BPR No. 10913)
165 Madison Avenue, Suite 2000
Memphis, TN 38103
T: (901) 577-2323
E: jbranson@bakerdonelson.com

*Attorneys for Raymond James*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was filed using the Court's CM/ECF system on June 7, 2022, which will automatically send an electronic copy of the filing to all counsel of record in this case.

/s/ Kyle Johnson