IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| RAYMOND JAMES & ASSOCIATES, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 18-cv-2104-JTF-tmp |
| 50 NORTH FRONT ST. TN, LLC, | ) ) | |
| Defendant. | ) ) | |

ORDER DENYING MOTION FOR PROTECTIVE ORDER, MOTION FOR SANCTIONS, AND MOTION TO STAY RULING

Before the court are three motions: a Motion for Protective Order filed by defendant 50 North Front St. TN, LLC ("50 North") (ECF No. 418), a Motion for Sanctions filed by plaintiff Raymond James & Associates, Inc. ("Raymond James") (ECF No. 425), and a Motion to Stay Ruling filed by 50 North. (ECF No. 434.) These motions are before the undersigned by orders of reference entered on April 19, 2023, and May 2, 2023. (ECF Nos. 439, 440.) For the following reasons, all three motions are DENIED.

## I.  BACKGROUND

The dispute underlying these motions is 50 North's failure thus far to produce several thousand documents containing the communications of an individual named Joel Friedman ("the Friedman documents.") Although Raymond James has sought to obtain these

documents both by issuing a subpoena to Madison Realties, LLC ("Madison") and discovery requests to 50 North, the documents implicated by both sets of discovery requests are the same. 50 North maintains that it need not produce these documents because they are no longer relevant to the plaintiff's claims. Raymond James argues that the documents remain relevant to the counterclaims and that 50 North's failure to produce them is sanctionable.

A.   **Raymond James's Discovery Requests**

This case was originally removed from state court on February 16, 2018. (ECF No. 1.) In its initial complaint, Raymond James alleged that 50 North had violated its lease as the landlord of a property that Raymond James occupied in downtown Memphis, Tennessee. (Id.) Many of these allegations related to 50 North's failure to repair and maintain the building's elevators. (Id.) Raymond James filed its first amended complaint ("FAC") several months later. (ECF Nos. 41, 45.) The FAC set forth claims about the building's elevator functionality as well as allegations about unclean building exterior and windows, leaks, damage to the building's spire, dilapidated common areas, and a lack of security. (ECF No. 41-1.)

On April 25, 2018, Raymond James served its first set of requests for production of documents ("RFPs") and first set of interrogatories on 50 North. (ECF Nos. 29, 30.) According to

Raymond James, these discovery requests sought documents on topics "ranging from [50 North's] purchase of the Building, the functionality of the elevators and communications by/between Landlord and others related to the Building conditions and elevators." (ECF No. 423 at PageID 7876.) After receiving an unsatisfactory production from 50 North, Raymond James moved to compel the remainder of the documents. (ECF No. 53.)

On July 18, 2018, Raymond James served its second set of RFPs and interrogatories. (ECF Nos. 56, 57.) "[T]hese requests covered a variety of topics, including the calculation of and accounting for operating expenses, the calculation of the Termination/Option Fee, and the condition of the Building, including any capital repairs and/or updates." (ECF No. 423 at PageID 7877.) That same month, Raymond James served a subpoena ("the Madison subpoena") on Madison. (Id. at PageID 7880.) Madison "appears to be the Asset Manager for the building at issue and is owned, at least in part, by the same individual who owns 50 North." (ECF No. 97.) Although closely related to 50 North, Madison is a third party to this litigation. The Madison subpoena sought communications and records relating to elevator maintenance, building repairs, and Madison's management of the building. (ECF No. 73-1.) The date of production was August 13, 2018. (ECF No. 73-1 at PageID 912.) The requests covered "the period from 1/1/12 to date." (Id. at PageID 915.) The Madison subpoena also stated:

> Because of the nature of this litigation and to avoid
> the burden/cost of re-subpoenaing you, the specific
> requests in this subpoena shall be considered to be
> ongoing in nature and shall be supplemented at the
> request of the Plaintiff, up until such time as this
> case has reached a final resolution.

(Id. at PageID 920.)

