# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

| | | |
|---|---|---|
| **RAYMOND JAMES & ASSOCS., INC.,** | ) | |
| | ) | |
| **Plaintiff/Counter-Defendant,** | ) | |
| | ) | |
| **v.** | ) | **Case Nos. 2:18-cv-02104-JTF-tmp** |
| | ) | **2:21-cv-02433-JTF-tmp** |
| | ) | |
| **50 NORTH FRONT ST. TN, LLC,** | ) | |
| | ) | |
| **Defendant/Counter-Plaintiff.** | ) | |

---

## ORDER DENYING MOTION FOR RECONSIDERATION; DISMISSING CLAIM ON SUA SPONTE RECONSIDERATION; CERTIFYING ORDER FOR INTERLOCUTORY APPEAL

---

The Court has rejected most of Plaintiff/Counter-Defendant Raymond James & Associates, Inc.'s, ("RJA") tort claims twice. (ECF Nos. 339 & 391.) However, following a purported change in the governing law, RJA seeks to revive these claims via its March 25, 2025 Motion requesting either reconsideration of those prior decisions, or permission to immediately appeal the decision via Fed. R. Civ. P. 54(b) or 28 U.S.C. § 1292(b). (ECF No. 502.) On April 8, 2025, Defendant/Counter-Plaintiff 50 North Front St. TN, LLC ("50 North") filed its Response. (ECF No. 504.) RJA filed its Reply on April 18, 2025. (ECF No. 507.) For the reasons set forth below, the motion for reconsideration is **DENIED**. The Court **DISMISSES** RJA's fraud claim on *sua sponte* reconsideration. Last, the Court **CERTIFIES** this Order for interlocutory appeal under 28 U.S.C. § 1292(b).

## I.    BACKGROUND[1]

By way of multiple assignments and assumptions of prior parties' obligations, RJA came to be the lessor of commercial real estate in a building owned by 50 North. (ECF No. 498, 1.) The building is old. (*Id.*) There are elevator and waterproofing issues. (*Id.*) Since 2018, the parties have litigated their contractual obligations regarding these conditions; each has alleged that the other's failure to meet its obligations amounts to a breach of contract and/or a tort. (*Id.* at 8-10.) At issue here are RJA's previously asserted tort claims. RJA argues that these claims must be reinstated because the Court dismissed them pursuant to a doctrine that is no longer applicable. The Court provides a detailed summary of each order addressing these tort claims below.

### A.  The First Amended Complaint, February 2020 R&R, and July 2020 Order

In its First Amended Complaint ("FAC") filed on May 29, 2018, RJA alleged, *inter alia*, that 50 North owed it a duty to provide adequate elevator service and breached this duty by being grossly negligent in its failure to provide such service. (ECF No. 41-1, 20.) The Court referred the motion to Chief Magistrate Judge Tu Pham for Report and Recommendation ("R&R"). (ECF No. 284.) The February 2020 R&R recommended that the gross negligence claim be dismissed because 50 North did not breach any duty owed to RJA independently of the contract, and Tennessee law does not recognize a tort duty to refrain from breaching a contract. (ECF No. 301, 25.) The Court adopted that recommendation and dismissed the tort claim in its July 2020 Order. (ECF No. 339, 28.)

---

[1] For a more thorough recitation of this case's facts, see the Court's March 2025 Order Denying Motion for Summary Judgment. (ECF No. 498, 2-10.)

**B.  The Proposed Second Amended Complaint, July 2021 R&R, and January 2022 Order**

RJA sought leave to file its Proposed Second Amended Complaint ("PSAC") on May 15, 2020. (ECF No. 324-2.) In its PSAC, RJA alleged, *inter alia*, that (1) 50 North and its president, Jacob Sofer ("Sofer") were liable for "gross negligence, willful and intentional conduct/prima facie tort"  ("gross negligence");[2] (2) 50 North and Sofer were liable for nuisance for interfering with its use, occupation, and enjoyment of its leasehold interest and other interests involving the building; and (3) 50 North was liable for fraud for billing inflated amounts for property taxes. (ECF No. 324-2, 47-52.) The Court referred RJA's Motion for Leave to File its PSAC to Judge Pham for R&R. (ECF No. 361.)

The July 2021 R&R recommended that leave to amend be denied with respect to the gross negligence claim against 50 North because RJA failed to allege that 50 North breached a duty owed to RJA independently of the contract (hereinafter "the independent duty doctrine" or "the independent duty rule"). (ECF No. 375, 12.) It also recommended that leave to amend be denied with respect to the nuisance claim against 50 North because Sections 25 and 28 of the Lease barred it, and the claim also failed to satisfy the independent duty rule. (*Id.* at 20-21.) The R&R did recommend that RJA be granted leave to amend with respect to the fraud claim against 50 North because it was plausibly pleaded. (*Id.* at 21.)

