IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

RAYMOND JAMES & ASSOCIATES, INC.,

    Plaintiff,

v.                                                                                  No. 2:18-cv-02104-JDB-tmp

50 NORTH FRONT STREET TN, LLC,

    Defendant.

---

50 NORTH FRONT STREET TN, LLC,

    Plaintiff,

v.                                                                                  No. 2:21-cv-02433-JDB-tmp

RAYMOND JAMES & ASSOCIATES, INC.,

    Defendant.

---

ORDER CERTIFYING QUESTION TO THE SUPREME COURT OF TENNESSEE
AND
STAYING CASE

---

Over the long and tortured history of the instant litigation, this Court has wrestled with, among other issues, Tennessee's application of the independent duty rule, which provides that a "tort action only arises when the act constituting the contract breach also constitutes a breach of a common law duty independent of the contractual relationship." *See TNIJACI01 Good 961 Lower Brownsville Rd. LLC v. FC Cox Constr., LLC*, No. 1:22-cv-01015-STA-jay, 2023 WL 4504596, at *8 (W.D. Tenn. Feb. 14, 2023) (quoting *E Sols. for Bldgs., LLC v. Knetstrick Contractor, Inc.*, No. M2018-02028-COA-R3-CV, 2019 WL 5607473, at *9 n.7 (Tenn. Ct. App. Oct. 30, 2019)).

Fifty North Front Street TN, LLC ("50 North" or "Landlord") is the owner/operator of a twenty-one-story office building (the "Building") located at 50 North Front Street in downtown Memphis, Tennessee. The Building was constructed in 1985. At the times relevant hereto, over half of the Building's office space was rented by Raymond James & Associates, Inc. ("RJA" or "Tenant"). RJA executed a lease for the space in 2014 with the Building's then-owner, Parkway Properties, L.P. The lease was assigned to 50 North upon its purchase of the Building the following year. The contract provides in pertinent part that

> Landlord shall maintain and operate the Building: (i) in at least the form, manner and quality as exists at the Building on the Effective Date (the "Current Standard") as it relates to Building maintenance and operation, and (ii) substantially in accordance with the manner and quality of the maintenance and operation of Comparable Buildings at the time a comparison between the Building and Comparable Buildings is made hereunder. Landlord shall make such improvements, repairs or replacements as may be necessary to maintain the Building Systems serving the Premises, the exterior and the structural portions of the Building (including structural portions of the Building within the Premises) and the Common Areas in accordance with Current Standards and the standards applicable for maintaining such items in Comparable Buildings. . . .
>
> \*    \*    \*
>
> Tenant shall have access to the Building and the Premises twenty-four (24) hours per day, seven (7) days per week, subject to any interruptions in access provided for in this Lease. Landlord shall furnish Tenant during Tenant's occupancy of the Premises the following services, all of which will be provided in no less than the Current Standard: . . . (iv) elevator service at the times and frequency reasonably required for normal business use of the Premises . . ..

(*Raymond James & Assoc., Inc. v. 50 N. Front St. TN, LLC*, Case No. 2:18-cv-02104-JDB-tmp (W.D. Tenn.) ("Case No. 2:18-cv-02104"), Docket Entry ("D.E.") 41-1 (Commercial Lease) ¶¶ 10-11.) In 2017, the Building's elevator system began to present significant problems, sometimes requiring the fire department to be summoned to rescue trapped passengers.