50 North moved both for a protective order to avoid responding to the second set of discovery requests and to quash the Madison subpoena. (ECF Nos. 73, 74.) Among its arguments in favor of quashing, 50 North asserted privilege over all the documents requested that originated with Joel Friedman, an employee of Madison. (ECF No. 73.) 50 North claimed that Madison was its functional employee, and thus any communications involving Friedman would be covered by attorney-client privilege. (Id.)

**B.   The Court's Discovery Orders**

In September and October of 2018, the undersigned ruled on several of the parties' motions. On September 20, 2019, the court granted Raymond James's Motion to Compel, ordering 50 North to provide documents responsive to Raymond James's first set of interrogatories within fourteen days and RFPs within twenty-one days. (ECF No. 101.) The court also denied 50 North's Motion for Protective Order as to Raymond James's second set of interrogatories and RFPs. (ECF No. 107.) 50 North was ordered to produce responses within fourteen days. (Id.) Finally, the court denied in part and deferred in part 50 North's Motion to Quash.

- 4 -

(ECF No. 97.) 50 North was ordered to produce all non-privileged documents within forty-five days of the entry of the court's order. (Id.) However, the court permitted 50 North to file additional evidence supporting its argument that Madison was a functional employee. (Id.) It deferred ruling on whether the Friedman documents were privileged pending the submission of that evidence. (Id.) 50 North provided further briefing on the issue. (ECF No. 99.) Based on this evidence, the court found that the Friedman documents were not privileged and therefore denied the remainder of the Motion to Quash. (ECF No. 138.)

50 North immediately appealed the undersigned's order on the Motion to Quash. (ECF No. 142) ("the appeal"). In the appeal, 50 North argued that the order was "clearly erroneous and contrary to law" because the court struck the evidence 50 North submitted in support of its motion.[1] (Id.) Because the appeal was pending, 50 North did not produce the Friedman documents within the time frame set forth in the order. However, in the meantime, 50 North produced

---

[1]In its initial Motion to Quash, 50 North argued that Madison was its functional employee. (ECF No. 73.) The court, in the interest of fairness, permitted 50 North to provide additional evidence to support its functional employee theory. (ECF No. 97.) 50 North then submitted a declaration from its manager, Jacob Sofer, which stated that Madison was an *actual* employee of 50 North. (ECF No. 99.) This was the first time 50 North had advanced such an argument. (ECF No. 138.) Because the content of 50 North's submission did not comply with the court's order authorizing additional briefing on the narrow subject of whether Madison was a functional employee, the court struck Sofer's declaration. (Id.)

a "document dump" of 283,030 documents totaling 800,000 pages. (ECF No. 441.) 50 North also provided Raymond James with a privilege log identifying over two thousand documents as privileged communications involving Friedman. (ECF No. 423 at PageID 7878.)

## C.   Changes to the Scope of Litigation

While the appeal was pending, several motions altered the claims at issue in this litigation. On December 19, 2019, 50 North filed a counterclaim. (ECF No. 286.) The counterclaim alleged that Raymond James made misrepresentations to 50 North about the condition of the building, including its elevators, in order to encourage 50 North to purchase the building. (Id.) Soon after, the undersigned recommended granting 50 North's Motion to Dismiss (ECF No. 54) as to the entire FAC. (ECF No. 301.) That Report and Recommendation was adopted on July 30, 2020, rendering 50 North's counterclaim the only operative complaint in this case. (ECF No. 301.)

Following the undersigned's recommendation of dismissal of the FAC, Raymond James filed a Motion to Amend its complaint. (ECF No. 324.) The undersigned recommended denying that motion as to almost every claim in the new complaint, but recommended granting it as to a single claim of fraud. (ECF No. 375.) That Report and Recommendation was adopted on January 1, 2022. (ECF No. 391.) Raymond James was permitted to file a second amended complaint

("SAC") containing only the fraud claim. (Id.) 50 North filed a Motion to Dismiss the SAC on March 7, 2022. (ECF No. 396.) That motion is currently pending before the undersigned. (ECF No. 439.)