Magistrate Judge Pham recommended that leave to amend be denied with respect to the gross negligence and nuisance claims against Sofer because (1) the claims did not satisfy the independent duty rule; (2) Section 40 of the Lease barred RJA from holding Sofer personally

---

[2] The Court follows RJA's lead in treating these three causes of action as essentially a single claim. Separating the claims out would not change this Order's conclusions.

liable for actions stemming from the Lease; and (3) RJA failed to allege facts sufficient to support its claim for piercing the corporate veil to reach Sofer. (*Id.* at 25-29.)

The Court adopted Judge Pham's recommendations and rationales on the tort claims in its January 2022 Order. (ECF No. 391, 14-20.)

### C. The Second Amended Complaint, July 2023 R&R, and April 2024 Order

RJA filed its Second Amended Complaint ("SAC") on February 10, 2022. (ECF No. 393.) 50 North filed its Motion to Dismiss or, in the Alternative, Motion to Strike the SAC ("Motion to Dismiss the SAC") on March 7, 2022. (ECF No. 396.) The Court referred the Motion to Dismiss the SAC to Judge Pham for R&R. (ECF No. 439.) In his July 2023 R&R, Judge Pham noted that the SAC was largely identical to the surviving claims from the PSAC. (ECF No. 455, 3.) However, he now recommended that RJA's fraud claim be dismissed because (1) to recover in tort, RJA was required to demonstrate that Tennessee had recognized an independent duty not to commit fraud, but had failed make that showing; and (2) the fraud claim was barred by the economic loss doctrine. (ECF No. 455, 12 & 17.) The R&R also recommended that the Court strike the SAC's factual allegations pertaining to the tort claims that were previously dismissed and/or that exceeded the scope of the Court's Order granting RJA leave to amend. (*Id.* at 19-20.)

Two months after Judge Pham filed his R&R, the Tennessee Supreme Court declined to expand the economic loss doctrine beyond products liability claims and noted that it "ha[d] not adopted the independent duty doctrine, so any future role of the doctrine in Tennessee remains theoretical." *Com. Painting Co. Inc. v. Weitz Co. LLC*, 676 S.W.3d 527, 541-42 (Tenn. 2023). RJA argued that this decision undermined Judge Pham's latest R&R because it meant that neither the economic loss doctrine nor the independent duty doctrine applied, and those were the two bases upon which Judge Pham recommended that the fraud claim be dismissed. (ECF No. 468.)

The Court agreed and declined to adopt Judge Pham's recommendation that the fraud claim be dismissed in its April 2024 Order and November 2024 Order clarifying the April 2024 Order. (ECF Nos. 491, 4-7 & 497, 3.) The Court adopted Judge Pham's recommendation that the irrelevant allegations be stricken. (ECF No. 491, 8.)

**D. The Motion for Reconsideration**

RJA now seeks to revive its twice and thrice dismissed tort claims. RJA contends revival is warranted because the Court's previous dismissals of these claims were similarly predicated on the economic loss and independent duty doctrines' application, and both doctrines are now inapplicable. (ECF No. 502, 7-15.) Should the Court deny its Motion for Reconsideration, RJA requests that the Court permit it to immediately appeal. (*Id.* at 6.) 50 North maintains that reconsideration is unnecessary because the Court previously dismissed these claims on grounds independent of the economic loss and independent duty doctrines. (ECF No. 504, 8.) Alternatively, 50 North contends that any claims dismissed on the ground that they ran afoul of the independent duty doctrine remain dismissed because *Commercial Painting*'s conclusion regarding the doctrine was in dictum. (*Id.* at 10.) 50 North also urges that interlocutory appeal would not be appropriate here. (*Id.* at 12-13.)

## II.    LEGAL STANDARDS

**A.  Reconsideration of Interlocutory Orders**

A district court has the inherent power to reconsider, rescind, or modify an interlocutory order before entry of a final judgment. *Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 118 F. App'x 942, 945–46 (6th Cir. 2004) (citing *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991)). Under Federal Rule of Civil Procedure 54(b), a court may revise "any [interlocutory] order or other decision . . . at any time before the entry of a judgment adjudicating all the claims and all the

parties' rights and liabilities." Fed. R. Civ. P. 54(b); *see also Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004) ("District courts have authority both under common law and Rule 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment.").

Courts revise interlocutory orders only when "there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice.'" *Louisville Jefferson Cty. Metro. Gov't v. Hotels.com, L.P.*, 590 F.3d 381, 389 (6th Cir. 2009).

Under Local Rule 7.3, a motion to revise an interlocutory order must show:

(1) a material difference in fact or law from that which was presented to the Court before entry of the interlocutory order for which revision is sought, and that in the exercise of reasonable diligence the party applying for revision did not know such fact or law at the time of the interlocutory order; or
(2) the occurrence of new material facts or a change of law after the time of such order; or
(3) a manifest failure by the Court to consider material facts or dispositive legal arguments that were presented to the Court before such interlocutory order.