In February 2018, RJA brought an action against 50 North in the Chancery Court of Shelby County, Tennessee, which was removed to this Court on diversity grounds. (Case No. 2:18-cv-

2

02104, D.E. 1, 1-1.) In its first amended complaint, filed in the summer of 2018, Tenant alleged that 50 North breached the lease contract and was grossly negligent under Tennessee law by breaching its duty to provide adequate elevator service to the Building. (*Id.*, D.E. 41-1.) Landlord moved to dismiss the amended pleading pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (*Id.*, D.E. 54.) In an order entered July 30, 2020, United States District Judge John T. Fowlkes, Jr., to whom the case was then assigned, granted the motion to dismiss the tort claim. (*Id.*, D.E. 339.) Without expressly invoking the independent duty rule, the Court concluded that, "where a claim for negligence is based only on breach of contract obligations, and there are no alleged extracontractual duties, the first element of the tort claim fails. Thus, RJA has failed to state a cognizable claim for gross negligence." (*Id.*, D.E. 339 at PageID 6857 (internal citation omitted)); *see also id.*, D.E. 521 at PageID 9449-50.) The rule provided the sole basis for dismissal of the gross negligence claim. (*Id.*, D.E. 521 at PageID 9450.)

In May 2020, Tenant moved to amend its complaint to reassert the gross negligence claim against Landlord with additional allegations regarding incidents that occurred subsequent to 2018. (*Id.*, D.E. 324.) On January 28, 2022, Judge Fowlkes found the reasserted claim futile based, again, exclusively on the application of the independent duty rule. (*Id.*, D.E. 391 at PageID 7379-81; *id.*, D.E. 521 at PageID 9450.) RJA also sought to allege a gross negligence claim against 50 North's president, Jacob Sofer, and nuisance claims against both 50 North and Sofer arising from the tenancy. These proposed claims were found to be futile on multiple bases, including the independent duty rule. (*Id.*, D.E. 391 at PageID 7382-87; *id.*, D.E. 521 at PageID 9450.)

On June 25, 2021, Landlord countersued RJA for breach of contract or, in the alternative, for quantum meruit/unjust enrichment or trespass in this Court. (*50 N. Front St. TN, LLC v. Raymond James & Assoc., Inc.*, Case No. 2:21-cv-02433-JDB-tmp (W.D. Tenn.) ("Case No. 2:21-

3

cv-02433"), D.E. 1.)  The cases were consolidated on October 4 of that year.  (Case No. 2:18-cv-02104, D.E. 387; Case No. 2:21-cv-02433, D.E. 23.)  In the consolidation order, Judge Fowlkes granted the parties' request that Case No. 2:21-cv-02433 be stayed pending the outcome of Case No. 2:18-cv-02104.

On February 10, 2022, Tenant filed an amended pleading in Case No. 2:18-cv-02104 to allege fraud arising from 50 North's overbilling for property taxes.  (Case No. 2:18-cv-02104, D.E. 393.)  Landlord moved to dismiss under Fed. R. Civ. P. 12(b)(6) (*id.*, D.E. 396) and, in a report and recommendation issued by Chief Magistrate Judge Tu Pham on July 24, 2023, it was recommended that the claim be dismissed on the grounds that (1) RJA had failed to show Tennessee had adopted the independent duty rule and (2) the claim was barred by both the rule and the economic loss doctrine.  (*Id.*, D.E. 455.)  Some two months later, the Tennessee Supreme Court, in *Commercial Painting Co. Inc. v. Weitz Co. LLC*, 676 S.W.3d 527 (Tenn. 2023), stated that it "has not adopted the independent duty doctrine, so any future role of the doctrine in Tennessee remains theoretical."  *Com. Painting Co.*, 676 S.W.3d at 541-42.  The Supreme Court also reversed the lower court's extension of the economic loss doctrine beyond the product liability context.  *Id.* at 542.  In an order entered April 22, 2024, Judge Fowlkes, following the Supreme Court's lead in *Commercial Painting*, adopted the magistrate judge's finding that Tennessee did not recognize the independent duty rule, and rejected Judge Pham's finding that the economic loss doctrine barred RJA's fraud claim against 50 North.  (*See* Case No. 2:18-cv-02104, D.E. 491.)