In addition to the instant case, 50 North initiated a separate lawsuit on June 25, 2021. Complaint, 50 North Front St. TN, LLC v. Raymond James and Associates, Inc., 21-cv-02433-JTF-tmp (W.D. Tenn. June 25, 2021). Raymond James moved to consolidate that case with the present case. (ECF No. 386.) The motion was granted. (ECF No. 387.) That case was then stayed pending the outcome of this case. (Id.) As the counterclaim is currently still pending, the claims in 50 North's separate complaint remain stayed as of the date of this order.

## D. Ruling on the Madison Subpoena

During the time that 50 North's appeal of the undersigned's order on the Madison subpoena remained pending, 50 North did not produce the Friedman documents identified in its privilege log. (ECF No. 423 at PageID 7878.) On March 21, 2022, the district judge affirmed the undersigned's denial of 50 North's Motion to Quash the Madison subpoena. (ECF No. 401.) At that point, the stay of the undersigned's order came to an end, and 50 North's obligation to produce the Friedman documents pursuant to that order became ripe.[2]

---

[2]Raymond James argues that the deadline set forth in the undersigned's initial order, which required the documents to be

On April 21, 2022, counsel for Raymond James emailed counsel for 50 North requesting that the Friedman documents be produced in compliance with the court's final order. (ECF No. 425.) Counsel for 50 North sent a letter in response, stating that because of the dismissal of the FAC, the requests for documents were now irrelevant. (Id.) Because of this, 50 North said that it would not be producing the Friedman documents and would move for a protective order to resolve the matter. (Id.) Counsel for Raymond James stated that their client would not consent to the motion for protective order and would move to compel the documents. (Id.)

**E.   The Present Motions**

The events described above led to the filing of three separate motions. First, on May 11, 2022, 50 North filed a motion for protective order and to quash the Madison subpoena.[3] (ECF No. 418-

---

produced within twenty days, carried over to the district judge's order affirming the denial of 50 North's Motion to Quash. (ECF No. 418-3 at PageID 7847.) According to Raymond James, 50 North should have produced those documents within twenty days of the affirmance. (Id.) 50 North responds that this deadline no longer applied when the appeal was resolved. (ECF No. 418-1 at PageID 7828.)

[3]The full title of this motion is "Defendant's Motion for a Protective Order to Stay Discovery Pending the Adjudication of Defendant's Motion to Dismiss / Motion to Strike, or, in the Alternative, Motion to Quash or Modify the Madison Subpoena and for a Protective Order in Relation to Plaintiff's First and Second Set of Interrogatories and Request for Production of Documents and/or to Revise the Prior Orders of the Court Concerning the Madison Subpoena and Plaintiff's First and Second Set of Interrogatories and Requests for Production of Documents." (ECF No. 418.)

1.) In this motion, 50 North argues that because all the claims relating to the condition of the building had been dismissed, it had no obligation to produce the Friedman documents. (Id.) To this end, 50 North asks the court to revise its prior orders mandating production of the Friedman documents. (Id.) 50 North also asks the court to stay discovery, including its ruling on the Motion for Protective Order, until 50 North's Motion to Dismiss the SAC has been ruled on. (Id.) Raymond James filed a response in opposition to this motion on May 25, 2022, arguing that although the FAC has been dismissed, the Friedman documents are relevant to 50 North's counterclaim and therefore still within the scope of discovery. (ECF No. 423.) Raymond James further asserts that a stay of discovery or a revision of the court's interlocutory orders would be unnecessary. (Id.) 50 North filed a reply in support of its motion on July 15, 2022. (ECF No. 432.)