W.D. Tenn. R. 7.3(b).

### B. Appeal before a Final Decision

Generally, appeals may only be taken from final decisions of district courts. 28 U.S.C. § 1291. There are exceptions to this rule. Two are at issue here, Fed. R. Civ. P. 54(b) and 28 U.S.C § 1292(b). The two are similar; they share a "basic design[s]" and allow for an "immediate appeal before an entire case has been determined[.]" 10 Wright & Miller, Fed. Prac. & Proc. Civ. § 2658.2 (4th ed. 2022).

### i. Rule 54(b)

Under Rule 54(b), a district court may direct entry of a final judgment as to one or more, but fewer than all, claims in an action presenting more than one claim or involving multiple parties if it determines that there is no just reason for delay. Fed. R. Civ. P. 54(b). This involves a two-

step process. *See Planned Parenthood Sw. Ohio Region v. DeWine*, 696 F.3d 490, 500 (6th Cir. 2012).

Rule 54(b)'s first step "is satisfied where some decision made by the district court ultimately disposes of one or more but fewer than all of the claims or parties in a multi-claim/multi-party action." *Gen. Acquisition, Inc. v. GenCorp, Inc.*, 23 F.3d 1022, 1026 (6th Cir. 1994). "Claim" in this context is a term of art. *See Sherrod v. Wal-Mart Stores, Inc.*, 103 F.4th 410, 413 (6th Cir. 2024) (citation omitted). It is "the aggregate of operative facts which give rise to a right enforceable in the courts." *Id.* (quoting *McIntyre v. First Nat'l Bank of Cincinnati*, 585 F.2d 190, 192 (6th Cir. 1978) (per curiam)). This means that two separate causes of action can amount to the same claim where the operative facts underlying both are the same. *See id.*

At step two, the district court must expressly determine that there is no just reason to delay appellate review, and it "requires consideration of 'judicial administrative interests as well as the equities involved.'" *Lowery v. Fed. Express Corp.*, 426 F.3d 817, 821 (6th Cir. 2005) (quoting *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8 (1980)). The Sixth Circuit has provided the following non-exhaustive list of factors for consideration when making this determination:

> (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.

*Corrosioneering, Inc. v. Thyssen Envtl. Sys. Inc.,* 807 F.2d 1279, 1283 (6th Cir. 1986) (citations omitted).

### ii.    Section 1292(b)

Certification of an order for interlocutory appeal is appropriate when an order "[1] involves a controlling question of law [2] as to which there is substantial ground for difference of opinion and [3] that an immediate appeal from the order may materially advance the ultimate termination of the litigation." *Ragland by & through Mitchell v. Shelby Cnty., Tennessee*, No. 2:22-CV-2862-SHL-ATC, 2024 WL 3554882, at *1 (W.D. Tenn. July 26, 2024) (alteration in original) (quoting 28 U.S.C. § 1292(b)). "Review under § 1292(b) is granted sparingly and only in exceptional cases." *Lofgren v. Polaris Indus. Inc.*, 526 F. Supp. 3d 322, 326 (M.D. Tenn. 2021) (quoting *In re City of Memphis*, 293 F.3d 345, 349 (6th Cir. 2002)). "The party seeking an interlocutory appeal has the burden of showing exceptional circumstances exist warranting an interlocutory appeal." *Id.* (quoting *Gieringer v. Cincinnati Ins. Cos.*, No. 3:08-CV-267, 2010 WL 2572054, at *2 (E.D. Tenn. June 18, 2010)). "[D]istrict court judges have broad discretion to deny certification even where the statutory criteria are met." *Wang v. Gen. Motors, LLC*, No. CV 18-10347, 2019 WL 1950185, at *1 (E.D. Mich. May 2, 2019) (quoting *Century Pac., Inc. v. Hilton Hotels Corp.*, 574 F. Supp. 2d 369, 370 (S.D.N.Y. 2008)).

### III.    ANALYSIS

This Order proceeds in six parts. First, it examines the two doctrines at issue in Part III.A. Second, it considers *Commercial Painting*'s conclusions with regard to these doctrines in Part III.B. Third, it reviews its prior orders to determine which dispositions could actually be impacted by the Court's conclusion in this Order in Part III.C. Fourth, it anticipates or predicts how the Tennessee Supreme Court would rule in Part III.D. Fifth, it applies the law consistent with its prediction in Part III.E. Sixth, it assesses whether this Order should be immediately appealable under Rule 54(b) or § 1292(b) in Part III.F.