On March 25, 2025, Tenant moved for reconsideration and reinstatement of its tort claims previously dismissed on independent duty rule and economic loss doctrine grounds as, post-*Commercial Painting*, neither is applicable in Tennessee.  (*Id.*, D.E. 502.)  In the event the motion was denied, RJA sought leave to file an interlocutory appeal as to the Court's rejection of the tort

4

claims. (*Id.*)  In an order entered July 28, 2025, Judge Fowlkes observed that, since *Commercial Painting* clearly rejected the economic loss doctrine's application to RJA's fraud claim, survival of that claim rested solely on whether Tennessee had adopted the independent duty rule. (*Id.*, D.E. 521 at PageID 9451.)  Finding that *Commercial Painting*'s statement regarding the theoretical nature of the independent duty rule in Tennessee to be dicta and, therefore, not binding on this Court, Judge Fowlkes predicted that the state's highest court would adopt the independent duty rule in an appropriate case. (*Id.*, D.E. 521 at PageID 9451-53.)  After analyzing the fraud allegation in light of that prediction, Judge Fowlkes dismissed the claim *sua sponte* on the grounds that it failed to satisfy the independent duty rule. (*Id.*, D.E. 521 at PageID 9454-56.)  Based on his denial of reconsideration, Judge Fowlkes granted leave to file an interlocutory appeal.  The consolidated cases were soon thereafter transferred to the undersigned. (*See id.*, D.E. 528.)

The Sixth Circuit, on February 17, 2026, issued a brief order denying RJA's petition for interlocutory appeal, stating in relevant part:

> Absent clarity from the Supreme Court of Tennessee itself about the independent duty doctrine, we can offer no guarantee that our interlocutory decision would stand the test of time, either in aid of other courts grappling with the issue generally or for these parties specifically.  In this regard, it is also unclear why RJA moved the district court to certify its order for interlocutory appeal but did not move the district court to certify its question of law to the Tennessee Supreme Court following its decision in *Commercial Painting*.

(*Id.*, D.E. 532 at PageID 9500.)

The Tennessee Supreme Court's rules state that it "may, at its discretion, answer questions of law certified to it by . . . a District Court of the United States in Tennessee . . . ." Tenn. Sup. Ct. R. 23 § 1.  The rule "may be invoked when the certifying court determines that, in a proceeding before it, there are questions of law of [Tennessee] which will be determinative of the cause and

5

as to which it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court of Tennessee. *Id.*

"Certification is most appropriate when the question is new and state law is unsettled." *Pennington v. State Farm Mut. Auto. Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009) (internal quotation marks omitted). "[T]he federal courts generally will not trouble [their] sister state courts every time an arguably unsettled question of state law comes across [their] desks. When [the federal courts] see a reasonably clear and principled course, [they] will seek to follow it [themselves]." *Id.* (cleaned up). Certification "assist[s] the federal courts in correctly disposing of state law issues" and "saves time, energy, and resources and helps build a cooperative judicial federalism." *Haley v. Univ. of Tenn.-Knoxville*, 188 S.W.3d 518, 521 (Tenn. 2006) (cleaned up). It "eliminates guesswork and speculation about questions of state law" and "may greatly simplify an ultimate adjudication in federal court." *Renteria-Villegas v. Metro. Gov't of Nashville & Davidson Cnty.*, No. 3:11-00218, 2011 WL 4048523, at *12 (M.D. Tenn. Sept. 12, 2011) (cleaned up). Perhaps most importantly,

> the certification procedure protects states' sovereignty. To the extent that a federal court applies different legal rules than the state court would have, the state's sovereignty is diminished because the federal court has made state law. Such an impact on state sovereignty is no small matter, especially since a federal court's error may perpetuate itself in state courts until the state's highest court corrects it.

*Haley*, 188 S.W.3d at 521 (cleaned up). A decision to certify a question to the Supreme Court may be made by the federal court *sua sponte*. *Eiswert v. United States*, 619 F. App'x 483, 484 (6th Cir. 2015).