During this same timeframe, Raymond James filed a Motion for Sanctions and for Attorney's Fees. (ECF No. 425.) There, Raymond James argues that 50 North should have produced the documents, as they are still relevant to 50 North's own counterclaim. (Id.) Because of 50 North's failure to do so, Raymond James asks for sanctions and attorney's fees as well as an order directing 50 North to produce the Friedman documents. (Id.) 50 North responded to this motion on July 1, 2022, arguing that because all the operative claims at the time the subpoena was issued have been

dismissed, it acted reasonably in refusing to produce the Friedman documents. (ECF No. 427.) 50 North contends that because there is now no obligation to produce the documents whatsoever, it did not engage in sanctionable conduct by refusing to do so. (Id.) Raymond James filed a reply on July 18, 2022. (ECF No. 433.) It notes that the response to its motion was filed on behalf of 50 North, not Madison, the recipient of the subpoena, and therefore its motion should be granted in full as to Madison. (Id.)  As for 50 North, Raymond James argues that all the Friedman documents remain relevant and should have been produced. (Id.) 50 North's failure to do so should thus result in sanctions. (Id.)

Finally, 50 North moved to stay this court's ruling on Raymond James's motion for sanctions pending a ruling on its motion for a protective order. (ECF No. 434.) Attached to its motion was a declaration by Jacob Sofer, who is the manager of 50 North Front. (Id.) Raymond James opposed this motion. (ECF No. 436.) It argues that the motion is "nothing more than a backdoor response on behalf of [Madison] to the Motion for Sanctions" because Madison failed to respond to the motion. (Id. at PageID 8156.) It further argues that Sofer's declaration is irrelevant and should be disregarded or stricken. (Id.)

## II.   ANALYSIS

### A.   Motion to Stay Ruling Pending Ruling on Motion for Protective Order

The court will first address 50 North's Motion to Stay the ruling on the Motion for Sanctions pending its ruling on the Motion for Protective Order. (ECF No. 434.) It is evident that the motions address factually related issues and that they must be analyzed together. Thus, in the interest of judicial economy, the court will take up both motions simultaneously. For that reason, 50 North's Motion to Stay is DENIED.

**B.   Motion to Stay Discovery Pending Ruling on Motion to Dismiss**

50 North has also asked this court to stay its ruling on the Motion for Protective Order and to stay discovery until the court has ruled on 50 North's Motion to Dismiss. As discussed in further detail below, the outcome of the motion to dismiss Raymond James's SAC will not affect the result of the present motion. Additionally, given the age of this case, the undersigned finds that a stay of discovery would create further unnecessary delay. The Motion to Stay is therefore DENIED.

**C.   Motion for Protective Order**

50 North asks this court to enter a protective order to relieve it from the obligation of responding to Raymond James's first and second sets of discovery requests. (ECF No. 418.) It is 50 North's contention that because the FAC was dismissed, the documents sought by Raymond James's discovery requests are no longer relevant to this litigation. Under the Federal Rules of Civil Procedure, parties may "obtain discovery on any non-

privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). Courts thus have discretion to limit the scope of discovery when a party's requests are overbroad. In re Ohio Execution Protocol Litig., 845 F.3d 231, 236 (6th Cir. 2016). A party who is resisting production bears the burden of establishing that the requested production is irrelevant or "of such marginal relevance that the potential harm resulting from production outweighs the presumption in favor of broad disclosure." Caldwell Tanks, Inc. v. Alelco, Inc., No. 319-cv-00927-BJB-rse, 2022 WL 15722614, at *1 (W.D. Ky. Aug. 12, 2022) (quoting Invesco Institutional (N.A.), Inc. v. Paas, 244 F.R.D. 374, 380 (W.D. Ky. 2007)). Courts are directed to balance a party's right to discovery with the need to prevent "fishing expeditions." Davis v. SIG Sauer, Inc., No. 322-cv-00010-GFVT-eba, 2023 WL 3292869, at *2 (E.D. Ky. May 5, 2023) (quoting Serrano v. Cintas Corp., 699 F.3d 884, 902 (6th Cir. 2012)).

In this case, the undersigned finds that the discovery sought by Raymond James remains relevant to a "party's claim or defense." Specifically, it is relevant to 50 North's counterclaim and Raymond James's affirmative defenses. In the counterclaim, 50 North alleges that Raymond James colluded with the previous owner of the building to ensure that 50 North purchased it. (ECF No. 286.) To this end, 50 North claims that Raymond James engaged in fraud by

- 12 -

signing an "estoppel certificate" certifying that the previous landlord was not "in default" at the time of the purchase. (Id.) 50 North relied on that estoppel certificate in deciding to purchase the building. (Id.) Shortly after the purchase was completed, Raymond James complained to 50 North about various issues with the building, including with its "elevator system . . . exterior, windows, window caulking and sealing, common areas, spire roof and security[.]" (Id. at PageID 5030-31.) Raymond James stated that these problems had arisen after 50 North purchased the building. (Id.) According to 50 North, "the conditions and issues that [Raymond James] complains about in its FAC are the same conditions that existed during [the previous] ownership of the Building, all of which [Raymond James] was fully aware when it executed the current Lease[.]" (Id. at PageID 5031.) It is clear from these allegations that the true state of the building, and the specific timeframe during which the purported decline came about, are relevant to the counterclaim and affirmative defenses.

These same topics are the subjects of Raymond James's discovery requests. The first set of RFPs seek information on the due diligence performed by 50 North prior to the purchase, the building's elevator system, and any repairs performed to improve the system. (ECF No. 423-3.) The second set of RFPs address improvements made to the building, evaluations of the building, documentation of any issues that occurred in the building, and

additional documents relating to 50 North's due diligence. (ECF No. 423-4.) All of these inquiries could reasonably produce information relevant to the counterclaim and affirmative defenses.

50 North points to language from one of this court's prior Report and Recommendation to support its claim that Raymond James's discovery is no longer relevant. On June 23, 2020, the undersigned issued a Report and Recommendation on Raymond James's Motion to Dismiss 50 North's counterclaim. (ECF No. 329.) Among Raymond James's bases for dismissal was the assertion that 50 North's claims were time-barred, as the statute of limitations started to run when the estoppel certificate was signed. (Id.) The undersigned found that "the alleged false claims in the estoppel certificate are not about the actual condition of the building's elevators, but rather Raymond James's opinions about whether the condition of those elevators constituted breach of the lease." (Id.) The undersigned further found that 50 North could not have become aware of that belief until Raymond James made it known by filing a default notice, and the statute of limitations thus did not begin to run until then. (Id.) These findings speak to the proper statute of limitations given the fraudulent conduct alleged. That language does not, however, constitute a definitive statement as to the scope of permitted discovery. The actual state of the building is relevant to the counterclaim and affirmative defenses.

For these reasons, 50 North's Motion for Protective Order is DENIED. 50 North is ORDERED produce any responsive documents in its possession from the time period of January 1, 2012, to June 30, 2021, the date that Raymond James claims it vacated the building. (ECF No. 13.)

**D.    Motion to Quash or Modify Madison Subpoena**

50 North also moves to quash the Madison subpoena, which was propounded on third-party Madison on July 26, 2018. (ECF No. 73-1 at PageID 912.) 50 North's argument for quashing the subpoena is identical to its argument for imposing a protective order: that the documents are no longer discoverable because they are no longer relevant to the claims at issue as required by Federal Rule 26(b)(1). (ECF No. 418-1 at PageID 7832.) However, as this court has already ruled, because Madison is a third party to this lawsuit, 50 North lacks standing to challenge the Madison subpoena on any basis other than privilege or personal interest. (ECF No. 97) (citing <u>Abundes v. Athens Food Servs., LLC</u>, 2015 WL 13664280, at *2 (M.D. Tenn. Sept. 18, 2015)). 50 North's claims of privilege have already been considered and rejected by the undersigned. (ECF Nos. 97, 138.) That ruling was appealed by 50 North and affirmed by the district judge. (ECF No. 401.) 50 North's only remaining basis for quashing the subpoena is that the documents it seeks are irrelevant. 50 North does not have standing to make this argument on behalf of Madison. <u>See</u> <u>Morrow v. Cmty. Health Sys. Inc.</u>, No.

- 15 -

3:16-01953, 2017 WL 2989374, at *2 (M.D. Tenn. Apr. 20, 2017);
Polylok Inc v. Bear Onsite, LLC, No. 3:12-CV-535-DJH-chl, 2016 WL
7320889, at *2 (W.D. Ky. Dec. 15, 2016). Madison has not brought
its own Motion to Quash on this basis. 50 North's Motion to Quash
is therefore DENIED.

There is also some dispute between the parties as to the time
frame for which Madison is required to produce documents. According
to Raymond James, Madison's duty to supplement discovery means
that Madison must provide all responsive documents up to the
present day. (ECF No. 423.) 50 North argues that if there is any
obligation to produce documents, this obligation does not span to
the present. (ECF No. 432.) Based on the issues set forth in the
counterclaim, the undersigned finds that it is not necessary for
Madison to produce documents up to the present day. Instead,
Madison is ORDERED to produce any responsive documents in its
possession from the time period of January 1, 2012, to June 30,
2021, the date that Raymond James claims it vacated the building.
(ECF No. 13.)

**E.   Motion to Revise Interlocutory Orders**

50 North asks the court to revise its prior orders directing
it to respond to Raymond James's discovery requests because there
has been a material change in fact or law since the entry of those
orders. Federal Rule 54(b) permits the court to revise an order
that "adjudicates fewer than all the claims or the rights and

- 16 -

liabilities of fewer than all the parties" at any time. Fed. R. Civ. P. 54(b). This district's local rules permit such a revision if one of three conditions are satisfied. The rule states:

> A motion for revision must specifically show: (1) a material difference in fact or law from that which was presented to the Court before entry of the interlocutory order for which revision is sought, and that in the exercise of reasonable diligence the party applying for revision did not know such fact or law at the time of the interlocutory order; or (2) the occurrence of new material facts or a change of law occurring after the time of such order; or (3) a manifest failure by the Court to consider material facts or dispositive legal arguments that were presented to the Court before such interlocutory order.

LR 7.3(b). 50 North contends that it has demonstrated the occurrence of new material facts because Raymond James's claims that were pending at the time of the discovery requests have since been dismissed. (ECF No. 418-1 at PageID 7834.)

The undersigned acknowledges that there have been changes to the scope of litigation since the court entered its orders directing 50 North to comply with Raymond James's discovery requests. However, these changes are not material to the discovery at issue. Although it is true that Raymond James's FAC has been dismissed, 50 North has also filed a counterclaim that brings many of the same issues to the fore. As discussed above, Raymond James's discovery requests continue to seek relevant information despite the changes to the pending claims and defenses in this case. 50 North's Motion to Revise is therefore DENIED.

**F.    Motion for Sanctions**

Raymond James asks the court to impose sanctions on 50 North for its failure to provide the Friedman documents within twenty days of entry of the court's final order. The court may impose sanctions when a party "fails to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2)(A). For sanctions to be justified, "[t]he Sixth Circuit requires either a specific finding of bad faith or conduct that was tantamount to bad faith." McComas v. Mkt., No. CV 16-217-WOB-cjs, 2020 WL 12698021, at *3 (E.D. Ky. Nov. 30, 2020) (citing First Bank of Marietta v. Hartford Underwriters Ins. Co., 307 F.3d 501, 519 (6th Cir. 2002)). A "mere mistake" is not sufficient to justify the imposition of sanctions. Wilson ex rel. Doe v. Columbus Bd. of Educ., No. CIV. A. 2:06-CV-642, 2008 WL 2839475, at *3 (S.D. Ohio July 21, 2008) (citing Mann v. Univ. of Cincinnati, 114 F.3d 1188, 1997 WL 280188, at *5 (6th Cir. 1997)).

In this case, 50 North and Madison withheld the Friedman documents following the entry of a final order on the Motion to Quash because they contended that "the subpoena requests documents that are now irrelevant to the limited claims that are pending before the court." (ECF No. 425-2 at PageID 8025.) As discussed above, 50 North's contention is incorrect. The discovery requested remains relevant to the counterclaim and affirmative defenses. However, the court does not find that 50 North's position was taken

in bad faith. The district judge entered a final order denying the Motion to Quash on March 21, 2022. (ECF No. 401.) On April 21, 2022, counsel for Raymond James emailed counsel for 50 North to request that Madison or 50 North produce the documents requested by the subpoena. (ECF No. 423-1.) Counsel for 50 North responded on April 25, 2022, stating that 50 North would not produce the documents and would move for a protective order to that effect. (ECF No. 423-2.) On May 11, 2022, that motion was filed. (ECF No. 418.) Although 50 North should have acted sooner in either producing the Friedman documents or filing its Motion for Protective Order, this delay is not conduct tantamount to bad faith. Raymond James's Motion for Sanctions is therefore DENIED.

## G.  Motion for Attorney's Fees

Raymond James also requests that the court order 50 North to pay attorney's fees for costs incurred addressing its failure to produce the Friedman documents. If a party fails to obey an order to provide discovery, "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure." Fed. R. Civ. P. 37(b)(2)(C). Additionally, if a motion for protective order is denied, the movant is obligated to pay the opposing party's reasonable expenses. Knox Trailers, Inc. v. Clark, No. 3:20-CV-137-TRM-dcp, 2021 WL 5761635, at *3 (E.D. Tenn. Dec. 3, 2021) (citing Fed. R. Civ. P. 26(c)(3), 37(a)(5)). But the court

may not impose these expenses if "(1) the party filing the motion to compel was substantially justified in seeking the motion; or (2) other circumstances make an award of expenses unjust." Eagle v. Hurley Med. Ctr., 292 F.R.D. 466, 481 (E.D. Mich. 2013) (citing Fed. R. Civ. P. 37(a)(5)(B)). A party's action is "substantially justified" if "reasonable people can differ as to the appropriateness of the contested action." Doe v. Lexington-Fayette Urban Cty. Gov't, 407 F.3d 755, 765 (6th Cir. 2005).

In this case, the undersigned finds that the Motion for Protective Order was substantially justified. Reasonable minds may have differed as to the impact of the dismissal of the FAC on 50 North's discovery obligations. Raymond James's FAC was filed on May 29, 2018. (ECF No. 41.) The discovery requests and the Madison subpoena were served in July of that year. (ECF No. 423.) 50 North moved to quash the subpoena and for a protective order on August 8, 2018. (ECF Nos. 73, 74.) The undersigned ruled on those motions later in 2018. (ECF Nos. 97, 107, 138.) 50 North filed its appeal of the order denying the Motion to Quash on January 1, 2019. (ECF No. 142.) Meanwhile, 50 North did not file its counterclaim until December 19, 2019, well over a year after the documents had been requested. (ECF No. 286.) When the appeal of the discovery order relating to the FAC was ruled on, the FAC by that time had been dismissed, and there existed a good faith dispute as to whether the discovery remained relevant. This is especially true given the

complexity of this case and the passage of time between the initial discovery dispute and its final resolution. For these reasons, Raymond James's Motion for Attorney's Fees is DENIED.

### III. CONCLUSION

For the reasons above, all three motions are DENIED. 50 North and Madison are ordered to produce the Friedman documents within thirty days of the date of this order.

IT IS SO ORDERED.

s/ Tu M. Pham
TU M. PHAM
Chief United States Magistrate Judge

June 6, 2023
Date