## A.  The Economic Loss and Independent Duty Doctrines

The economic loss doctrine "precludes a contracting party who suffers only economic losses from recovering damages in tort." *Com. Painting Co. Inc. v. Weitz Co. LLC*, 676 S.W.3d 527, 528 (Tenn. 2023). The purpose of the rule is to "preserve [ ] the important distinction between contract and tort law" and to "prevent the 'tortification' of contract law." *Id.* at 532 (alteration in original) (quoting Jeffrey L. Goodman, Daniel R. Peacock & Kevin J. Rutan, *A Guide to Understanding the Economic Loss Doctrine*, 67 Drake L. Rev. 1, 3–4 (2019)). The Tennessee Supreme Court adopted this rule in 2009. *Id.* (citing *Lincoln Gen. Ins. Co. v. Detroit Diesel Corp.*, 293 S.W.3d 487, 488 (Tenn. 2009)).

The independent duty doctrine provides that "[a] tort action only arises when the act constituting the contract breach also constitutes a breach of a common law duty independent of the contractual relationship." *E Sols. For Bldgs., LLC v. Knestrick Contractor, Inc*., No. M2018-02028-COAR3-CV, 2019 WL 5607473, at *9 n.7 (Tenn. Ct. App. Oct. 30, 2019) (quoting *Yinghong Mach. Int'l Ltd. v. Wholesale Equip*., Co., No. 2:13-cv-02671-JTF-cgc, 2014 WL 12887673, at *4 (W.D. Tenn. Oct. 17, 2014)); *see also 21 Tenn. Prac. Contract Law and Practice* § 1:4 (citing *Weese v. Wyndham Vacation Resorts*, No. 3:07-CV-433, 2009 WL 1884058 (E.D. Tenn. 2009)) ("Only where the act constituting a breach of contract also constitutes a breach of a legal duty independent of the contract does an action arise in tort and not in contract."). A recent decision in this district applied the doctrine in a case where Tennessee law governed *See JWM Memphis, LLC v. Terracon Consultants, Inc*., No. 2:24-CV-02316-TLP-ATC, 2025 WL 938633, at *7 (W.D. Tenn. Mar. 27, 2025) (citations omitted).

The two doctrines are interrelated, although the contours of that relationship are imprecise. Courts applying Tennessee law have construed the independent duty doctrine as a standalone rule

and as an exception to the economic loss doctrine. *Compare Weese*, 2009 WL 1884058, at *6 (citations omitted) *with Com. Painting Co. Inc.*, 676 S.W.3d at 553 (Campbell, J. dissenting) (explaining that exceptions to the economic loss doctrine in jurisdictions that have extended the doctrine to contacts for services are the flipside of the independent duty doctrine). Other state courts have also construed the independent duty doctrine as an exception to the economic loss doctrine. *See Rattagan v. Uber Techs., Inc.*, 17 Cal. 5th 1, 20 (2024); *see also Singh v. Illusory Sys., Inc.*, 727 F. Supp. 3d 500, 511 (D. Del. 2024) (collecting cases) (applying Utah law and explaining that the independent duty doctrine is an exception to the economic loss doctrine). Elsewhere, courts have concluded that "a more accurate designation of what is commonly termed the 'economic loss rule' would be the 'independent duty rule.'" *Eastwood v. Horse Harbor Found., Inc.*, 170 Wash. 2d 380, 394 (2010) (quoting *Town of Alma v. Azco Constr., Inc.*, 10 P.3d 1256, 1262 n.8 (Colo. 2000)). That is to say that some courts have concluded that these are just two different names for the same doctrine.

### B. *Commercial Painting*

In *Commercial Painting*, the Tennessee Supreme Court considered two issues: (1) whether the Court of Appeals erred in expanding the application of the economic loss doctrine outside of the products liability context; and (2) whether the Court of Appeals erred in vacating the trial court's award of fees and in limiting the scope of fees on remand. 676 S.W.3d at 532. Relevant to this case is the Tennessee Supreme Court's ruling that the economic loss doctrine does not apply outside of the products liability context, and its statement that "this Court has not adopted the independent duty doctrine, so any future role of the doctrine in Tennessee remains theoretical." *Id.* at 541-42. The Tennessee Supreme Court's statement regarding the independent duty doctrine was

not responsive to either of the issues that it was considering on appeal.[3] *Id.* at 532. Thus, the statement was in dictum.[4]

### C. Claims Impacted by the Independent Duty Doctrine

50 North contends that the Court need not entertain *Commercial Painting*'s conclusion regarding the independent duty doctrine because its previous dismissals and/or rejections of RJA's tort claims rested on the Lease's exculpatory provisions and limitations on remedies in addition to the independent duty doctrine. (ECF No. 504, 5-7.) The argument is that the claims would remain dismissed even if the independent duty doctrine were deemed inapplicable, because dismissal would still be appropriate on those alternative grounds. RJA points out that the Court's prior Order addressing the SAC dispatched the tort claims primarily on the ground that it had failed to plead the existence of a duty aside from a duty not to breach a contract. (ECF No. 507, 4.) This warrants further discussion.

Going all the way back to the Court's July 2020 Order addressing 50 North's Motion to Dismiss RJA's First Amended Complaint, the Court made clear that it was dismissing RJA's gross negligence claim because "RJA merely point[ed] to the conduct surrounding the breach of contract claim and assert[ed] that [50 North] should be held liable." (ECF No. 339, 27-28.) The next line quoted a holding that the first element of a negligence claim fails where it is based only on a breach of contractual obligation. (*Id.* at 28.) Even though the Court did not expressly invoke the independent duty doctrine, the Court was clearly applying it there. To be sure, the Court did also say that "this conclusion could have been reached, and RJA's tort claim dismissed, through its

---

[3] The Court of Appeals held that Weitz had waived his argument that the independent duty doctrine precluded Commercial Painting's tort claims. *Id.* at 552 n.4 (Campbell, J. dissenting).

[4] This conclusion is bolstered by the following observation: as the caselaw and briefings demonstrate, an outright rejection of the independent duty doctrine would amount to a sea change in commercial litigation in this state. Contract law would essentially collapse into tort law. While it is not the Court's place to disagree with or contest the virtue of decisions from Tennessee's highest court, it must assume that the Tennessee Supreme Court did not intend to work a change of this scale in just a few sentences.

interpretation and application of Section 11(e) . . . ." (*Id.* at 24.) That the Court indicated it could have reached the same conclusion on different grounds does not change the fact that it dismissed the claim solely on the ground that it violated the independent duty doctrine.

The Court's January 2022 Order addressing RJA's motion for leave to file its PSAC is a little more complicated. The claims against Sofer failed under the independent duty doctrine, Section 40 of the Lease, and for failure to allege facts sufficient to support piercing the corporate veil. (ECF No. 391, 17 & 19.) Thus, leave to amend to allege these claims was denied on more grounds than the independent duty doctrine. Thus, if the Court were to deem the independent duty doctrine inapplicable, the claims would remain dismissed. The same is true for the nuisance claim against 50 North, which was dismissed on application of Sections 25 and 28 of the Lease, and the independent duty doctrine. (*Id.* at 15-16.) The proposed gross negligence claim against 50 North was the only proposed claim for which the Court determined that granting leave to amend would be futile based solely on the independent duty doctrine's application. (*Id.* at 13.)

To summarize, RJA's proposed gross negligence claim against 50 North is the only claim that *could be* reinstated if the Court were to find that the independent duty doctrine is inapplicable. This claim is addressed in more detail in *See infra* III.E.i.

But this does not end the discussion. Although the parties did not address this matter in their briefings, RJA's live fraud claim may also be impacted by the Court's ruling on this Motion. The July 2023 R&R addressing that claim's viability recommended that it be dismissed primarily because it ran afoul of the economic loss doctrine.[5] (ECF No. 455, 17.) However, as explained in that R&R, and as alluded to in its conclusion that the fraud claim is related to "50 North's duties

---

[5] It was and continues to be undisputed that Commercial Painting's holding—that the economic loss doctrine only applies in products liability cases—directly undermined the R&R's conclusion that RJA's fraud claim was barred by the economic loss doctrine.

under the contract," Judge Pham also recommended that it be dismissed because it violated the independent duty doctrine, since RJA failed to demonstrate the existence of an independent duty not to commit fraud. (*See id.* at 12 & 17.) In its two orders addressing that R&R, the Court took *Commercial Painting*'s statement on the independent duty doctrine to mean that the doctrine was inapplicable. (*See* ECF Nos. 491, 4 & 497, 3.) Since *Commercial Painting* clearly rejects the economic loss doctrine's extension to bar the fraud claim, the fraud claim's viability now depends on the Court's conclusion as to whether the independent duty doctrine applies, and if so, whether it was satisfied here. *See infra* III.E.ii.

### D.  The Court's Prediction

At issue is whether the Tennessee Supreme Court's obiter dictum regarding the independent duty doctrine should be treated as an express rejection of the doctrine, or as an indicator that the Tennessee Supreme Court would reject the doctrine were it fully briefed and presented in an appropriate case.[6] To repeat, the Court followed the former interpretation in its orders addressing the July 2023 R&R, but those were summary conclusions reached without the benefit of briefing in opposition. The Court readdresses that conclusion now.

The inquiry begins with Part III.B.'s conclusion that *Commercial Painting*'s statement regarding the independent duty doctrine was in dictum. That means that the Court is not bound by it. *See Walker v. Felmont Oil Corp.*, 240 F.2d 912, 917 (6th Cir. 1957) (citing *Copper S.S. Co. v. State of Michigan*, 194 F.2d 465, 468 (6th Cir. 1952)) ("Dictum from the state court of last resort is not binding upon the District Court in a diversity of citizenship action.").

---

[6] Even if the statement was not in dictum, the Court is not persuaded that it would foreclose the possibility that the independent duty doctrine applies in Tennessee. The "any future role of the doctrine in Tennessee remains theoretical" language suggests the Tennessee Supreme Court intended to save this question for another day. 676 S.W.3d at 541-42.

Considering the lack of binding authority from the Tennessee Supreme Court as to whether the independent duty doctrine applies in Tennessee, it is appropriate to treat this just the same as a case where the state supreme court has not squarely addressed the issue presented. In this scenario, the Court must anticipate or predict how the Tennessee Supreme Court would rule by considering all available data. *Prestige Cas. Co. v. Michigan Mut. Ins. Co.*, 99 F.3d 1340, 1348 (6th Cir. 1996) (quoting *Kingsley Assoc. v. Moll PlastiCrafters, Inc.*, 65 F.3d 498, 507 (6th Cir. 1995)). "Relevant data include decisions of the state appellate courts, and those decisions should not be disregarded unless [the Court is] presented with persuasive data that the [Tennessee] Supreme Court would decide otherwise." *Allstate Ins. Co. v. Thrifty Rent-A-Car Sys., Inc.*, 249 F.3d 450, 454 (6th Cir. 2001) (quoting *Kingsley*, 65 F.3d at 507).

A survey of Tennessee caselaw and all available data persuades the Court that the Tennessee Supreme Court would adopt the independent duty doctrine, despite its cautioning that the doctrine's role remains hypothetical. First, there is no shortage of Tennessee Court of Appeals decisions relying on the independent loss doctrine. *See E Sols. For Bldgs.*, 2019 WL 5607473, at *9 n.7 (cleaned up); *see also Thomas & Assocs., Inc. v. Metro. Gov't of Nashville & Davidson Cnty.*, 2003 WL 21302974, at *6, 2003 Tenn. App. Lexis 425, at *18 (Tenn. Ct. App. June 6, 2003) (citations omitted) ("Conduct constituting breach of contract becomes tortious only when it also violates a duty, independent of the contract, arising from wider principles of social responsibility."); *Green v. Moore*, No. M200003035COAR3CV, 2001 WL 1660828, at *3 (Tenn. Ct. App. Dec. 28, 2001) (citation omitted) ("The gravamen of an action is in tort and not in contract, however, when an act constituting a contractual breach also constitutes a breach of a common law duty independent of the contract."); *Oak Ridge Precision Indus., Inc. v. First*

14

*Tennessee Bank Nat. Ass'n*, 835 S.W.2d 25, 30 (Tenn. Ct. App. 1992) (rejecting attempt to recast contractual claims "in language of tort" where negligence claim relied on breach of contract).

Second, other judges in this district have applied the independent duty doctrine when applying Tennessee law. *See, e.g., JWM Memphis, LLC v. Terracon Consultants, Inc.*, No. 2:24-CV-02316-TLP-ATC, 2025 WL 938633, at *7 (W.D. Tenn. Mar. 27, 2025); *TNIJACI01 Good 961 Lower Brownsville Rd. LLC v. FC Cox Constr., LLC*, No. 122CV01015STAJAY, 2023 WL 4504596, at *8 (W.D. Tenn. Feb. 14, 2023).

Third, and independent of Tennessee state and federal courts' appraisal of the doctrine, the Court notes that the independent duty doctrine seems to flow from the very definition of a tort, which is "A civil wrong, *other than breach of contract*, for which a remedy may be obtained." TORT, Black's Law Dictionary (12th ed. 2024) (emphasis added).

To summarize, data supporting the anticipation that the Tennessee Supreme Court would adopt the independent duty doctrine includes over 30 years of Tennessee Court of Appeals decisions explicitly or implicitly relying on the doctrine, instances of federal courts relying on the doctrine when Tennessee state law governed before and after *Commercial Painting*, and the observation that the independent duty doctrine seems to flow directly from the definition of a tort. Data weighing against this include *Commercial Painting*'s dictum that only went so far as to advise that the Tennessee Supreme Court had not formally adopted the doctrine, and this Court's equally brief description of that case's effect on this matter in two prior rulings. From this data, the Court predicts that the Tennessee Supreme Court would adopt the independent duty doctrine if the issue were presented in an appropriate case.

### E.    Consequences of the Court's Prediction

In Part III.D. the Court all but predicted that the Tennessee Supreme Court would adopt the independent duty doctrine if presented with the opportunity to do so. How does that impact Part III.C.'s conclusions about the claims impacted by the independent loss doctrine?

### i.    Gross Negligence Claim—Dismissed via July 2020 and January 2022 Orders

First, RJA's gross negligence claim will not be revived. Since the independent duty doctrine still applies, RJA must show that the gross negligence claim arises from an act that is a breach of a common law duty independent of the contractual relationship. *See Sols. For Bldgs.*, 2019 WL 5607473, at *9 n.7 (cleaned up). RJA has not raised any new arguments on this point, so the gross negligence claim continues to violate the independent duty doctrine. It therefore remains dismissed.

### ii.    Fraud Claim—Withstood Motion to Dismiss via April 2024 Order

Second, the Court must reassess its conclusion regarding the fraud claim. The Court rejected the R&R's conclusion that the claim ran afoul of the independent duty doctrine based on its conclusion that *Commercial Painting* made the doctrine inapplicable. (ECF Nos. 491, 4 & 496, 2-3.) That is inconsistent with the Court's conclusion in this Order.

Because the Court rejected the independent duty doctrine's application outright, it did not entertain the parties' arguments as to whether there exists an independent duty not to commit fraud in the State of Tennessee. Thus, the Court must now reconsider its prior ruling rejecting the R&R's recommendation that RJA's fraud claim be dismissed *sua sponte*. While this is generally dispreferred, it is a necessary step given the state of the record in this case, and the complications that would arise if the Court were to allow these inconsistent rulings to stand.

Underlying the fraud claim is RJA's allegation that during the pendency of this lawsuit, 50 North charged it for illegitimate expenses and fraudulently withheld credits that it should have

received due to reductions in the building's property tax assessment. (ECF No. 495, 9.) RJA claims that this amounts to fraud because 50 North submitted "inflated" Expense Statements to RJA that did not account for the property tax savings, "a share of which should have been credited to [RJA] per the terms of the Lease." (*Id.* at 8-9.)

As the language from RJA's Revised Second Amended Complaint quoted above reflects, the fraud claim chiefly alleges that 50 North breached a term of the Lease requiring it to credit tax savings to RJA by submitting expense statements knowing that they contained materially false statements about the tax credits. (*See id.*) These statements are allegedly false because they do not satisfy certain terms of the Lease. (*See id.*) Thus, the statements allegedly amount to false representations because they violate the Lease's terms. Judge Pham concluded (correctly) that the allegations undergirding RJA's fraud claim amount to a breach of contract claim. (*See* ECF No. 455, 12.) It follows then that RJA can only proceed with this fraud claim if it could show that this alleged breach constituted a breach of a common law duty independent of its contractual relationship with 50 North. *See E Sols. For Bldgs.*, 2019 WL 5607473, at *9 n.7 (cleaned up).

RJA objected to the July 2023 R&R's conclusion that it failed to show that Tennessee had recognized an independent duty not to commit fraud. RJA claimed that it had made such a showing because (1) no particularized duty is required to establish fraud; and (2) the duty not to commit fraud flows from Tennessee's strong public policy against fraud. (ECF No. 457, 7.) It is unclear what argument RJA is trying to advance in (1). It seems RJA is arguing that the independent duty doctrine is either inapplicable or automatically satisfied in this instance because "duty" is not an element of a fraud claim in Tennessee. RJA offers no support for either proposition, and the Court is unsure how they would show that 50 North breached a duty independent of the contract. As for (2), RJA contends that the Tennessee Supreme Court's stated "abhorrence of fraud," and

subsequent explanation that a party cannot exempt itself from liability for intentional wrongdoing (such as fraud), implies the existence of an independent duty not to commit fraud. (*Id.* at 8 (quoting *Milan Supply Chain Sols., Inc. v. Navistar, Inc.*, 627 S.W.3d 125, 154 (Tenn. 2021)).)

None of this shows that there exists an independent duty not to commit fraud, or that RJA's fraud claim stems from a duty independent of the contract. Contrarily, a plain reading of RJA's Revised Second Amendment Complaint demonstrates that this is little more than a breach of contract claim dressed in the language of tort.

The Court, acting pursuant to its authority to reconsider its interlocutory rulings *sua sponte* concludes that RJA's fraud claim fails to satisfy the independent duty doctrine and must therefore be **DISMISSED**.

## F.  Immediate Appeal

Given its adverse ruling on RJA's motion, the Court now turns to its alternative request for permission to immediately appeal the decision under either Rule 54(b) or 28 U.S.C. § 1292(b). In simple terms, RJA requests permission to appeal the Court's anticipation that the Tennessee Supreme Court would adopt the independent duty doctrine, and its conclusion that adoption of the doctrine bars its tort claims. (ECF No. 502, 15.)

### i.      Rule 54(b) Assessed

As far as Rule 54(b) is concerned, it is unlikely that RJA's tort claims are different "claims" from those that remain pending. As explained in prior orders and here, RJA's tort claims are their previously dismissed breach of contract claims. All these claims share essentially the same underlying operative facts as 50 North's counterclaims. RJA concedes as much. (*Id.* at 16.) Nevertheless, RJA urges that the Court can overlook the substantial factual overlap because this appeal would only be asking the Sixth Circuit to give a "yea or nay" regarding this Court's

prediction that the Tennessee Supreme Court would adopt the independent duty doctrine. (*Id.* at 17.)

Although the Court understands RJA's point and even agrees with it to an extent, it is not persuaded that Rule 54(b)'s first step is satisfied here. RJA points to no authority for its argument that the narrow scope of an immediate appeal can circumvent Rule 54(b)'s claims requirement. Moreover, because many of these tort claims were dismissed on alternative bases that RJA does not challenge here, there is potentially more at issue in this proposed interlocutory appeal than just the status of the independent duty doctrine in Tennessee.

The Court **DECLINES** to enter final judgment on RJA's tort claims under Rule 54(b).

### ii.    Section 1292(b) Assessed

The Court is persuaded that this Order should be certified for interlocutory appeal under 28 U.S.C. § 1292(b).

First, whether the independent loss doctrine or its core reasoning applies in Tennessee is central to at least two of RJA's dismissed claims. Thus, it is a controlling question of law because it could materially affect this case's outcome. *See In re City of Memphis*, 293 F.3d 345, 351 (6th Cir. 2002) (citing *In re Baker & Getty Fin. Servs., Inc. v. Nat'l Union Fire Ins. Co.*, 954 F.2d 1169, 1172 n.8 (6th Cir. 1992)).

Second, there is substantial ground for difference in opinion as to the status of the independent duty doctrine in Tennessee. Although this Order cabins *Commercial Painting*'s statements on the doctrine, the Tennessee Supreme Court made clear that the doctrine's role in Tennessee was hypothetical. That "reasonable jurists might disagree on an issue's resolution" is further reinforced by (1) the undersigned's prior Order reaching the opposite conclusion; and (2) the possibility that the independent duty doctrine may be the same as, or an exception to, the economic loss doctrine—a doctrine that no longer bars RJA's tort claims after *Commercial*

*Painting*.[7] *See In re Trump*, 874 F.3d 948, 952 (6th Cir. 2017) (quoting *Reese v. BP Exploration, Inc.*, 643 F.3d 681, 688 (9th Cir. 2011)).

Third, an immediate appeal from this Order would materially advance the ultimate termination of the litigation. As the record and this Order demonstrates, the parties, the Magistrate Judge, and the undersigned have been going back and forth on this doctrine's application and its consequences for RJA's claims for over five years, not to mention all the other disagreements the parties have had over the years. A decision from the Sixth Circuit would either put an end to RJA's attempts to circumvent the contract by asserting its claims in tort or, in essence, restart the case. While it is certainly not the Court's preference to restart the case, it is in everyone's best interest to get a firm answer now, as opposed to years down the road at this case's conclusion.

Arguing against certifying this Order for interlocutory appeal, 50 North urges the Court to heed the Sixth Circuit's direction that § 1292 is intended to authorize interlocutory appeals in exceptional cases, not "in ordinary suits for personal injuries . . . that can be tried and disposed of on their merits in a few days." (ECF No. 504, 13 (quoting *Kraus v. Bd. of Cnty. Rd. Comm'rs for Kent Cnty*., 364 F.2d 919, 922 (6th Cir. 1966))). 50 North argues that this is precisely the kind of unexceptional case that the Sixth Circuit has deemed to be unworthy of interlocutory appeal. (*Id.*) It relies on this Court's own conclusion that "this case presents little more than a straightforward contractual dispute that the parties have unnecessarily complicated." (*Id.* (citing ECF No. 498, 18).)

---

[7] If the independent duty doctrine is the same as the economic loss doctrine, then it logically follows that it too is limited to the products liability context. Likewise, if the independent duty doctrine is an exception to the economic loss doctrine, then it would be an issue in cases where the economic loss doctrine applies. Because the economic loss doctrine clearly does not apply here, both scenarios are concerning. As the Court acknowledged in Parts III.A. and III.D., the independent duty doctrine is well entrenched. If *Commercial Painting* is read to be a rejection of the doctrine, it is hard to see how this would not result in contract law drowning in a sea of tort.

The Court's view is unchanged. The facts undergirding this case date back to 2006, and this action began in 2018. In the years since, the parties' have continually traded blows over the same handful of issues. They have submitted thousands of pages of briefing in their commitment to litigating every conceivable issue. Review of these issues sets the case poles apart from the simple contractual dispute that it seems to be. And, despite the Magistrate Judge and undersigned's best efforts to bring this case to a close, it is far from over and may even need to be restarted. Taking all this together, this matter is appropriate for interlocutory appeal.

Pursuant to 28 U.S.C. § 1292(b), the Court **CERTIFIES** this Order for interlocutory appeal.

## IV.    CONCLUSION

Consistent with the foregoing, the Court **DENIES** RJA's motion to reconsider, **DISMISSES** RJA's fraud claim on *sua sponte* reconsideration of its prior Order denying 50 North's motion to dismiss that claim, and **CERTIFIES** this Order for interlocutory appeal under 28 U.S.C. § 1292(b).

**IT IS SO ORDERED**, this 28th day of July 2025.

*s/John T. Fowlkes, Jr.*
JOHN T. FOWLKES, JR.
UNITED STATES DISTRICT JUDGE