Rule 23 requires that a certification order contain the following information:

A. The style of the case;

B. A statement of facts showing the nature of the case, the circumstances out of which the question of law arises, the question of law to be answered, and any

        other information the certifying court deems relevant to the question of law to be answered;

    C.  The names of each of the parties;

    D.  The names, addresses, and telephone numbers of counsel for each party; and

    E.  A designation of one of the parties as the moving party.

Tenn. Sup. Ct. R. 23 § 3.

        The Court first finds that there are questions of Tennessee law which will be determinative of the cause at bar. "A question of law is 'determinative of the cause' if it is claim-dispositive." *Lindenberg v. Jackson Nat'l Life Ins. Co.*, 147 F. Supp. 3d 694, 700 (W.D. Tenn. 2015). A certified question need not dispose of the entire case but may resolve only certain claims. *See Carbon Processing & Reclamation, LLC v. Valero Mktg. & Supply Co.*, 823 F. Supp. 2d 786, 824 (W.D. Tenn. 2011) (criteria of Rule 23 met where certified question was dispositive of one of multiple claims). Here, RJA's tort claims of gross negligence against 50 North and of fraud have not been permitted to proceed solely based on this Court's assumption that the independent duty rule applies in Tennessee. Thus, the question of its applicability is determinative of those claims. Second, it appears from *Commercial Painting* that there is not a "reasonably clear and principled course" to be followed by a federal court in deciding whether the law of this state has adopted the independent duty rule.

        Therefore, the undersigned finds it prudent to CERTIFY to the state's highest court the following question of state law: Does the independent duty rule apply in Tennessee?

        In accordance with Rule 23 § 3(D), the parties and their counsel are as follows:

Raymond James & Associates, Inc.:

7

    Nathaniel L. Prosser
    The Prosser Firm
    5865 Ridgeway Center Parkway, Suite 300
    Memphis, Tennessee  38120
    901.820.4433

    Alexander Rudman Bunn
    Prosser, Clapper & Johnson, PLLC
    5865 Ridgeway Center Parkway, Suite 300
    Memphis, Tennessee  38120
    901.820.4430

    James Robert Clapper
    The Prosser Firm
    5865 Ridgeway Center Boulevard, Suite 300
    Memphis, Tennessee  38120
    901.236.8573

    John R. Branson
    Baker Donelson-Memphis
    165 Madison Avenue, Suite 2000
    Memphis, Tennessee  38103
    901.526.2000

    Kyle Daniel Johnson
    The Prosser Firm
    5865 Ridgeway Center, Suite 300
    Memphis, Tennessee  38120
    901.820.4433.

50 North Front Street TN, LLC:

    Coleman Jon Braun
    Adams and Reese, LLP
    1600 West End Avenue, Suite 1400
    Nashville, Tennessee  37203
    615.259.1034

    Christopher Michael Williams
    Spicer Rudstrom, PLLC
    119 South Main, Suite 700
    Memphis, Tennessee  38103
    901.522.2315

Daniel J. Bennett
Bennett Law Group, LLC
81 Mill Street, Suite 300
Gahanna, Ohio  43230
614.416.8147

John Davis Woods, III
Adams and Reese, LLP
6075 Poplar Avenue, Suite 700
Memphis, Tennessee  38119
901.524.5281.

Pursuant to Rule 23 § 4, the Clerk SHALL serve copies of this order upon counsel of record for the parties and file the order with the Tennessee Supreme Court Clerk in Nashville, Tennessee, under seal of this Court, along with proof of service.

As neither party has moved for certification to the Tennessee Supreme Court, this Court designates RJA as the moving party for certification purposes.

Finally, these consolidated cases are STAYED pending an order of the Tennessee Supreme Court declining to answer the certified question or issuing an opinion stating the law governing the question certified.  See Tenn. Sup. Ct. R. 23 §§ 8-9.

IT IS SO ORDERED this 12th day of March 2026.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE
